UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EARL GAUDIO & SON, INC. | ) | Case No.: 13-90942 |
| | ) | |
| Debtor. | ) | |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 29, 2013 at 2:00 p.m. Central Time, we shall appear before the Honorable Gerald D. Fines, U.S. Bankruptcy Court, Central District of Illinois, 201 N. Vermilion Street, Danville IL 61832, or before any other judge who may be sitting in his place and then and there shall present the attached *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing and (II) To Utilize Cash Collateral*, a copy of which is attached hereto and hereby served upon you.

Dated: July 24, 2013

Respectfully submitted,

ICE MILLER, LLP

By: /s/ John D. Burke
 John D. Burke
 200 W. Madison Street, Suite 3500
 Chicago, Illinois 60606-3417
 Telephone: (312) 726-8148
 Facsimile: (312) 726-6266
 John.burke@icemiller.com

 - and -

 Ben T. Caughey
 ICE MILLER LLP
 One American Square, Suite 2900
 Indianapolis, Indiana 46282-0200
 (317) 236-2100 Telephone
 (317) 236-2219 Facsimile
 ben.caughey@icemiller.com

 *Proposed Counsel to the Debtor*

3012766v2

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EARL GAUDIO & SON, INC. | ) | Case No.: 13-90942 |
| | ) | |
| Debtor. | ) | |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING AND (II) TO UTILIZE CASH COLLATERAL**

Comes now the above captioned Debtor and Debtor-in-Possession, by and through First Midwest Bank as Custodian of Earl Gaudio and Son, Inc., (the "Debtor"), by counsel, and for its *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing and (II) To Utilize Cash Collateral*, and respectfully states the following:

**Background and Jurisdiction**

1. On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157.

5. The statutory predicates for the relief requested in this Motion are sections 105(a), 361, 362, 363, and 364 of the Bankruptcy Code.

1

### Nature of Debtor's Business and Factual Background

6. The Debtor is a beer and food distributor serving East Central Illinois and portions of Indiana and Ohio.

7. The Debtor had its beginnings in Benld, Illinois and was started by Jack and Charles Gaudio and Joe Turigliatto. Earl Gaudio (Charles Gaudio's son) formed Earl Gaudio & Son, Inc. and became the sole owner of the business in 1972. Dennis Gaudio (Earl Gaudio's son) became an owner of the business in approximately 2005 and Eric Gaudio (Dennis Gaudio's son) became an owner of the business in approximately 2007.

8. The Debtor has had a long-standing relationship with Anheuser-Busch since its inception. In 2007, the Debtor branched out into other beverage segments including both alcoholic and non-alcoholic products and entered into a phase of rapid growth.

9. In April, 2008, the Debtor moved into a state of the art facility located at 1803 Georgetown Road in Tilton, Illinois. The facility totals 69,000 square feet and the storage center can accommodate up to 150,000 cases of product. The Debtor currently employs approximately 35 full and part time employees.

10. On June 12, 2013, Helen Gaudio, as guardian of the Estate of Earl Gaudio commenced a lawsuit against Eric Gaudio, Dennis Gaudio and the Debtor. On June 27, 2013, the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County appointed First Midwest Bank as Custodian of Earl Gaudio and Son, Inc. (the "Custodian") and vested the Custodian with all powers, authorities, rights, and privileges previously possessed by the directors and officers of Earl Gaudio and Son, Inc. A copy of the Consent Order entered by the Circuit Court for the Fifth Judicial Circuit of Illinois is attached hereto as **Exhibit A**.

11. The Debtor has identified a buyer for certain of its assets, and accordingly, is it working expeditious towards a sale of a majority of its assets. The Debtor believes that a sale of these assets represents the best opportunity for the Debtor to maximize value for its creditors, however, a sale will require the continuing operation of the business of the Debtor and consequent preservation of asset values.

12. The Debtor has no access to cash and has no ability to purchase product from Anheuser-Busch and other suppliers, and thus no ability to operate. The nature of the Debtor's business is such that a failure to delivery product to merchants in a timely fashion can be fatal. It leaves merchants without the ability to sell product, jeopardizes hard-fought efforts to obtain shelf space, and risks market share, and thus the market value of the Debtor's business.

13. The ability of the Debtor to obtain sufficient working capital and liquidity through the use of cash collateral and the incurrence of new indebtedness is vital to the Debtor. The preservation and maintenance of the Debtor's businesses and assets are critical to a successful outcome for the Debtor's estate and, in turn, the maximization of the stakeholders' interest therein.

### Overview of Pre-Petition Secured Debt

14. Based upon the Custodian's investigation and without making any admission regarding the validity, priority, or perfection of claims and interests, the Debtor is indebted to a number of pre-petition lenders and its assets are also encumbered by state and federal tax liens.

15. The creditor with the largest claim against the Debtor is Regions Bank, which is owed approximately $5,025,000 and purports to hold a Mortgage on the Debtor's operational premises located 1803 Georgetown Road, Tilton, IL 61833, a security interest encumbering all

3

inventory, accounts, equipment, general intangibles and fixtures, and an Assignment of all proceeds from any distribution rights of the Debtor.

16.     The Debtor is also indebted to the Small Business Growth Corporation in the approximate amount of $1,680,000, and the Small Business Growth Corporation purports to hold a Mortgage on the Debtor's operational premises located 1803 Georgetown Road, Tilton, IL 61833, and a second priority security interest in certain equipment and fixtures of the Debtor.

17.     The Debtor is also indebted to certain other creditors which purport to hold an secured interest in assets of the estate, including:

    (a)     Iroquois Federal Savings & Loan Assoc. –lien on 21 vehicles;

    (b)     Mercedes Benz/ Daimler Truck Financial – lien on 4 vehicles;

    (c)     Ally Financial – lien on 2 vehicles;

    (d)     Chase Auto Finance – lien on 1 vehicle;

    (e)     Isuzu Finance of America, Inc. – lien on 1 vehicle;

    (f)     Regions Equipment Finance Corporation – lien on certain personal property;

    (g)     GE Capital – Lien on 1 vehicle;

    (h)     Wells Fargo Equipment Finance, Inc. – lien on 2 vehicles;

    (i)     Mail Boxes Etc., Inc. – lien on certain personal property; and

    (j)     World Business Lenders - Mortgage on 1803 Georgetown Road, Tilton, IL 61833 and liens on 9 vehicles;

18.     The Debtor also has various federal and state tax liens which have been asserted against its assets, specifically two federal tax liens filed on March 8, 2013 and March 12, 2013 and three state tax liens filed on July 17, 2012, September 26, 2012, and June 26, 2013.

**Request to Use Cash Collateral and Grant Adequate Protection**

19. By this Motion, the Debtor requests authority to use all cash and other amounts on deposit or maintained in any account of the Debtor and all amounts generated by the collection of accounts receivable and sale of inventory or other disposition of assets which constitute Prepetition Collateral of the Secured Creditors (the "Cash Collateral"). Without use of Cash Collateral, the Debtor and their estate will suffer immediate and irreparable harm: namely, the Debtor will be forced to shut down operations and lay off or terminate employees, which will certainly result in a loss in value of the Debtor's estate. Accordingly, the Debtor respectfully requests that the Court enter an Interim Cash Collateral Order authorizing interim use of Cash Collateral pending a final hearing.

20. The Debtor proposes to use Cash Collateral, wherever such Cash Collateral may be located, to, among other things, pay operating expenses, including employee wages and salaries, satisfy other working capital needs and pay the costs and expenses of operating in these Chapter 11 cases, consistent with the budget attached hereto as **Exhibit B** (the "Budget"), which projects the sources and uses of cash over a period of twenty weeks (the "Budget Period"), provided, however, the Debtor requests that it be allowed to exceed the Budget by an aggregate variance of not greater than 20%.

21. The Debtor recognizes that as non-consenting entities asserting security interests in or liens on the Cash Collateral, the Secured Creditors may be entitled to adequate protection, pursuant to Sections 361 and 363(e) of the Bankruptcy Code. In accordance with Section 361 of the Bankruptcy Code, the Debtors propose the following adequate protection for the use of the Cash Collateral: granting the Secured Creditors replacement liens in the postpetition property of the Debtors of the same nature and to the same extent that the Secured Creditors had in the Prepetition

5

Collateral as of the Petition Date, including, but not limited to, postpetition inventory, equipment and receivables.

22. As further adequate protection, the Debtors submit that, during the Budget Period, the collateral position of the Secured Creditors will improve because the infusion of new funds as a part of the Debtor's proposed Debtor-in-Possession Financing package will result in an ability to increase sale and a resulting growth in cash on hand. Accordingly, the collateral position of the Secured Creditors is protected during the Budget Period.

23. Conversely, in the event that the Debtor is unable to use Cash Collateral, it will be forced to shut down operations, which will destroy the going-concern value of the business, and result in the loss of jobs.

24. Section 363 of the Bankruptcy Code governs the Debtors' use of Cash Collateral. Under section 363(c)(2), a debtor may not use cash collateral unless

    (a)    each entity that has an interest in such cash collateral consents; or

    (b)    the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

25. As explained above, the Debtor's use of Cash Collateral to continue operations is necessary to avoid immediate and irreparable harm to the Debtor's business and their creditors.

26. A debtor's cash "is the life's blood of the business," and the bankruptcy court must ensure that such life's blood "is available for use, even if to a limited extent." *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). In general, courts recognize that use of cash collateral is appropriate and warranted where necessary to preserve a debtor's ability to reorganize and maximize the estate's value for all interested parties. *See, e.g., In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993). Courts typically authorize a debtor to use cash

collateral to continue its operations so long as the interests of third parties in such cash are adequately protected.

27.     Adequate protection may be provided by, among other things, "providing to such entity an additional or replacement lien." 11 U.S.C. § 361.  Courts have also found that a secured creditor is adequately protected when cash collateral is used to preserve or enhance the value of a creditor's collateral.  *See, e.g., Mbank Dallas, N.A. v. O'Connor*, 808 F.2d 1393, 1399 (10th Cir. 1987).

28.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

29.     The Debtor hereby requests that the Court authorize the use of Cash Collateral <u>immediately</u> on an interim basis consistent with the Budget plus a 20% aggregate variance until a final hearing is conducted.  Absent prompt authorization from the Court to use Cash Collateral on an interim basis, the Debtor will be immediately and irreparably harmed.

30.     The Debtor also respectfully request that the Court set a final hearing on the Motion.

### Request for Authority to Obtain Debtor-in-Possession Financing

31.     The Debtor does not have sufficient unencumbered assets to operate its business on a post-petition basis.  Further, as a result of its financial condition, Debtor is unable to obtain post-petition financing in the form of unsecured credit allowable as an administrative expense

7

under 503(b)(1) of the Bankruptcy Code or unsecured credit allowable under 364(a) and (b) of the Bankruptcy Code.

32. In order for the Debtor to conduct its business affairs as a Debtor in Possession and maintain its current business operations, it is necessary for the Debtor to have authority to obtain post-petition financing on a secured basis. Without the extension of additional credit, the Debtor's business will not be able to operate, resulting in significant loss to Debtor and its creditors. If the Debtor's operations cease, the efficacy of sale will be jeopardized and the estate and the Debtor's creditors will be irreparably harmed.

33. The Debtor has requested, and Helen Gaudio, as Guardian of the Estate of Earl Gaudio (the "DIP Lender") has agreed, to provide post-petition financing to the Debtor for a period not to exceed six months (the "DIP Financing"). The amount of DIP Financing to be provided is an amount up to $750,000.00. The DIP Lender has agreed to immediately provide $250,000.00 on an interim basis and the terms and conditions of later funding, if any, will be resolved prior to a Final Hearing on this matter.

34. The Debtor seeks authority from the Court to provide the following liens and other relief to the DIP Lender in return for its agreement to provide DIP Financing to the Debtor: all indebtedness or obligations of the Debtor to the DIP Lender incurred on or after the Petition Date pursuant to this Court's authorization (the "Post-petition Debt") shall be secured by a super priority lien on all post-petition assets of the Debtor, including but not limited to all accounts receivables of the Debtor billed for and paid (up to the DIP Financing amount) after the Petition Date and all of the Debtor's causes of action and any avoidance actions under Bankruptcy Code §§ 544, 545, 547, 548, 549, 550 or 553.

35. The Debtor requests that the Liens and Superpriority Claims granted to the DIP Lender pursuant to the Interim Order and Final Order be subject and subordinate to a carve-out for:

(i) amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a); and

(ii) the payment of unpaid professional fees, costs and expenses of attorneys, accountants, investment bankers, financial advisors or other professionals retained by the Debtor in an amount equal to $150,000.00

36. The DIP Financing will be utilized by the Debtor to pay the actual expenses of the Debtor necessary for (a) the maintenance and preservation of its assets; (b) the continued operation of its business, including payroll, employee expenses, taxes and insurance expenses; and (c) the costs of this Chapter 11 case, including United States Trustee fees.

37. The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness and other financial accommodations is vital. The preservation and maintenance of the value of the Debtor as a going concern is integral to a successful sale of its assets at their maximum value.

38. The terms of the extension of credit by The DIP Lender to the Debtor have been negotiated in good faith and at arms-length pursuant to section 364(e) of the Bankruptcy Code.

39. Rules 4001(b) and 4001(c) of the Federal Rules of Bankruptcy Procedure provide that a final hearing on a motion to obtain credit pursuant to section 364 may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the

obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

40. The Debtor has an urgent and immediate need for cash to continue to operate. The Debtor will be immediately and irreparably harmed absent authorization from the Court to obtain the DIP Financing herein requested on an interim basis pending a final hearing on the Financing Motion.

41. The Debtor, by and through the Custodian, believes, in an exercise of its prudent business judgment, that the adequate protection, including the replacement liens and entitlement to super priority claims, contemplated herein is fair, reasonable and necessary under the circumstances.

42. The Debtor believes that the terms for the post-petition financing and the use of cash collateral, as set forth herein, are fair, reasonable and necessary under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. The DIP Facility has been negotiated in good faith and at arm's length among the Debtor and the DIP Lender and loans or other financial accommodations made to the Debtor by the DIP Lender will be extended in good faith as that term is used in Section 364(e) of the Bankruptcy Code.

43. Pursuant to Rules 4001(b) and 4001(c) of the Federal Rules of Bankruptcy Procedure, the Debtor requests that the Court hold an expedited preliminary hearing for the purpose of authorizing the extension of credit to the Debtor on an interim basis in order to maintain the Debtor's ongoing operations and permit the use of such DIP Financing until such time as a final hearing in the Financing Motion can be held.

44.     By virtue of the urgency of these matters, an emergency exists and it is not possible nor practical for the Debtor to provide notice to all of its creditors prior to an expedited preliminary hearing on the subject of this Financing Motion.

### Notice

45.     Notice of this Motion has been given to the Office of the United States Trustee, the Secured Creditors, the Debtor's Twenty Largest Creditors, and counsel for Anheuser-Busch. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor requests that the Court:

(A)     Enter an Interim Cash Collateral Order authorizing the use of cash collateral on an interim basis and granting adequate protection to the Secured Creditors on the terms set forth herein and setting a final hearing on this Motion pursuant to Bankruptcy Rule 4001(b)(2);

(B)     Enter an Interim Order authorizing the Debtor to obtain post-petition financing up to the aggregate amount of $750,000.00, with the DIP Lender committing on an interim basis to provide $250,000.00 on the terms set forth herein and:

  (i)     Granting super-priority security interests and liens in favor of the DIP Lender pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

  (ii)    Granting administrative super-priority claims in favor of the Lenders with respect to the Debtor's obligations to the DIP Lender, senior to all other administrative expense claims in these case; and

  (iii)   Authorizing the Debtor to agree to be bound by any documents necessary to memorialize the DIP Financing to be provided by the DIP Lender;

(C)     Setting a Final Hearing on this Motion; and

11

(D)     Grant all other appropriate relief under the circumstances.

          Respectfully submitted,

          ICE MILLER, LLP


By: /s/ John D. Burke
     John D. Burke
     200 W. Madison Street, Suite 3500
     Chicago, Illinois 60606-3417
     Telephone: (312) 726-8148
     Facsimile: (312) 726-6266
     John.burke@icemiller.com

     - and -

     Ben T. Caughey
     ICE MILLER LLP
     One American Square, Suite 2900
     Indianapolis, Indiana 46282-0200
     (317) 236-2100 Telephone
     (317) 236-2219 Facsimile
     ben.caughey@icemiller.com

     *Proposed Counsel to the Debtor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2013, I electronically filed the foregoing pleading with the Clerk of the Court using the cm/ecf system and sent notification by ordinary United States mail, postage prepaid, or by electronic mail of such filing to the parties listed on matrix attached hereto.

By: /s/ John D. Burke
John D. Burke
200 W. Madison Street, Suite 3500
Chicago, Illinois 60606-3417
Telephone: (312) 726-8148
Facsimile:  (312) 726-6266
John.burke@icemiller.com

- and -

Ben T. Caughey
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100 Telephone
(317) 236-2219 Facsimile
ben.caughey@icemiller.com

*Proposed Counsel to the Debtor*

# MATRIX

*Served Via Electronic Mail:*

U.S. Trustee
Office of Nancy J. Gargula
401 Main Street, #1100
Peoria, IL 61602
E-mail: USTPRegion10.PE.ECF@usdoj.gov

Peter E. Moll
Cadwalader, Wickersham & Taft LLP
700 Sixth St., N.W.
Washington, DC 20001
E-mail: peter.moll@cwt.com

Mark Wenzel
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204
E-mail: mwenzel@kdlegal.com

Jeff Richardson
132 S. Water Street
Decatur, IL 62523
E-mail: jdrdec@aol.com

*Served Via U.S. Mail:*

Anheuser-Busch
1 Busch Place
Saint Louis, MO 63118

Cliton Larson Allen LLP
301 SW Adams
Suite 900
Peoria, IL 61656

Earl Gaudio
504 Wilkin Road
Danville, IL 61832

Earl Gaudio & Sons, Inc. Pesion Plan
PO Box 990067
Hartford, CT 06199

FMB Fees
2801 W. Jefferson St
Joliet, IL 60435

GE Capital
PO Box 536447
Atlanta, GA 30353

Illinois Department of Revenue
100 West Randolph St.
Chicago, IL 60601

Mike-sell's Potato Chip Co.
333 Leo St
Dayton, OH 45404

Paul Offut
Heighway BB
Lebanon, MO 65536

Regions Commercial Pam
PO Box 11407
Birmingham, AL 35246

Small Business Growth Corp
2401 West White Oaks Drive
Springfield, IL 62704

Vermilion County Collector
PO Box 730
Danville, IL 61834

World Business Lenders, LLC
120 W. 45th Street
29th Floor
New York, NY 10036

Ice Miller LLP
One American Square
Suite 2900
Indianapolis, IN 46282

Internal Revenue Service
PO Box 804521
Cincinnati, OH 45280-4521

Westfield Insurance
c/o Wells Fargo Insurance Services
PO Box 4016
Champaign, IL 61824

Iroquois Federal Savings & Loan
619 Gilbert St.
Danville, IL 61832

Worker's Compensation-Employers
PO Box 71088
Charlotte, NC 28272

Mercedes Benz Financial
Diamler Truck Financial
13650 Heritage Parkway
Fort Worth, TX 76177

Sundance Beverage
6600 East Nine Mile Rd
Warren, MI 48091

1239351.1