UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EARL GAUDIO & SON, INC. | ) | Case No.: 13-90942 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF OPERATIONAL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND ASSIGNMENT AND ASSUMPTION OF EXECUTORY CONTRACTS**

Comes now the above captioned Debtor and Debtor-in-Possession, by and through First Midwest Bank as Custodian of Earl Gaudio and Son, Inc., (the "Debtor"), by counsel, and for its *Motion for Entry of An Order Authorizing the Sale of Operational Assets Free and Clear of Liens, Claims, and Encumbrances and Assignment and Assumption of Executory Contracts*, and respectfully states the following:

**Background and Jurisdiction**

1. On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157.

5. The statutory predicates for the relief requested in this Motion are Sections 105(a), 363, and 365 of the Bankruptcy Code.

3012766v2

**Nature of Debtor's Business and Factual Background**

6. The Debtor is a beer and food distributor serving East Central Illinois and portions of Indiana and Ohio.

7. Historically, the Debtor also had additional operational components including snack foods and 2 UPS Franchises (one located in Danville, IL and one located in Champaign, IL). The Debtor discontinued its snack food distribution business on July 18, 2013 but continues to operate the UPS Franchises.

8. The Debtor had its beginnings in Benld, Illinois and was started by Jack and Charles Gaudio and Joe Turigliatto. Earl Gaudio (Charles Gaudio's son) formed Earl Gaudio & Son, Inc. and became the sole owner of the business in 1972. Dennis Gaudio (Earl Gaudio's son) became an owner of the business in approximately 2005 and Eric Gaudio (Dennis Gaudio's son) became an owner of the business in approximately 2007.

9. The Debtor has had a long-standing relationship with Anheuser-Busch since its inception. In 2007, the Debtor branched out into other beverage segments including both alcoholic and non-alcoholic products and entered into a phase of rapid growth.

10. In April, 2008, the Debtor moved into a state of the art facility located at 1803 Georgetown Road in Tilton, Illinois. The facility totals 69,000 square feet and the storage center can accommodate up to 150,000 cases of product. The Debtor currently employs approximately 35 full and part time employees.

11. On June 12, 2013, Helen Gaudio, as guardian of the Estate of Earl Gaudio commenced a lawsuit against Eric Gaudio, Dennis Gaudio and the Debtor. On June 27, 2013, the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County appointed First Midwest Bank as Custodian of Earl Gaudio and Son, Inc. (the "<u>Custodian</u>") and vested the

Custodian with all powers, authorities, rights, and privileges previously possessed by the directors and officers of Earl Gaudio and Son, Inc.

**Summary of Assets to Be Sold, Proposed Purchase Agreement, and Marketing Efforts**

12.     By this Motion and pursuant to Section 363 of the Bankruptcy Code, the Debtor respectfully requests authority to sell its operational assets that relate to its distributorship of products of Anheuser-Busch.

13.     After an extensive and involved marketing process (administered by former management of the Debtor until the appointment of the Custodian and then by the Custodian after its appointment) and after good faith, arms-length negotiations, the Debtor has identified a buyer for these assets - Skeff Distributing Company, Inc. (the "Purchaser").

14.     The assets to be sold (as described below) are extremely unique in that the primary asset is a Distributorship Agreement with Anheuser-Busch InBev, Inc. ("AB") and AB retains the right to approve or disapprove any attempt to assign the Agreement with AB.

15.     In light of these considerations, the Debtor has extensively marketed its assets and also worked closely with AB during this process.  The Debtor has received numerous expressions of interest and also multiple Letters of Intent.  While there continues to be interest from third parties, at this time the highest and best offer has been submitted by the Purchaser.

16.     The Purchaser is an existing AB distributor and the Debtor is advised that the Purchaser has submitted all required materials to AB for approval.

17.     Prior to the Petition Date, the Debtor and the Purchaser entered into a certain Asset Purchase Contract (the "Purchase Agreement").  A true and accurate copy of the Purchase Agreement and all Exhibits thereto that have been finalized and agreed by the parties are attached hereto as **Exhibit A**.

2

18. Among other things, the Purchase Agreement identifies the assets to be sold, the consideration to be paid, and sets a deadline to close of August 31, 2013. In summary, the proposed transaction and sale to the Purchaser would include a conveyance of the following assets:

(a) Certain contracts and customer accounts of the Debtor related to its distributorship of AB products, including the Debtor's Distributorship Agreement with AB;

(b) Certain inventory of the Debtor related to its distributorship of AB products;

(c) Certain equipment, machinery, and vehicles of the Debtor related to its distributorship of AB products; and

(d) All intellectual property rights and permits, and licenses of the Debtor related to its distributorship of AB products

19. The purchase price for the proposed transaction is approximately $9 Million Dollars.[1] Based upon the Debtor's projections, this consideration will satisfy all secured claims held against the Debtor in full and leave excess funds available, which together with remaining assets (including the Debtor's distributorship rights in non-AB products and its facility), will be available for administration of this proceeding and payment to unsecured creditors.

20. The Purchaser also will purchase, outside of the Purchase Agreement but contemporaneous with the closing of the Purchase Agreement the following items for the following prices:

- 2000 Great Dane 40' X 12'6" trailer Bud Light decaled with #5500 rail gate – $8,000.00;

---

[1] Subject to adjustment as set forth in the Purchase Agreement.

3

- 2000 Great Dane 40' X 13'6" trailer Budweiser decaled with #5500 rail gate - $7,000.00.

- 1986   Triple B   12 Keg   6701   Blue Bud Lt - $750.00

21. The Debtor believes that a sale of the above describes assets represents the best opportunity for the Debtor to maximize value for its creditors. Further, that in light of the nature of the assets and the marketing that has been done both pre-petition and post-petition, the offer from the Purchaser is the highest and best offer that is available for the assets.

22. The Debtor seeks authority to consummate the sale prior to August 31, 2013 because if it fails to do so, the Purchaser has indicated that it may seek to make a downward adjustment to the purchase price.

**Request for Authority to Sell Assets Pursuant to Section 363 of the Bankruptcy Code and Assume and Assign Executory Contracts Pursuant to Section 365 of the Bankruptcy Code**

23. As set forth above, the contemplated sale of assets of the estate involves both a sale of hard assets such as vehicles, equipment, and inventory as well as the assumption and assignment of the Debtor's Distributorship Agreement with AB. The Debtor has satisfied, or as of the closing of the proposed sale will satisfy, all requirements of Sections 363 and 365 related to this proposed transaction.

24. Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor is authorized to sell property "free and clear of any interest in such property of an entity other than the estate" and, pursuant to Section 365, the Debtor is authorized to assume and assign unexpired executory contracts and unexpired leases.

Sale of Assets Pursuant to Section 363 of the Bankruptcy Code

25. In general, pursuant to Section 363(b)(1) of the Bankruptcy Code, a debtor may sell property of its estate outside of the ordinary course of business where the sale represents an exercise of the debtor's sound business judgment.

26. Courts generally approve sales outside the ordinary course of business under Section 363(b)(1) whenever such a sale is in the best interests of the estate. see *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D.Ill. 1994); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D.Mo. 1988). Traditionally, this standard requires: (i) an articulated business justification for the sale; and (ii) evidence that the sale occurred in good faith. see, *In re Shary*, 152 B.R. 724, 725 (Bankr. N.D.Ohio 1993), citing, *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (sale under Section 363 involves exercise of fiduciary duty and requires an "articulated business justification).

27. In light of the nature of the assets to be sold, the market for sale, the costs and expenses of an alternative sale, and the immediate value of the offer made by the Purchaser, the Debtor has concluded that the offer received from the Purchaser for the assets to be sold is fair and reasonable and represents a favorable offer for the assets being sold.

28. The Debtor, in an exercise of its business judgment, have concluded that effecting the sale outlined in this Motion to the Purchaser represents the best opportunity under the existing circumstances to maximize the value of these estate assets.

29. As such, the Debtor respectfully requests that the proposed sale be approved pursuant to the provisions of Section 363 of the Bankruptcy Code and that the Court permit the transfer of the assets to be sold hereunder to the Purchaser free and clear of all liens, claims,

5

interests, and encumbrances, with such liens, claims, interests, and encumbrances attaching to the sale proceeds.

30. The Debtor submits that the requirements for authorizing a sale of property free and clear under Section 363(f) have been met in this case particularly in light of the fact that the consideration received exceeds the alleged secured claims against the estate.

31. As a part of the Debtor's request for authority to consummate the sale outlined in this Motion, the Debtor requests that the Court make a finding that: (i) the Purchaser acted in good faith in negotiating the sale price; (ii) the notice of the sale process provided sufficient notice for the entry of a Sale Order; (iii) the sale price is fair and reasonable, and (iv) in addition, approve the Purchaser's request that any Section 547 causes of action against the Purchaser identified in the Debtor's Schedules be waived by the estate.

32. Section 363(m) of the Bankruptcy Code, which pertains to a sale such as the one contemplated by the Debtor, incorporated the term "good faith" as a requirement. 11 U.S.C. § 363. A good faith purchaser under Section 363(m) has been defined in the relevant case law to mean "one who purchases in good faith and for value." *Kabro Assocs. Of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2nd Cir. 1997), citing *Cumberland Farms Dairy, Inc. v. National Farmers' Org. (In re Abbotts Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3rd Cir. 1986).

33. With respect to the Purchaser, the Debtor anticipates providing testimony and evidence that the Purchaser at all times in the sale process acted in good faith and would request that the Court, in light of appropriate evidence and testimony, include a finding in the Sale Order designating the Purchaser to be a good faith purchaser as the term is used in Section 363(m) of the Bankruptcy Code.

Assumption and Assignment of Executory Contracts

34. Section 365(b)(1) of the Bankruptcy Code requires that the Debtor cure, or provide adequate assurance that they will promptly cure, any outstanding defaults under assigned contracts in connection with the assumption and assignment of these agreements to a buyer. In addition, Section 365(f)(2)(B) of the Bankruptcy Code requires that the buyer, as assignee of assigned contracts, provide the contract parties with adequate assurance of further performance.

35. Here, the only known cure cost associated with the assets to be sold, is the pre-petition amount due to AB in the amount of $235,091.55. The Debtor will satisfy the amount due to AB at the closing of the sale to the Purchaser. Further, the Debtor will serve this Motion on counsel for AB as well as any other parties to any executory contracts being assumed and assigned to the Purchaser such that any requests for cure costs may be made by the Hearing on this Motion.

36. The Debtor believes that all necessary cure amounts will be promptly paid in connection with the assumption of any assigned contracts and that the Purchaser will be able to provide adequate assurance of future performance under such assigned contracts. The Debtor also believes that the assumption and assignment of any assigned contracts should prove to be beneficial and welcome by the contracting parties since the Purchaser would plan to continue a business relationship with them.

37. Accordingly, the Debtor respectfully requests the authority to assume and assign executory contracts, pursuant to section 365 of the Bankruptcy Code, consistent with the terms of the Purchase Agreement.

## Notice

38. This Motion is being served upon the Office of the United States Trustee, all of the Debtor's alleged secured creditors, the Debtor's Twenty Largest Creditors, and counsel for Anheuser-Busch. The Debtor will provide Notice of their request to sell assets to all creditors on the creditor matrix maintained in this proceeding.

WHEREFORE, the Debtor requests that the Court enter an Order granting the Debtor the authority to sell the assets identified in the Purchase Agreement to the Purchaser, or any other offeror of a higher and better bid at the Hearing on the proposed sale, such sale to be concluded free and clear of all liens, claims, and encumbrances, with all liens, claims, and encumbrances to attach to the proceeds of the sale in the same priority and to the same extent as such liens, claims, and encumbrances have or may have attached to, or existed in, the Debtor's assets prior to the sale and grant such other and further relief as is just and appropriate.

Respectfully submitted,

ICE MILLER, LLP

By: /s/ Ben T. Caughey
Ben T. Caughey
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100 Telephone
(317) 236-2219 Facsimile
ben.caughey@icemiller.com

*Proposed Counsel to the Debtor*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2013, I electronically filed the foregoing pleading with the Clerk of the Court using the cm/ecf system, which sent notification of such filing to the Debtor's counsel, the U.S. Trustee, and all parties receiving cm/ecf notice in this proceeding and that I served the foregoing pleading via U.S. Mail on the parties listed on the attached Service List.

By: /s/ Ben T. Caughey
Ben T. Caughey
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100 Telephone
(317) 236-2219 Facsimile
ben.caughey@icemiller.com

*Proposed Counsel to the Debtor*

## SERVICE LIST

Peter E. Moll
Cadwalader, Wickersham & Taft LLP
700 Sixth St., N.W.
Washington, DC 20001

ADP
1 ADP Blvd
MS 325
Roseland, NJ 07068

Anheuser-Busch
1 Busch Place
Saint Louis, MO 63118

Employers Preferred Insurance Co.
13890 Bishops Drive
Ste 210
Brookfield, WI 53005

Clifton Larson Allen LLP
301 SW Adams
Suite 900
Peoria, IL 61656

Earl Gaudio
504 Wilkin Road
Danville, IL 61832

Earl Gaudio & Sons, Inc. Pension Plan
PO Box 990067
Hartford, CT 06199

Illinois Department of Revenue
100 West Randolph St.
Chicago, IL 60601

Vermilion County Collector
PO Box 730
Danville, IL 61834

Wells Fargo Equipment Finance, Inc.
733 Marquette Avenue, Suite 700
Minneapolis, MN 55402

Jeff Richardson
132 S. Water Street
Decatur, IL 62523

Sundance Beverage
6600 East Nine Mile Rd
Warren, MI 48091

Mike-sell's Potato Chip Co.
333 Leo St
Dayton, OH 45404

Regions Commercial Loan Payments
PO Box 11407
Birmingham, AL 35246

World Business Lenders, LLC
c/o Hepler Broom
Attn: Michelle Coady
400 Ninth Street, Suite 100
Springfield, IL 62701

Illini FS
1509 East University Avenue
Urbana, IL 61802

Westfield Insurance
c/o Wells Fargo Insurance Services
PO Box 4016
Champaign, IL 61824

Iroquois Federal Savings & Loan
619 Gilbert St.
Danville, IL 61832

Surepay
2350 Ravine Way, Suite 100
Glenview, IL 60025

WDNL-FM - Neuhoff Broadcasting
1501 N Washington
Danville, IL 61832