UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| EARL GAUDIO & SON, INC., | ) Case No.: 13-90942 |
| | ) |
| Debtor. | ) |

**FIRST INTERIM FEE APPLICATION OF FIRST MIDWEST BANK FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JULY 19, 2013 TO MARCH 31, 2014**

First Midwest Bank ("First Midwest") for its *First Interim Fee Application of First Midwest Bank for Allowance of Compensation and Reimbursement of Expenses for the Period from July 19, 2013 to March 31, 2014* ("Application"), respectfully states the following:

**Factual Background and Jurisdiction**

1. On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334.

3. On August 29, 2013, this Court entered an *Order Authorizing the Debtor to Employ First Midwest Bank as Custodian* (the "Retention Order"), wherein the Court authorized the employment of First Midwest as custodian and granted administrative expense priority, as allowed by the Court, to the fees and expenses incurred by First Midwest.

4. Pursuant to the *Order Granting, in Part, Motion for Authority to Implement Interim Compensation Procedures* (the "Order"), this Court entered on October 11, 2013, the

Debtor, after notice to the United States Trustee and the Official Committee of Unsecured Creditors formed herein, was authorized to distribute two (2) partial payments to First Midwest, specifically the following:

(i) November 11, 2013, in the amount of Ninety Thousand and 00/100 Dollars ($90,000.00); and

(ii) March 31, 2014, in the amount of One Hundred Forty-Six Thousand, Six Hundred Twenty-One and 06/100 Dollars ($146,621.06),

which together total Two Hundred Thirty-Six Thousand, Six Hundred Twenty-One and 06/100 Dollars ($236,621.06).

5. This Application is the first interim application filed by First Midwest seeking interim approval of fees and expenses.

6. This Court has jurisdiction over the Application pursuant to 28 U.S.C.§§ 157 and 1344(b) and the resolution of this Application constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

7. The Court has authority to grant the relief requested in the Application pursuant to 11 U.S.C. §§ 327(e), 330, and 331.

**Request for Compensation and Reimbursement of Fees and Expenses**

8. By this Application, First Midwest seeks interim approval of fees and expenses incurred from July 19, 2013 to March 31, 2014 (the "Fee Period").

9. Pursuant to the Retention Order, First Midwest has provided a variety of necessary services to the Debtor during the Fee Period, including, but not limited to:

(a) Serving as Custodian for the Debtor and working to fulfill all duties of the Debtor to the bankruptcy estate and comply with all United States Trustee requests, requirements, and guidelines;

(b)     Operating the Debtor until the sale of its operational assets, including supervising over 60 employees while the Debtor was operating its primary line of business and 10 employees subsequent to the sale of the Debtor's primary line of business, addressing vendors and customers, and in every way managing the affairs of the Debtor;

(c)     Marketing, negotiating, and effecting the sale of the operational assets of the Debtor, including intensive and complex negotiations with the ultimate purchaser of the assets and preparing diligence for any interested buyer;

(d)     Managing the cessation of the Debtor's primary operational functions, including ensuring compliance with applicable laws related to the Debtor's employees;

(e)     Addressing concerns of former employees regarding pension and health benefits under prior management, regarding the impact of this Chapter 11 on their rights, and regarding the impact of the sale of the operational assets on such employees;

(f)     Expended extensive effort in attempting to reconcile the books and records of the Debtor for the benefit of the estate, in order to evaluate claims, and in order to comply with all tax requirements;

(g)     Extensively coordinated with counsel for the Debtor and the Accountant retained in this proceedings regarding a wide variety of issues related to this Chapter 11 proceeding;

(h)     Conducted extensive investigation into the financial dealings of prior management as well as numerous transactions that occurred prior to the Petition Date;

(i)     Reconciling daily deposits and sales, receiving income, and paying disbursements which were due and properly payable;

(j)     Invested significant time on 401(k) compliance matters, including review of qualified employees and analyzing amounts that remain due for safe harbor and employee contributions;

(k)     Preparation and review of numerous tax filings including monthly sales tax returns, monthly gallonage tax returns, quarterly 940 payroll tax returns, annual 941 payroll tax returns and other informational returns such as IDES unemployment filings, and 5500s for the 401k;

(l)     Preservation and protection of assets of the estate, including maintaining proper liability, property, and workman's comp insurance (which were all expired when the Custodian assumed control of the Debtor), maintaining business licenses,

   liquor licenses, vehicle stickers, and complying with all real estate tax obligations; and

 (m) Investigation of all vehicles owned by the Debtor and attended to liquidation of vehicles of the estate.

The above descriptions serve as a general summary of the services provided by First Midwest and are intended only to highlight areas of particular importance in this case and a complete description of all activities performed by First Midwest are found in First Midwest's billing statements attached hereto as **Exhibit A**.[1]

 10. First Midwest's billing statements, attached hereto as **Exhibit A**, set forth in detail the nature of services rendered by First Midwest, the dates on which First Midwest's personnel rendered such services, the identity of First Midwest's personnel who performed such services, the time spent by each of First Midwest's personnel in performing such services, and the amount of fees attributable to each such service performed by First Midwest's personnel.

 11. First Midwest's billing statements provide the hours spent by the professionals for whom compensation is sought and reflect the hourly rate charges for each of the professionals.

 12. The amount of fees incurred during the Fee Period for which First Midwest seeks compensation is Four Hundred Forty-Two Thousand, Six Hundred Seventy-Seven and 75/100 Dollars ($442,677.75) and out-of-pocket expenses in the amount of Four Hundred Eighty-Seven and 50/100 Dollars ($487.50).

---

[1] Due to the voluminous nature of First Midwest's billing statements, in an effort to minimize copying and postage expenses, copies of the same are being served only upon parties receiving cm/ecf notice (including the United States Trustee and counsel for the Official Committee of Unsecured Creditors) and all other parties will be provided with a copy of the same upon request made to counsel for the Debtor.

4

13. The following First Midwest professionals rendered services to the Debtor during the Fee Period:

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Amy Bartenschlag | 74.38 | $225.00 | $16,735.50 |
|  | 7.40 | $125.00 | $925.00 |
|  | 0.60 | $50.00 | $30.00 |
| Angela Hart | 404.10 | $250.00 | $101,025.00 |
| Barbara Danaher | 1.8 | $225.00 | $405.00 |
| Debbie Ritke | 10.50 | $125.00 | $1,312.50 |
|  | 11.70 | $75.00 | $877.50 |
| Jennifer Fox | 1.50 | $125.00 | $187.50 |
| Kelly Griffin | 15.20 | $125.00 | $1,900.00 |
|  | 1.70 | $75.00 | $127.50 |
| Kim Klonicki | 205.20 | $150.00 | $42,990.00 |
|  | 185.70 | $125.00 | $23,212.50 |
| Michele Morgan | 246.45 | $225.00 | $55,451.25 |
| Rebecca Little | 423.93 | $250.00 | $105,982.50 |
| Tanya White | 408.94 | $150.00 | $61,341.00 |
|  | 241.40 | $125.00 | $30,175.00 |

14. First Midwest submits that, pursuant to Section 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and the Retention Order, it is entitled to compensation and reimbursement for the fees and expenses set forth in this Application. First

5

Midwest's services are properly compensable, were actual and necessary expenses of the administration of the estate, and have aided in the administration of the case and helped the Debtor fulfill its duties in this proceeding.

15. First Midwest seeks interim compensation for all fees and expenses incurred during the Fee Period, however, as an accommodation to the Official Committee of Unsecured Creditors is seeking payment of only 100% of costs incurred during the Fee Period and 90% of fees incurred during the Fee Period, specifically reserving the right to seek compensation for the remaining fees incurred in its Final Fee Application.

WHEREFORE, First Midwest requests that the Court enter an Order approving the Application and:

(A) Allowing interim compensation to First Midwest in the sum of Three Hundred Ninety-Eight Thousand, Four Hundred Nine and 98/100 Dollars ($398,409.98), which amounts to 90% of the fees incurred during the Fee Period ($442,677.75);

(B) Allowing First Midwest the sum of Four Hundred Eighty-Seven and 50/100 Dollars ($487.50) as reimbursement for out-of-pocket expenses incurred during the Fee Period; and

(C) Authorizing the estate to satisfy all unpaid expenses due to First Midwest as well as the difference between the $398,409.98 in fees sought pursuant to this Application and the prior fee payments made to First Midwest in the amount of Two Hundred Thirty-Six Thousand, Six Hundred Twenty One and 06/100 Dollars ($236,621.06) – specifically <u>One Hundred Sixty-One Thousand, Seven Hundred Eighty-Eight and 92/100 Dollars ($161,788.92)</u>; and

(D) Granting such other relief as is just and proper.

Dated: June 12, 2014

Respectfully submitted,

By: _____
*First Midwest Bank*