**IT IS SO ORDERED.**

**SIGNED THIS: July 31, 2014**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In re:     EARL GAUDIO & SON, INC.,            Case No.      13-90942

               Debtor.                Chapter 11

**ORDER**

The following having been filed:

1) First Interim Fee Application of First Midwest Bank (#235)

2) U.S. Trustee's Objection to First Interim Fee Application of First Midwest Bank (#240)

3) The Official Unsecured Creditors' Committee's Limited Objection to First Interim Fee Application of First Midwest Bank (#242)

-1-

    4)    Supplement to First Interim Fee Application of First Midwest Bank (#247)

IT IS ORDERED THAT:

| Matter | Action |
| --- | --- |
| 1,2,3,4 | The First Interim Fee Application of First Midwest Bank ("Bank") is allowed. Interim compensation in the amount of $398,409.98 representing 90% of the $442,677.75 in fees incurred during the Fee Period is allowed to the Bank. Expense reimbursement of $487.50 is allowed to the Bank. The estate may pay the Bank forthwith the expense reimbursement of $487.50 and compensation in the amount of $161,788.92 which represents the amount of compensation allowed hereby less payments of $90,000 paid November 11, 2013, and $146,621.06 paid March 31, 2014. |

The Court grants the relief requested by the Bank with reluctance. The First Interim Fee Application ("Fee Application") falls well short of the recognized requirements for professionals seeking fees. The Bank asserts that it is entitled to significant fees because of the successful sale of the bulk of the estate's assets. But it is impossible to determine from the detail presented how much time was incurred in that effort. Many — if not most — time entries on Exhibit A to the Fee Application describe the work done in only generic terms, and the relationship of the work to any particular project is not discernible.

More troubling is the fact that no clear calculation of the fees requested is presented in the Fee Application, and Exhibit A is very confusing. Exhibit A actually consists of six separate invoices. Adding the final bottom lines of the invoices does not total the fee amount requested in the Fee Application. The actual "balance due" calculations shown on Exhibit A bear little relationship to the amounts claimed in the Fee Application

The first set of invoices in Exhibit A consists of fifty pages. The first

forty-three pages of that set are a December 16, 2013, billing to Earl Gaudio & Son, Inc. The itemized fees for the period July 19, 2013, through September 15, 2013, are for $172,355.42, but the bill also references a previous balance of $97,198.75, resulting in a total balance due of $269,554.17. The Court finds no disclosure of what appears to be a pre-petition obligation in the Application to Employ Bank (#49), and there is no discussion of that balance due in the Fee Application. The last seven pages of the first set of invoices is a bill to UPS Stores for a similar time period. Itemized time is for $12,777.50, but a previous balance is shown in the amount of $1225, resulting in a total billing of $14,002.50. Again, neither the Application to Employ nor the Fee Application discusses the pre-petition balance due from UPS Stores.

The second set of invoices in Exhibit A consists of sixty-nine pages. The first sixty-one pages are a bill to Earl Gaudio & Son, Inc. for the period September 16, 2013, through January 31, 2014. The itemized fees on the bill are $183,579.75 with itemized expenses of $487.50, for a total of new charges of $184,067.25. The bill then says that a previous balance of $269,554.17 is due. Credit is given for a July 19, 2013, payment of $15,000 — a payment made on the date the petition was filed but not disclosed in the Application to Employ or discussed in the Fee Application. Credit is also given for a $90,000 payment made on November 18, 2013, pursuant to an order entered October 11, 2013, regarding compensation procedures. After taking all of the charges and credits into consideration, a remaining balance due of $348,621.42 is claimed.

The last eight pages of the second set of invoices is a bill to UPS Stores for the period September 16, 2013, through December 17, 2013. The bill itemizes $11,265 in new charges and claims a previous balance due of $14,002.50, resulting in a total billing of $25,267.50.

The third set of invoices in Exhibit A consists of twenty-two pages. The first seventeen pages are a bill to Earl Gaudio & Son, Inc. for the period February 2, 2014, through March 31, 2014. The bill itemizes new charges of $39,030 and claims a previous balance due of $348,621.42, resulting in a new total due of $387,651.42. The last five pages of the third set of invoices is a bill to "EGS, Inc. -

Forensic, BK #13-90942." In the absence of any narrative in the Fee Application explaining this invoice, it is unclear whether this billing was made to separate out forensic accounting work from other day-to-day operational work. In any event, the bill itemizes $23,670 in charges.

Adding the final invoices for each of the entities billed does not result in the total bill of $442,67.75 claimed by the Bank. After several attempts, through trial and error, the Court determined that to reach that number, one must add the $172,355.42 and $12,777.50 of new time from the first set of invoices, the $183,579.75 and $11,265 from the second set of invoices, and the $39,030 and $23,670 from the third set of invoices. This results in a total of $442,677.67 — $0.08 less than the amount claimed — and as close as this Court could get. The unexplained and repeatedly-billed pre-petition balance due is ignored in the calculation. And to determine the actual amount payable, the $90,000 November 2013 payment and an additional March 2014 payment of $146,621.06 are considered, but the unexplained and apparently undisclosed payment of $15,000 on the date of filing is ignored. Adding further confusion, the March 2014 payment is not shown as received nor credited on the last invoices which are dated June 2014.

The Court also questions the expense reimbursement request. All of the expenses are itemized on page sixty of the second set of invoices in Exhibit A. All of the expenses are for travel, but no method of calculating the expenses is disclosed. The Supplement says that mileage has not been charged by the Bank and the expenses appear to be hourly charges. Further, this method of charging for travel appears to have been used only from November 2013 through January 2014. Previous travel such as that shown on pages six and seven of the same bill is shown as a time charge by "ATT." But "ATT" is not identified as any particular employee so those charges are also suspect.

Despite serious problems with the Fee Application, this Court is giving the Bank the benefit of the doubt and allowing a substantial interim award and payment at this time. But the Bank is admonished that it should have done a much better job of

justifying its fees and, in particular, explaining the issues regarding the pre-petition debt and day-of-filing payment. This Court is not required to search the entire record looking for justification for the fees sought. As the U.S. Trustee correctly points out, the Bank has the burden of proof to establish its entitlement to the fees requested. And the Bank must immediately alter its billing system to stop billing for pre-petition fee amounts. Other creditors would be sanctioned if they persisted in billing in the way that the Bank has been doing.

The Court recognizes that the Bank may blame the change in judge in this case and the Court's unfamiliarity with the case for its perceived failures here. But the fact that there would be a change of judge in this case has been posted on the Court's website since January 2014, and the change occurred before the Fee Application was filed. The failure to provide a narrative about what has been going on in the case and to provide a clear calculation of the actual fees being requested falls squarely on the Bank. The missing information is required and should have been provided even if there had been no change in judge. The Bank is admonished that all discrepancies identified herein must be explained before any further fees or expenses will be allowed. And the Bank is further admonished that the allowance and payment of fees and costs authorized hereby is interim in nature and subject to reconsideration if the requested explanations are not forthcoming or prove to be inadequate to justify the award made.

As a final note, this Court declines the suggestion by the Unsecured Creditors Committee that only 80% of fees requested be paid at this time. The Court disagrees with the Committee that a bigger hold-back would serve as an incentive to expedite remaining work. Despite the Court's criticism of the Fee Application, no evidence was presented that either the Bank or its attorneys have been dilatory in liquidating assets or otherwise moving this case along.

###

Go to *www.ilcb.uscourts.gov* for information regarding this court's mandatory electronic filing policy.