IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

In re:                                    )        Case No. 13-90942
                                          )
EARL GAUDIO & SON, INC.,                  )        Judge Mary P. Gorman
                                          )
                      Debtor.             )        Chapter 11

## SUMMARY OF SECOND INTERIM APPLICATION OF FIRST MIDWEST BANK, CUSTODIAN FOR THE DEBTOR, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 1, 2014 TO JUNE 15, 2017

Name of Applicant:                                 First Midwest Bank

Authorized to Provide
Professional Services as:                          Custodian Debtor

Date of Application:                               November 22, 2017

Date of Order Approving
Appointment:                                       August 29, 2013

Period for which Fees and
Reimbursement are sought:                          April 1, 2014 to June 15, 2017

Amount of Fees sought as Actual,
Reasonable and Necessary:                          $694,773.00

Amount of Expense
Reimbursement sought as Actual,
Reasonable and Necessary:                          $1,704.32

Total Amounts of Fees and Expenses
Sought to Be Reimbursed as Actual,
Reasonable and Necessary:                          $696,477.32

This application is: __X__ interim _____ final.

Date: November 22, 2017

First Midwest Bank as Custodian for Debtor

By: _____

Its: _____

I\12481302.4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 13-90942 |
| | ) | |
| EARL GAUDIO & SON, INC., | ) | Judge Mary P. Gorman |
| | ) | |
| Debtor. | ) | Chapter 11 |

## SECOND INTERIM APPLICATION OF FIRST MIDWEST BANK, CUSTODIAN FOR THE DEBTOR, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 1, 2014 TO JUNE 15, 2017

First Midwest Bank ("First Midwest"), Custodian for to the Debtor in the above-captioned Chapter 11 case, hereby applies for Allowance of Compensation and Reimbursement of Expenses ("Second Application"), for the Second Interim Period from April 1, 2014 to June 15, 2017 (the "Second Interim Period") in accordance with (a) 11 U.S.C. §§ 330 and 331, (b) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (c) the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 adopted by the Executive Office for United States Trustees (the "UST Guidelines").

In support of this Second Application, First Midwest respectfully represents as follows:

**PART A: PRELIMINARY STATEMENT**

1.　　On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

I\12481302.4

2.      This Court has jurisdiction over this Second Application pursuant to 28 U.S.C. §§ 157 and 1334.

3.      On July 24, 2013, the Debtor filed its *Application for Order Approving Employment of First Midwest Bank as Custodian and Confirming Scope of Authority* (Doc. 49).

4.      On August 29, 2013, this Court entered an *Order Authorizing Employment of First Midwest Bank and Confirming Scope of Authority* (the "Retention Order") (Doc. 73), wherein the Court authorized the employment of First Midwest as Custodian of the Debtor and granted administrative expense priority, as allowed by the Court, to the fees and expenses incurred by First Midwest.

5.      Pursuant to the *Order Granting, in Part, Motion for Authority to Implement Interim Compensation Procedures* entered on October 11, 2013 (the "Interim Procedures Order") (Doc. 138), the Debtor, after notice to the United States Trustee ("U.S. Trustee") and the Official Committee of Unsecured Creditors formed herein (the "Committee"), was authorized to distribute two (2) partial payments to First Midwest, a payment on November 11, 2013 in the amount of Ninety Thousand and 00/100 Dollars ($90,000.00) and a payment on March 31, 2014 in the amount of One Hundred Forty-Six Thousand, Six Hundred Twenty-One and 06/100 Dollars ($146,621.06), which together total Two Hundred Thirty-Six Thousand, Six Hundred Twenty-One and 06/100 Dollars ($236,621.06).

6.      On June 13, 2014, First Midwest filed and subsequently supplemented its first interim fee application (as supplemented, the "First Interim Fee Application") seeking approval of fees and expenses incurred from July 19, 2013 to March 13, 2014 in the amount of Four Hundred Forty-Two Thousand, Six Hundred Seventy-Seven and 75/100 Dollars ($442,577.75)

I\12481302.4

and Reimbursement of Expenses in the amount of Four Hundred Eighty-Seven and 50/100 Dollars ($487.50) (Doc. 235).

7.      On July 31, 2014 the Court entered an Order at Doc. 264 (the "First Interim Order") allowing fees requested in the First Interim Fee Application in the amount of $398,409.98 representing 90% of the $442,577.75 in fees and authorized the Debtor to pay that amount to First Midwest.  The First Interim Order permitted the Debtor to pay First Midwest an expense reimbursement in the amount of $487.50 and fees in the amount of $161,788.92 which represented the amount of compensation allowed less the payments of $90,000.00 paid November 11, 2013, and $146,621.06 paid March 31, 2014.

8.      During the Second Interim Period, and pursuant to the Interim Procedures Order, First Midwest submitted requests for partial payment of fees and full reimbursement of expenses to the U.S. Trustee and the Committee as follows:

| Submittal Date | Period Covered | Fees Incurred | Fees Requested | Costs Requested | Amount Paid (Fees and Expenses Requested) |
|---|---|---|---|---|---|
| 12/11/2014 | 4/1/2014 – 11/15/2014 | $158,540.00 | $118,905.00 | $0.00 | $118,905.00 |
| 6/19/2015 | 11/16/2014 – 3/15/2015 | $119,294.50 | $89,470.88 | $455.51 | $89,926.39 |
| 12/17/2015 | 3/16/2015 – 5/31/2015 | $105,693.50 | $79,270.00 | $448.50 | $79,718.50 |
| TOTALS | | $383,528.00 | $287,645.88 | $904.01 | $288,549.89 |

9.      All services rendered and expenses incurred for which compensation or reimbursement is requested in this Second Application were performed or incurred for or on behalf of the Debtor.

10.     First Midwest submits that the services described in this Second Application are actual, necessary services and the compensation requested for those services is reasonable.

11.     This Second Application covers a very long period of three years and two and a half months.  During that time period, as more fully described below First Midwest oversaw all

of the operations of the Debtor, the adversary proceedings, and the sale of the debtor's assets. The sale of the remaining asset, the Debtor's warehouse, closed after the Second Interim Period, but a significant amount of the work was done during the Second Interim Period. First Midwest and its counsel have worked to keep the office of the U. S. Trustee, Committee counsel and counsel for the U.S. Small Business Administration apprised of developments throughout the Second Interim Period.

12.     This case is administratively insolvent. The Debtor plans to file a proposed Plan of Liquidation very soon.  First Midwest anticipates that the proposed Plan will provide for payment of the unpaid allowed professional fees of First Midwest and of Ice Miller LLP, counsel to the Debtor, on a subordinated basis, pro rata after the other allowed unclassified claims, allowed secured claims, and other allowed priority claims to be paid under the Plan have been paid as provided therein. In other words, First Midwest and Ice Miller will agree to subordinate payment of their unpaid professional fees in order to permit the allowed claims of other administrative, secured and priority creditors to be paid ahead of their unpaid allowed claims.

13.     In this Second Application, First Midwest requests the allowance of $694,773.00 in compensation for fees, of which $287,645.88 has already been paid, and $1,704.32 for reimbursement of expenses, of which $904.01 has already been paid, for a total of $696,477.32, of which the aggregate amount of $288,549.89 has already been paid, for the Second Interim Period of April 1, 2014 through June 15, 2017, and further requests that the Court authorize the Debtor to pay 50% of the unpaid fees and 100% of the unpaid expenses allowed as requested in this Second Application before the end of 2017, and the remaining amounts pursuant to subsequent order. The full amount allowed as a result of this Second Application would be part

I\12481302.4

of the calculation of the pro rata distribution to be made pursuant to the terms of the proposed

Plan.

## PART B: GENERAL INFORMATION

1.    **Second Interim Period: April 1, 2014 through June 15, 2017.**

Amount of Fees Requested for Allowance:          $694,773.00

Expenses Requested for Allowance:               $1,704.32

Total:                                          $696,477.32

2.    **General Information.**

a.    First date services rendered in this case:  July 19, 2013

b.    The compensation request is under 11 U.S.C. § 331.

c.    Any fees awarded will be paid from the estate.

3.    **Billing Rates.**

First Midwest has charged hourly rates as shown on Exhibit A for the period it has served

as Custodian of the Debtor in this case. Biographies of each of the individuals listed in Exhibit A

are attached hereto as Exhibit A-3.

## PART C:  BILLING SUMMARY

1.    **Summary Description of Services Rendered and Hours Expended.**

During the Second Interim Period, First Midwest's services included the following:  First

Midwest prosecuted adversary proceedings in order to recover assets to the estate.   Eight

adversary proceedings were filed and resolved during the Second Interim Period, bringing a total

of $426,000 into the estate, and Regions Bank's secured claims were resolved with a final

payment from the estate of $17,500. In addition, ongoing litigation against the Debtor's insiders

and corporate entities owned by one of the insiders was resolved. While First Midwest strongly

6

believed and continues to believe that the allegations in its amended complaint against the insiders were strong and supported by significant evidence, the matter was settled in light of the difficulties presented by ongoing costs, delay, and other concerns. First Midwest concluded that the cost of further pursuit of that adversary proceeding could be significant and that the amounts that the estate could realize if a favorable judgment were obtained by on behalf of the estate, taking into account the costs of completion of discovery, summary judgment briefing, trial, and/or an appeal, might be less than the amounts to be realized through settlement.  Accordingly, in light of those considerations, a settlement was negotiated and consummated.

An adversary proceeding was brought seeking turnover or recovery of an interim distribution made to the U.S. Small Business Association based on a claim secured by the Debtor's warehouse property asserted by the SBA. While First Midwest had hoped for a straight-forward resolution of that matter, those hopes have not been realized, and the estate has been required to expend significant funds responding to numerous objections and other filings by the SBA.  First Midwest will seek to resolve the SBA adversary proceeding promptly in light of the sale of the warehouse property that was subject to the SBA's mortgage.

First Midwest has worked closely with retained legal counsel in this case, but throughout, First Midwest and counsel have closely monitored their work in order to avoid duplication of effort. First Midwest's efforts in the adversary proceedings focuses primarily on development and support of the factual aspects of the issues, while counsel's focus is primarily on the legal and procedural aspects.

First Midwest, together with other retained professionals, prepared and filed a revised federal tax return, providing significant savings to the estate, and in addition addressed numerous tax obligations on behalf of the estate.  First Midwest also worked to determine claims as

7

appropriate for objection and payment.  Objections to priority and secured claims were filed and resolved.  In addition, the Custodian devoted significant time to the accounting, business operation and related administrative functions for which it was appointed.

During the Second Interim Period the UPS stores were shut down and the saleable assets were marketed and disposed of.  In addition, First Midwest worked with counsel to and the professionals worked hard to resolve access issues that limited the value of the Debtor's warehouse property and then to market and identify a buyer for that property.  The warehouse property had been purchased by the Debtor for approximately $4.5 million.  Unfortunately, and in spite of resolution of the access issues and significant marketing efforts, the warehouse property ultimately did not generate the value that had been expected.

During the Second Interim Period, First Midwest performed services as summarized in the following categories:

a.  **Accounting/Auditing**.  This category was used by First Midwest primarily for services related to management, review and oversight of the Debtor's accounts and finances.  Services in this category during the Second Interim Period included: completed monthly accountings for the Debtor and UPS Stores; reconciled cash and credit card deposits for the UPS stores to the bank statements; reconciled accounting and bank statements in connection with monthly reporting; obtained general ledgers from accountant; prepared schedules for each category of disbursements from the EGS bank accounts and payees; analyzed statements and transactions to identify support for Court filings; worked on income and expenses for 2015; retrieved statements to complete accountings, reconciled daily deposit reports and bank statements.  The total number of hours expended in this category during the Second Interim Period was 378.30.

b.  **American Express Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against American Express.  Services during the Second Interim Period in this category included: researched American Express transactions and preferential transfers; reviewed issues and complaint against American Express and made revisions to same; reviewed settlement discussions and strategy; reviewed pretrial statement, expert report, witness disclosures; considered investigation and discovery; evaluated E. Gaudio statements and considered deposition; attended to settlement negotiations; and finalized settlement agreement.  This matter resulted in a settlement that provided a $99,000 recovery to the estate and claims waiver.  The total number of hours expended in this category during the Second Interim Period was 10.40.

I\12481302.4

c.      **Asset Analysis & Recovery**. This category was used by First Midwest for services related to analysis and potential recovery of assets of the estate.  Services during the Second Interim Period in this category included:  analyzed Protek's forensic analysis of Gaudio computers and worked with Protek regarding further investigation; researched support for 90-day transfer preference and set-off analyses; reviewed corporate filings and evaluated profit and loss statements and sale transactions to consider adversary actions to recover losses; researched EGS bank accounts and loans for potential adversary actions; completed spreadsheets and reconciliations related to same; evaluated potentially fraudulent payments and transfers; worked to subpoena documents from Gaudios' financial institutions; searched for assets of Gaudios and researched values of Gaudio properties; worked on exhibits for adversary complaints; worked on lis pendens releases; communications regarding life insurance policies; reviewed financial statements and strategy to recover fraudulent transfers; reviewed class action suit related to trucks owned by EGS; reviewed tax issues in relation to liens.  The total number of hours expended in this category during the Second Interim Period was 96.40.

d.      **Asset Disposition**.  This category was used by First Midwest for services related to the sale and other disposition of assets of the estate.  Services during the Second Interim Period in this category included: supervised packing and removal of equipment and personal property; prepared communications regarding sale of 1803 building; compiled list of personal property and vehicles for auction for court approval; compiled list of vehicle titles held by vendors; exchanged communications and correspondence with lenders regarding sale of vehicles and obtaining titles; exchanged communications with auction service regarding vehicle titles; exchanged communications regarding sale of properties and approval by the Court; oversaw auction in Clinton, Illinois; reviewed and approved auction settlement statement; discussed offer for lease of 1803 Georgetown Road; reviewed purchase offers; addressed 1803 easement issue and development inconsistencies with Illinois Department of Transportation; prepared income statement for UPS stores required for franchise compliance and for distribution to prospective buyer; exchanged communications regarding purchase of UPS franchise and pre-approval requirements; reviewed and responded to offer for 1803 Georgetown Road; prepared letters to prospective buyers regarding the sale process; researched lease expiration date, financial and payroll information, and equipment leases for potential buyers; prepared balance sheet for potential buyers; attended site visit with potential buyers of Danville UPS store and answered due diligence questions; prepared correspondence regarding possible sale of Pizza Hut building; reviewed UPS store goodwill details; conducted telephone conferences with prospective purchasers of UPS store; provided details of store fixtures and inventory for potential buyers; exchanged correspondence regarding approval of UPS store sale; assisted in preparation of motion to sell the UPS stores; and reviewed and approved repair estimates for air conditioner at Champaign UPS store; inspected 1803 warehouse to assess, sort and inventory contents; attended to estimates for clearing office and warehouse, maintenance at warehouse and for real estate broker services; site visits for security checks, mechanical inspections and maintenance issues; attended to utility accounts and invoices; reviewed marketing and sales considerations; finalized closing of accounts of UPS Store; meetings with Hilco Real Estate and prospective buyers; examined and considered bids; worked on and finalized asset purchase agreement.  The total number of hours expended in this category during the Second Interim Period was 333.60.

I\12481302.4

e.     **Business Operations**.  This category was used by First Midwest primarily for services related to the oversight and management of the Debtor's daily business and financial operations, both of the UPS stores and the Debtor's other operations.  Services during the Second Interim Period in this category related to the UPS Stores included: provided oversight of daily operations of UPS stores, including analyzed receipts and royalty reports, calculated payroll and payroll tax information; prepared cash reconciliations; reconciled credit card deposits to bank statements; reconciled daily register reports; reviewed company correspondence and routed to appropriate source with direction and analysis; researched and prepared weekly payables for approval; communications with vendors regarding invoices; prepared sales tax reports; reviewed insurance policies; managed changes and transfers of bank accounts; submitted request to Illinois Department of Employment Security for abatement of Third Quarter 2013 liability; conducted site visits to Danville UPS Store and Champaign UPS Store; reviewed employee work schedules and time sheets and communicated with UPS employees regarding the same; attended to overtime hours and vacation accrual; prepared communications with ADP regarding tax liability credits and payments; prepared correspondence to store managers regarding quarterly statements for the UPS stores; administered payroll for UPS store employees; identified vendors to be issued a Form 1099; and conducted discussions with UPS regarding franchise assignment and costs of assigning franchise.  Services during the Second Interim Period in this category related to the Debtor's other operations included: provided oversight and supervision of the Debtor's operations, prepared communications regarding the Debtor's invoices and credit card charges; conducted site visits for purposes of security checks and reset of alarms; provided arrangements for disconnection of electrical and refrigeration apparatus at EGS site; participated in communications with counsel regarding estate; oversaw lawn care and maintenance service for EGS site; researched real estate property taxes to be paid; attended to damage to property and met with contractors for repairs to concrete curbs, plumbing, alarm system, and driveway; prepared inventory of fixtures for filing with Court; worked with accountants regarding tax returns and reconciliation for tax return amendment for EGS; reviewed insurance audit issues; reviewed and renewed insurance policies; prepared corporate resolutions; identified vendors to be issued a Form1099; and prepared annual corporate reports.  The total number of hours expended in this category during the Second Interim Period was 757.50.

f.     **Case Administration**.  This category was used by First Midwest for services related to general administration and preparation of the Monthly Operating Reports. Services during the Second Interim Period in this category included: prepared monthly bankruptcy reports; discussed Iroquois payoff; reviewed communications from U.S. Trustee regarding bankruptcy report discrepancies and addressed discrepancies; prepared income statements for bankruptcy reports; worked on new processes and modifications for bankruptcy report to address the U.S. Trustee's concerns; analyzed subpoena productions from financial institutions and determined use of documentation for estate issues and assess the need for further detail in the productions; exchanged follow-up correspondence with financial institutions regarding documentation and information requested; prepared for meetings with creditors' committee; and assisted with set-off and preference payment analyses.  The total number of hours expended in this category during the Second Interim Period was 299.80.

g.     **Citibank Litigation**. This category was used by First Midwest for services related to the Debtor's adversary proceeding against Citibank.  Services during the Second

Interim Period in this category included:  assisted in preparation of factual information for complaint against Citibank; evaluated records and calculations for same; reviewed potential settlement negotiations and strategy; reviewed and revised draft settlement agreement and reviewed Citibank's proposed changes; and finalized settlement agreement. This matter resulted in a settlement that provided a $90,000 recovery to the estate and claims waiver.   The total number of hours expended in this category during the Second Interim Period was 6.50.

h.     **Claims Administration and Objections**.   This category was used by First Midwest for services related to the determining and reviewing claims and claim objections, including for potential adversary proceedings.  Services during the Second Interim Period in this category included: reviewed and analyzed claims filed by numerous creditors; reviewed Debtor accounts for transactions to offset bankruptcy claims; examined forensic spreadsheet in connection with claims analysis; researched and gathered data related to claims for possible objection or adversary proceeding; sorted and extracted data to support or offset bankruptcy claims; prepared audit trail files; prepared reconciliation spreadsheet for proofs of claim received to bankruptcy schedule, general ledger, and documentation; assisted with settlement of Regions claim; assisted with information for filing of potential adversary pleadings; worked on factual information for objections to claims; analyzed factual information for preferences and set-off claims; evaluated various claims and potential resolution of claims; researched IDES notices and lien payments in connection with claims; reviewed tax documents to evaluate IRS claims; reviewed claims of Schedule E and F creditors and proof of claims filed to evaluate if claims are correctly classified; prepared updates to claims chart; research related to bonus checks issued and administrative claims of employees; examined documents to evaluate administrative claims.  The total number of hours expended in this category during the Second Interim Period was 266.90.

i.     **Dennis Gaudio Claim Objections/Adversary**.   This category was used by First Midwest for services related to the Debtor's adversary proceeding against Dennis Gaudio.  Services during the Second Interim Period in this category included: reviewed and assisted with draft objection and adversary action against Dennis Gaudio; researched facts and examined documents regarding same; considered settlement strategy; correspondence with Mr. Gaudio regarding financial documents of bankruptcy estate; participated in settlement negotiations; assisted with information for discovery related to Gaudio adversary; worked on summary judgment and settlement strategy; revised settlement agreement and judgment.  This matter was resolved together with the Eric and Dennis Gaudio Litigation discussed in item (k), below. The total number of hours expended in this category during the Second Interim Period was 10.0.

j.     **Discover Card Litigation**. This category was used by First Midwest for services related to the Debtor's adversary proceeding against Discovery Card.  Services during the Second Interim Period in this category included:  reviewed and commented on draft complaint against Discover Card; evaluated settlement negotiations and strategy; reviewed terms of settlement; revised settlement agreement; finalized settlement agreement.  This matter resulted in a settlement that provided a $42,500 recovery to the estate and claims waiver.   The total number of hours expended in this category during the Second Interim Period was 4.10.

k.     **Eric and Dennis Gaudio Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against Eric Gaudio, Dennis Gaudio,

1803 LLC and Gaudio Diversified Ventures, LLC, entities owned by Eric Gaudio.  Services during the Second Interim Period in this category included: analyzed factual information and identified documents to respond to request from U.S. Attorney's Office; reviewed subpoena correspondence and prepared follow-up communications regarding subpoenas; prepared communications to obtain information relating to credit cards used by Gaudios; prepared correspondence and communications with Department of Labor regarding DOL's document request; prepared records for delivery to Department of Labor; participated in conferences and prepared correspondence regarding data files; conducted research of the Sprague and other Gaudio properties to trace wires to the title company; researched current business ventures of defendants; analyzed defendants' financials; analyzed bank statements for improper expenditures to support claims in adversary complaint; prepared for pretrial conference; examined and analyzed documents received from banks pursuant to subpoenas; prepared correspondence to banks with follow-up inquiries regarding records produced; prepared spreadsheet of data collected from banks; prepared calculation of damages and initial disclosures; gathered further information to support adversary complaint; reviewed records and identified documents for response to subpoena issued by defendants' attorneys; reviewed preliminary exhibit and witness list and provided additional information; researched databases to search for additional assets for EGS; analysis of bank statements and data to trace company wire from EGS account for 1803 LLC purchase and to identify accounts that belong to the UPS stores; analysis of checks, deposits, and withdrawals to determine large transfers and non-business related expenses to support claims in adversary complaint; identified documents from bank records to be relied upon during mediation; prepared spreadsheet detailing data extracted from bank statements; reviewed and commented on draft adversary complaint against defendants; participated in settlement discussions; reviewed data for recoverable assets; analyzed bank statements and ACH withdrawals; prepared index of non-party discovery documents; identified mediation exhibits; prepared spreadsheet to track movement of funds;  analyzed general ledgers for data to substantiate exhibits for adversary complaint; analyzed financial documents and determined subpoenas to be issued and documents to be requested; analyzed  GDV Note Receivable documents and prepared GDV note reconciliation; analyzed payroll data to verify identity of employees and pertinent payroll transactions to support adversary complaint; compiled and finalized exhibits; identified and organized exhibits for Gaudio depositions; analyzed account transactions and withdrawals by Gaudio; analyzed credit card charges and Paypal transactions; analyzed transfers to defendants to determine damages claim and response to settlement letter; assisted in preparation for Gaudio depositions; attendance at Gaudio depositions; determined follow-up to document subpoenas; exchanged communications with financial institutions regarding subpoena follow-up; participated in trial and mediation preparation; assisted in preparation of statement of damages; reviewed and abstracted Gaudio depositions in preparation for mediation and trial; prepared mediation exhibits; gathered requested documentation for use by expert; participated in review and revisions to responses to defendants' discovery requests; participated in mediation; reviewed discovery responses and documents received from defendants; prepared exhibits for second amended complaint; worked on back-up support for adversary claims; followed up regarding subpoenas and efforts to enforce compliance; examined and prepared records for supplemental production; provided factual support and comments on motion for default judgment; prepared damages calculations in connection with default motion; finalized settlement agreement and releases. This matter resulted in a default judgement against the corporate defendants and settlement that provided a $150,000 recovery to the estate and

claims waivers. The total number of hours expended in this category during the Second Interim Period was 1,256.29.

l.     **Employee Benefits/Pension**.  This category was used by First Midwest for services related to the Debtor's benefits plans.  Services during the Second Interim Period in this category included: compiled 401(k) information for Department of Labor; prepared tax return; exchanged communications regarding 401(k) compliance issues; calculated contributions for 401(k) plan; prepared information for 2011 401(k) plan; prepared transmittal of forms and payment for 401(k) plan; compiled 2013 401(k) profit sharing plan data for Form 5500; updated employee census entries in TRA system; reviewed TRA invoice for additional charges; researched and gathered data in preparation of TRA 401(k) verification; recorded data in 401(k) data collection reconciliation spreadsheet; exchanged communications with Dennis Gaudio regarding distributions from his 401(k) account at Scottrade; processed download of 401(k) data to TRA website; reviewed and approved Form 5500 for filing; amended 2010 5500 for 401(k); prepared data collection file to complete IRS tax forms for the 401(k) Profit Sharing Plan for plan year ending 2014; reconciled 401(k) balances to individual investment account balances for prior years; reviewed subpoenaed records to identify records to complete reconciliation; reviewed and filed Form 5500 for 2011; researched and analyzed data and payroll records for 2012 employee 401(k) census compliance report; exchanged communications with Voya to obtain current balance on all participant accounts; exchanged communications regarding requests for distributions; assessed data regarding benefits and pension plans and work to finalize employee benefits records and returns; attention to procedures and processing of distributions. The total number of hours expended in this category during the Second Interim Period was 272.90.

m.     **Fee/Employment Application**.  This category was used by First Midwest for services related to preparation of fee requests.  Services during the Second Interim Period in this category included: Prepared information for quarterly fee payment submissions to U.S. Trustee. The total number of hours expended in this category during the Second Interim Period was 2.50.

n.     **Fee-Employment Objections**.  This category was used by First Midwest for services related to objections to fee applications of professionals retained by the Debtor. Services during the Second Interim Period in this category included: communications regarding fees and fee applications of professionals.  The total number of hours expended in this category during the Second Interim Period was 0.20.

o.     **JP Morgan Chase Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against JP Morgan Chase.  Services during the Second Interim Period in this category included: assisted with backup and supporting material for complaint against JP Morgan Chase; reviewed settlement strategy and negotiations; assisted with discovery requests; assisted with discovery responses; reviewed and considered settlement demand; prepared and finalized settlement agreement.  This matter resulted in a settlement that provided a $60,000 recovery to the estate and claims waiver. The total number of hours expended in this category during the Second Interim Period was 8.40.

p.      **Litigation Consulting**.  This category was used by First Midwest on a very limited basis for services related to general litigation.  Services during the Second Interim Period in this category included: Reviewed defendants' subpoena requests; tracked 401(k) adjustment analysis; and reviewed subpoena lists to assess whether further investigation is required.  The total number of hours expended in this category during the Second Interim Period was 1.20.

q.      **Paul Offutt Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against Paul Offutt and his corporate entities, Security Ventures, Inc. and Offutt Development, Inc. related to the 1803 Georgetown Road property.  Services during the Second Interim Period in this category included: reviewed survey for 1803 Georgetown Road; communications regarding potential offer for property and destruction of property by Mr. Offutt; reviewed insurance claim for resultant damage to property; prepared correspondence to Mr. Offutt regarding damage; prepared for pretrial with counsel; reviewed documents received regarding sale contract; provided facts and information to complete adversary complaint; reviewed and revised affidavit for complaint; worked on response to defendant's request for production of documents; participated in settlement discussions; reviewed quotes for construction of access road to correct construction errors and to comply with IDOT requirements; reviewed and revised joint pretrial submission and memorandum; reviewed amended complaint and defendant's motion to dismiss same; worked on objection to motion to dismiss; assisted with damages calculations; researched costs incurred for access and delay issues; worked on Rule 26 disclosures; assisted litigation strategy and settlement negotiations; reviewed witness and exhibits lists; reviewed terms of settlement and handling of pending deposition subpoenas; prepared revisions to settlement agreement, easement agreement and stay agreement; attended depositions; gathered additional information needed to finalize settlement.  This matter resulted in a settlement that resolved the access issues at the property and resolved Mr. Offutt's claims. The total number of hours expended in this category during the Second Interim Period was 70.00.

r.      **Plan and Disclosure Statement**.  This category was used by First Midwest for services related to preparation of a plan and disclosure statement.  Services during the Second Interim Period in this category included: conferred regarding plan.  The total number of hours expended in this category during the Second Interim Period was 0.20.

s.      **Reconstruction Accounting**.  This category was used by First Midwest for services including supporting accounting work and the work of the Debtor's expert.  Services during the Second Interim Period in this category included: identified and gathered documents, including bank statements and credit card statements, to be provided to accountant; exchanged communications with accountant regarding reconciliation of the general ledger; reviewed and completed accounting of loans and accounts; reviewed payroll documentation for payroll process for the Gaudios; prepared Iroquois accounting; revised Specialty accounting; analyzed Citicard accounts and extracted relevant transactions; reviewed and analyzed Iroquois Federal, Morgan Stanley, Capital One, Chase Citicard, Discover, and First Midwest Bank to identify relevant transactions to be provided to expert; researched and analyzed loan information for Ally, Earl Gaudio, GE Capital, Iroquois Federal, Mercedes Benz Financial, Paul Offutt, U.S. Small Business Administration, Wells Fargo Equipment Finance, and World Business Lenders and created spreadsheet; exchanged communications with expert regarding financial history,

14

outstanding payables, and insolvency analysis; and verified multiple accounts from documents received pursuant to subpoena against spreadsheet of known financial relationships. The total number of hours expended in this category during the Second Interim Period was 152.10.

t.    **Regions Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against Regions Bank.  Services during the Second Interim Period in this category included: Assisted in preparation of complaint against Regions; examined loan documents and bank account records from Regions to assess distribution of funds and prepared analysis of same; participated in settlement negotiations; evaluated Regions' damages and attorney fee claims; analyzed terms of settlement and revised settlement agreement; finalized settlement.  This matter resulted in a settlement that reduced and resolved Regions' secured claims for a payment to Regions of $17,500.  The total number of hours expended in this category during the Second Interim Period was 13.80.

u.    **Specialty Distributing Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against Specialty Distributing.  Services during the Second Interim Period in this category included: reviewed Specialty's claim and supporting documents and considered response to claim; revised draft complaint; reviewed Specialty account records; evaluated defenses to claims; reviewed, sorted and inventoried records to respond to discovery; evaluated potentially fraudulent charges, employment records, account statements and payroll records in connection with claims; reviewed information and documentation for settlement discussions; gathered documents to offset claims and compiled information regarding claims; assisted with Rule 26 disclosures; researched general ledger and verified amounts paid to employees related to Specialty claims; compiled information for responses to discovery and in preparation for document production; facilitated document review by opposing counsel; analysis of settlement terms and negotiations; reviewed and finalized settlement agreement. This matter resulted in a settlement that provided a $35,000 recovery to the estate and resolution of the amount of Specialty's claim. The total number of hours expended in this category during the Second Interim Period was 201.90.

v.    **Tax Issues**.  This category was used by First Midwest primarily for services related to preparation of the Debtor's tax returns.  Services during the Second Interim Period in this category included: Completed Sales and Use taxes for UPS stores; researched unemployment tax remitted for Gaudio Retail LLC; finalized general ledger for preparation of 2012 tax return; prepared spreadsheet of taxes; prepared sales taxes for EGS; prepared payroll taxes and tax log; reviewed summons received from IRS and participated in follow-up conference with IRS agent regarding request for financial documents; conferences with accountant regarding income tax return preparation; provide information to accountant for preparation of 2012 tax return; updated tax spreadsheet with correspondence from tax agencies; reviewed and replied to IRS summons regarding Gaudio Diversified; prepared forms to close out EGS withholding account with the Ohio Department of Taxation and Ohio Department of Job & Family services; exchanged communications with Indiana state agencies regarding forms to close out EGS account with Indiana Department of Workforce Development and Indiana Department of Revenue and prepared form relating to the same; determined tax returns to be filed with all governmental agencies for 2013 and 2014; amended 2013 tax returns to be filed with Illinois Department of Revenue; exchanged communications with accountant regarding

reconciliation of general ledgers and potential  for amendment of various tax returns; exchanged communications with accountant regarding documentation and data needed to file tax returns; reviewed accountant's spreadsheet of adjustments for 2013 corporate return and verified claim amounts; reviewed and made adjustments to trial balance; worked on issues and documentation for preparation of 2015 and 2016 tax returns; reviewed strategies for reducing tax liabilities; analysis of general ledger and payroll for tax purposes; researched information in connection with real estate taxes; worked on revisions to claims schedules for tax purposes.  The total number of hours expended in this category during the Second Interim Period was 201.70.

   w. **Travel**.  This category was used by First Midwest Services to track travel time.  During the Second Interim Period, the time recorded in this category includes time for travel time to UPS stores for meeting with store employees, to 1803 Georgetown Road for security checks and site inspections, to accountants for data information, to Ice Miller Indianapolis office for meetings with counsel, and to Protek to pick up computers. The total number of hours expended in this category during the Second Interim Period was 13.20.

   x. **U.S. SBA Litigation**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against the U.S. Small Business Administration.  Services during the Second Interim Period in this category included: reviewed and provided edits for draft SBA complaint; considered settlement proposal; reviewed SBA claims against guarantors; reviewed draft response and materials related to settlement offer; reviewed issues related to SBA's proposed motion to convert to chapter 7; assisted with settlement efforts; assisted with Rule 26 disclosures; participated in pre-trial conference; reviewed issues regarding access to warehouse, settlement negotiations, discovery and summary judgment; worked on support for summary judgment motion, settlement negotiations and discovery; reviewed ruling on summary judgment.  This matter is ongoing.  The total number of hours expended in this category during the Second Interim Period was 21.20.

   y. **World Business Lenders**.  This category was used by First Midwest for services related to the Debtor's adversary proceeding against World Business Lenders.  Services during the Second Interim Period in this category included: reviewed and edited draft complaint against WBL; reviewed settlement discussions and strategy; reviewed draft settlement demand and results of pretrial conference; assisted with settlement negotiations; worked on disclosures and discovery requests and responses; compiled documents for discovery responses; edited settlement agreement; finalized settlement.  This matter resulted in a settlement that provided a $99,500 recovery to the estate, release of WBL's mortgage on the Debtor's property, and claims waiver.  The total number of hours expended in this category during the Second Interim Period was 21.80.

   **2.** **Detail of Services Rendered and Hours Expended.** Exhibits A-1 (Fee Summary) and A-2 (First Midwest Invoices) contain full detail of the services rendered and summaries of the hours expended during the Second Interim Period by First Midwest professionals.  The First Midwest Invoices attached as Exhibit A-2 have been redacted to protect

I\12481302.4

privilege. Because Exhibits A-2 and A-3 together are very voluminous, those Exhibits have not been served with the copies of this Second Application served by U.S. Mail, but are available upon request of the undersigned counsel.

**PART D:  EXPENSE SUMMARY**

First Midwest seeks allowance and reimbursement of expenses incurred during the Second Interim Period in the amount of $1,704.32, of which $904.01 has already been paid.  The expense amounts are calculated using the First Midwest's in-house actual cost. A summary of total expenses incurred by First Midwest during the Second Interim Period is included in Exhibit B-1 (Expense Summary) and the expenses are reflected in Exhibit A-2 (First Midwest Invoices).

WHEREFORE, First Midwest requests (i) allowance of $694,773.00 in compensation for fees, of which $287,645.88 has already been paid, and $1,704.32 for reimbursement of expenses of which $904.01 has already been paid, for a total of $696,477.32, of which the aggregate amount of $288,549.89 has already been paid, for the Second Interim Period of April 1, 2014 through June 15, 2017, (ii) an order approving these fees and expenses as allowable for the Second Interim Period, and (iii) an order directing the Debtor to pay First Midwest 50% of the amount of fees allowed as a result of this Second Application and not yet paid and 100% of the costs allowed pursuant to this Second Application and not yet paid prior to the end of 2017, with the balance to be paid pursuant to further order of the Court.

Dated: November 22, 2017                    Respectfully submitted,

                                            /s/ Victoria E. Powers
                                            Victoria E. Powers (Ohio Bar No. 00054589)
                                            ICE MILLER LLP
                                            250 West Street
                                            Columbus, OH 43215
                                            614-462-5010 – Telephone
                                            614-222-3478 – Facsimile
                                            victoria.powers@icemiller.com – Email
                                            *Counsel to the Debtor*

I\12481302.4

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2017, I electronically filed the foregoing *Second Interim Application of First Midwest Bank, Custodian for the Debtor, for Allowance of Compensation and Reimbursement of Expenses* with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the Debtor's counsel, the U.S. Trustee, and all parties receiving CM/ECF notice in this proceeding as set forth on the attached service list, and in addition, the parties listed on the attached service list as receiving service by U.S. Mail were so served, postage prepaid, at the addresses listed on the attached service list.

Respectfully submitted,

ICE MILLER LLP

By: /s/ Victoria E. Powers
    Victoria E. Powers
    250 West Street
    Columbus, OH 43215
    614-462-5010 – Telephone
    614-222-3478 – Facsimile
    victoria.powers@icemiller.com – Email

    *Counsel to the Debtor*

I\12481302.4

**SERVICE LIST**

Service by CM/ECF:

- Megan M. Adeyemo on behalf of Creditor Century Tokyo Leasing (USA) Inc.
  madeyemo@gordonrees.com, dhouser@gordonrees.com
- Thomas V. Askounis on behalf of Creditor Wells Fargo Equipment Finance, Inc.
  taskounis@askounisdarcy.com
- Edwin C. Barney on behalf of Creditor and Defendant Paul Offutt, Attorney Gilbert
  Saikley, Defendant Security Ventures, Inc. and Defendant Offutt Development, Inc.
  edwincbarney@sbcglobal.net
- Darren L. Besic on behalf of Creditor General Electric Capital Corporation and Creditor
  JPMorgan Chase Bank, N.A. darren@dbesiclaw.com, Nancy@dbesiclaw.com
- James L. Brougher on behalf of Creditor Iroquois Federal Savings and Loan and
  Defendant Village of Tilton, Illinois Jimb@danvillelawyers.com
- John David Burke on behalf of Debtor Earl Gaudio & Son, Inc.
  john.burke@icemiller.com
- Ben T. Caughey on behalf of Debtor Earl Gaudio & Son, Inc.
  ben.caughey@mcdlegalfirm.com
- Joseph P. Chamley on behalf of Official Unsecured Creditors Committee
  jchamley@efbclaw.com, jnieman@efbclaw.com
- Sherry D. Coley on behalf of Defendant World Business Lenders
  scoley@dkattorneys.com, cpogorzelski@dkattorneys.com, kmarquardt@dkattorneys.com
- Shannon M. DeLaMar on behalf of Creditor Illinois Department of Revenue
  sdelamar@atg.state.il.us
- Roy Jackson Dent on behalf of Defendant Offutt Development, Inc., Defendant Security
  Ventures, Inc. and Defendant Paul Offutt roy.jackson.dent@gmail.com
- Kevin Driscoll on behalf of Defendant JP Morgan Chase, N.A. kevin.driscoll@btlaw.com
- David J. Frankel on behalf of Creditor Mercedes-Benz Financial Services USA LLC
  dfrankel@sormanfrankel.com, ckauffman@sormanfrankel.com
- Christina Laun Fugate on behalf of Debtor Earl Gaudio & Son, Inc.
  christina.fugate@icemiller.com
- David H. Hoff on behalf of Creditor United States of America and Defendant United
  States Small Business Administration staci.klayer@usdoj.gov
- Michael Fredrick Holbein michael.holbein@agg.com
- Amrit Suresh Kapai on behalf of Creditor Wells Fargo Equipment Finance, Inc.
  akapai@askounisdarcy.com, hgill@askounisdarcy.com
- Brett Kepley on behalf of Defendant American Express bakepley@rosklaw.com,
  jhoerr@rosklaw.com
- Kathryn A. Klein on behalf of Creditor Ally Financial Inc. rb_bank@riezmanberger.com,
  riezmanberger@gmail.com
- Paul Samuel Kmett on behalf of Creditor Illinois Department of Revenue
  pkmett@atg.state.il.us
- Russell S. Long on behalf of Defendant World Business Lenders
  rlong@dkattorneys.com, ahalase@dkattorneys.com
- Jennifer L. Maffett on behalf of Creditor Mike-sell's Potato Chip Co.
  thdaytonecf@thompsonhine.com

- Terrence Miles on behalf of Creditor Dennis Gaudio packs@aol.com, info.mileslaw@aol.com
- Patrick Frasor Moran on behalf of Creditor Century Tokyo Leasing (USA) Inc. pmoran@gordonrees.com
- Steven L. Nelson on behalf of Creditor Specialty Distributing of Illlinois, LLC snelson@califf.com
- Kate R O'Loughlin on behalf of Creditor United States of America and Defendant United States Small Business Administration kate.oloughlin@sba.gov
- Sabrina M. Petesch on behalf of U.S. Trustee sabrina.m.petesch@usdoj.gov
- Victoria E. Powers on behalf of Debtor and Plaintiff Earl Gaudio & Son, Inc. victoria.powers@icemiller.com, Daniel.Anderson@icemiller.com, Sandy.Heaberlin@icemiller.com
- Jeffrey D. Richardson on behalf of Creditor Helen Gaudio jdrdec@aol.com
- Robert Fredrick Ritchie on behalf of Creditor Illinois Department of Revenue rritchie@atg.state.il.us
- James Edward Rossow on behalf of Official Unsecured Creditors Committee jim@rubin-levin.net, marie@rubin-levin.net
- Steven E. Runyan on behalf of Defendant 1803 LLC, Defendant Gaudio Diversified Ventures, LLC, Defendant Dennis Gaudio, Defendant Eric Gaudio srunyan@kgrlaw.com
- Amy T. Ryan    atr@mllfpc.com, bdm@mllfpc.com
- Christopher M. Tietz on behalf of Creditor Skeff Distributing Company, Inc. cmt@tietzlaw.com, tonya@tietzlaw.com
- U.S. Trustee USTPRegion10.PE.ECF@usdoj.gov
- Mark Roy Wenzel on behalf of Creditor and Defendant Regions Bank mwenzel@salawus.com, pdidandeh@salawus.com
- Bruce Eugene de'Medici on behalf of Defendant American Express bdemedici@gmail.com
- James A. Knauer on behalf of Defendant 1803 LLC, Defendant Gaudio Diversified Ventures, LLC, Defendant Dennis Gaudio, Defendant Eric Gaudio jak@kgrlaw.com, tjf@kgrlaw.com

U.S. Mail Service:

Peter E. Moll
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W.
Washington, DC 20001

Sundance Beverage
6600 East Nine Mile Rd
Warren, MI 48091

ADP
1 ADP Blvd
MS 325
Roseland, NJ 07068-1786

Mike-sell's Potato Chip Co.
333 Leo Street
Dayton, OH 45404

Anheuser-Busch
1 Busch Place
Saint Louis, MO 63118-1852

Regions Commercial Loan Payments
P.O. Box 11407
Birmingham, AL 35246

Employers Preferred Insurance Co.
13890 Bishops Drive
Suite 210
Brookfield, WI 53005

Clifton Larson Allen LLP
301 SW Adams
Suite 900
Peoria, IL 61656

Earl Gaudio & Son, Inc.
c/o First Midwest Bank as Custodian
Angela E. Major Hart
24509 West Lockport Street
Plainfield, IL 60544-2318

Illinois Department of Revenue
100 West Randolph Street
Legal Services M/C 7-900
Chicago, IL 60601

Vermilion County Collector
P.O. Box 730
Danville, IL  61834

Wells Fargo Equipment Finance, Inc.
733 Marquette Avenue, Suite 700
Minneapolis, MN  55402

Ameren Illinois
Credit and Collections
2105 E. State Route 104
Pawnee, IL 62558-4681

Argo Partners
12 W. 37th Street, 9th Floor
New York, NY 10018-7381

TR Capital Management, LLC
P.O. Box 633
Woodmere, NY 11598

Internal Revenue Service
P.O. Box 804521
Cincinnati, OH 45280-4521

Earl Gaudio & Sons, Inc. Pension Plan
P.O. Box 990067
Hartford, CT 06199

Illini FS
1509 East University Avenue
Urbana, IL  61802

Westfield Insurance
c/o Wells Fargo Insurance Services
P.O. Box 4016
Champaign, IL 61824

Iroquois Federal Savings & Loan
619 N. Gilbert Street
P.O. Box 1277
Danville, IL 61834-1277

Surepay
2350 Ravine Way, Suite 100
Glenview, IL  60025

WDNL-FM - Neuhoff Broadcasting
1501 N. Washington
Danville, IL  61832

Sorling Northrup
P.O. Box 5131
Springfield, IL 62705

World Business Lenders
120 W. 45th Street
29th Floor
New York, NY 10036

GE Capital
P.O. Box 536447
Atlanta, GA 30353

GE Capital Information Technology
Solutions
Attn: Bankruptcy Administration
P.O. Box 13708

Macon, GA 31208

Old Farm Shops, Ltd.
303 S. Mattis Avenue
Suite 200
Champaign, IL 61821

Shannell, Inc.
301 W. Main Street
Danville, IL 61832

The UPS Store, Inc.
Attn.: Legal Dept.
6060 Cornerstone Court West
San Diego, CA 92121

Liquidity Solutions, Inc.
1 University Plaza, Suite 312
Hackensack, NJ 07601-6205

Paul E. Offutt
2807 North Vermilion
Danville, IL  61832

Dennis Gaudio
P.O. Box 1201
Brownsburg, IL 46112-5201

Gilbert H. Saikley
Saikley Garrison Colombo & Barney, LLC
208 W. North Street
P.O. Box 6
Danville, IL  61834-0006

Eric Gaudio
P.O. Box 17578
Indianapolis, IN  46217