UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| EARL GAUDIO & SON, INC. | ) | |
| | ) | Case No. 13-90942 |
| Debtor. | ) | |
| _____ | ) | |

**DEBTOR'S OBJECTION TO CLAIM NO. 47-1 ASSERTED BY HELEN GAUDIO, GUARDIAN OF THE ESTATE OF EARL GAUDIO ON GROUNDS THAT THERE IS NO VALID CLAIM OR LIABILITY, OR THAT CLAIM 47-1 SHOULD BE RECHARACTERIZED AS EQUITY**

Comes now the above captioned Debtor and Debtor-in-Possession, by and through First Midwest Bank as Custodian of Earl Gaudio and Son, Inc. (the "Debtor" and "EG&S"), by counsel, and for *Debtor's Objection to Claim No. 47-1 Asserted By Helen Gaudio, Guardian of the Estate of Earl Gaudio on Grounds that there is No Valid Claim or Liability, or that Claim 47-1 Should Be Recharacterized as Equity* (the "Objection"), respectfully states the following:

**Background and Jurisdiction**

1.    On July 19, 2013 (the "Petition Date"), the above-captioned Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

3.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    This matter is a core proceeding pursuant to 28 U.S.C. § 157.

5.    The statutory and legal predicates for the relief requested in this Objection are Bankruptcy Code Sections 105(a) and 502, and Federal Rule of Bankruptcy Procedure 3007.

**Factual Background**

6.      As of the Petition Date, the Debtor was a beer and food distributor serving East Central Illinois and portions of Indiana and Ohio.

7.      On June 12, 2013, Helen Gaudio, as guardian ("Guardian") of the estate of Earl Gaudio (the "Earl Gaudio Estate"), commenced a lawsuit against Eric Gaudio, Dennis Gaudio and the Debtor.  On June 27, 2013, the Circuit Court for the Fifth Judicial Circuit of Illinois, Vermilion County appointed First Midwest Bank as Custodian of Earl Gaudio and Son, Inc. (the "Custodian") and vested the Custodian with all powers, authorities, rights, and privileges previously possessed by the directors and officers of Earl Gaudio and Son, Inc.

8.      On July 22, 2013, and on August 22, 2013, the Court issued its *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines* (the "Claims Notice") (Dkt. 5, 60), which set a deadline of November 13, 2013 for all creditors (except a governmental unit) and 180 days after the order for relief (for governmental units) to file a proof of claim.  The Claims Notice was served by the Bankruptcy Noticing Center on July 24, 2013 and August 24, 2013 (Dkt. 14, 64).

9.      On November 11, 2013, the Earl Gaudio Estate filed Claim 47-1, which asserted a claim for a note payable in the amount of $708,175.56 ("Claim 47" and the "Claim").  The Claim can be retrieved via the Court's ECF system, and a true and accurate copy of the Claim 47 is attached hereto as **Exhibit A**.

10.      By and through this Objection, pursuant to Sections 105(a) and 502 of the Bankruptcy Code, the Debtor respectfully requests the entry of an order disallowing and expunging Claim 47 as not being a valid claim or establishing a liability, or reclassifying Claim 47 as equity, as set forth below.

2

11.     Claim 47 asserts a debt allegedly based on a "note payable" in the amount of $708,175.56.  However, there is no such note.  The only purported support offered by the Earl Gaudio Estate is a balance sheet attached to the proof of claim that makes reference to a "note payable – Earl Gaudio."  The Earl Gaudio Estate has not offered, and the Debtor's records do not contain, a note, a contract, a corporate resolution, or any other writing to evidence this supposed liability.  Further, there is no mention or explanation of, much less any document to support, any terms of repayment or accrual of interest on the alleged "note payable" (although Claim 47 asserts entitlement to "contract interest").  Indeed, virtually nothing surrounding the creation of this alleged debt supports the conclusion that it properly is treated as a valid liability, other than an after-the-fact accounting entry on the Debtor's books made by Earl Gaudio's grandson, Eric Gaudio.  Under these circumstances, as detailed below, Claim 47 must be disallowed and expunged as not representing a valid liability, or be recharacterized as an equity contribution.

12.     Earl Gaudio was, until his resignation on July 1, 2010, the Chief Executive Officer of EG&S.  At the time of his resignation and prior to that time, he owned approximately one third of the shares of EG&S and was a director and officer of EG&S.  Following his resignation as CEO, he remained a director and owner.  At all times, Earl Gaudio was an "insider" of EG&S as that term is defined in Bankruptcy Code Section 101(31).

13.     Dennis Gaudio, Earl Gaudio's son and another pre-petition officer, director and shareholder of EG&S, made a similar claim against the Debtor's estate at Claim 41-1.  In deposition testimony given in one of the Debtor's adversary proceedings, Dennis Gaudio testified that there were no promissory notes or other evidence of indebtedness issued by EG&S to its insiders in conjunction with the loans asserted by Dennis Gaudio.  (D. Gaudio Depo., p.

91-92.)[1] Eric Gaudio, Defendant's grandson, simply made the entries on the Debtor's books. (D. Gaudio Depo., p. 91-92, E. Gaudio Depo., p. 98). The same balance sheet that was attached to Dennis Gaudio's Claim 41-1, which contained this "entry on the books," was reused as the sole attachment to Claim 47.[2] As a result of the Adversary Proceeding, in which Debtor sought to recharacterize Claim 41-1 on the same grounds, Claim 41-1 was waived, withdrawn and expunged. As with Claim 47, the attached balance sheet simply said "note payable—Dennis Gaudio," but no such note existed.

14.     Regarding any contributions by his father, Earl Gaudio, Dennis Gaudio testified that in 2007 he spoke with his father about a contribution to the company, and his father said " 'Well, I will do a contribution. I will throw the 100,000'—or whatever the valuation of that [the property that he was going to contribute] was—'I will put that in as my contribution to the company.' " (D. Gaudio Depo., p. 96-97). Dennis Gaudio also testified that in connection with the purchase of the EG&S warehouse property, for which EG&S "went out on a limb," Earl Gaudio said " 'Yeah, I will even throw in 100,000 for the warehouse.' I [Dennis] cut my salary back before we ever even started building.' " (D. Gaudio Depo., p. 176-77).

15.     Regarding repayment of advances by the Debtor's shareholders, Dennis Gaudio testified that "the company, obviously, wasn't in any position to be returning money." (D. Gaudio Depo., p. 91: 3-5).

---

[1] Dennis Gaudio testified on March 4, 2015 in the case captioned *Earl Gaudio & Son, Inc. v. 1803 LLC et al.,* U.S. District Court, Central District of Illinois, No. 2:14-cv-2261-HAB-DGB (the "Adversary Proceeding"). His son, Eric Gaudio, testified the day before, March 3, 2015. As transcripts of testimony given under oath, both transcripts are admissible for purposes of this Objection. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) (depositions from one case may be used at the summary judgment stage of another as the equivalent of an affidavit, regardless of whether Fed. R. Civ. P. 32(a)(8) is satisfied, so long as the testimony is based upon personal knowledge and the facts would be admissible at trial, and so long as the deposition is made a part of the record of the current case). The cited pages and accompanying excerpts of this deposition transcript are attached to this Objection as **Exhibit B**. The cited pages and accompanying excerpts of Eric Gaudio's deposition are attached to this Objection as **Exhibit C**.

[2] In fact, the balance sheet attached to Claim 47 also bears an ECF file-stamp of "Claim 41 Part 2  Filed 11/06/13" at the top.

CO\5844636.2

16.     Earl Gaudio's grandson, Eric Gaudio, also provided deposition testimony in the Adversary Proceeding.  Eric Gaudio served as general manager of EG&S until becoming president in 2010.  (E. Gaudio Depo., p. 24-25).  Regarding the need for the EG&S shareholders to transfer money into the company throughout the years, Eric Gaudio testified that it would be necessary to add cash to the company "because the company needed cash" because the company could have exhausted its line of credit.  Eric Gaudio could think of no other reason for the shareholders to put cash into the company.  (E. Gaudio Depo., p. 60).

## Legal Argument

### A.     No Liability.

17.     Claim 47 is not entitled to prima facie validity.  The filing of a proof of claim is governed by Rule 3001 of the Federal Rules of Bankruptcy Procedure.  Normally, a proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  This is only true, however, if it "it conforms substantially to Official Form 10" and otherwise meets the documentary requirements of Rule 3001.  *In re Hood*, 449 Fed. Appx. 507, 509 (7th Cir. 2011).  A claimant that fails to include with its proof of claim the information required by Rule 3001 cannot rest on the claim alone.  *Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993).

18.     Under Rule 3001(c), when a claim is based upon a writing, a copy of that writing, or an explanation as to the unavailability of that writing, must be attached to the proof of claim. Fed. R. Bankr. P. 3001(c)(1).  Further, the Official Form specifically instructs claimants to attach "copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, [or] security agreements." *See* Exhibit A—Claim 47, p. 2, box 7.

19. For the reasons stated above, Claim 47 fails to meet the requirements of Rule 3001(c)(1) and the Official Form, thus stripping the claim of any presumption of validity and placing the burden on the Earl Gaudio Estate to establish that there is a liability—an allowable claim.

20. "Once the objector has produced some basis for calling into question [the] allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." *In re Alewelt*, 520 B.R. 704, 708 (Bankr. C.D. Ill. 2014) (Gorman, J.) (citing *In re O'Malley*, 252 B.R. 451, 455–56 (Bankr. N.D. Ill. 1999)); *In re The Budd Co., Inc.*, 540 B.R. 353, 362 (Bankr. N.D. Ill. 2015) ("If Debtor disputes the evidentiary presumption of validity of a proof of claim, the burden of establishing the basis of the claim by preponderance of the evidence would shift back to the claimant.") (citing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20–22 n.2 (2000) (holding that the ultimate burden of proof in establishing claim after validity is disputed by objecting party depends on applicable nonbankruptcy law governing the substantive basis of the claim)). The ultimate burden of persuasion always remains with the claimant. *In re Sentinel Mgmt. Grp., Inc.*, 417 B.R. 542, 550 (Bankr. N.D. Ill. 2009).

21. The Earl Gaudio Estate has not established that there is a claim—a liability. There is no support other than a bare one-line entry on an unaudited balance sheet by Earl Gaudio's grandson. In contrast to Dennis Gaudio's Claim 41-1, which at least attempted to explain and detail the advances made to the Debtor, there was nothing attached to Claim 47 to explain what advances, if any, Earl Gaudio made to the Debtor or when.

**B.** **Recharacterization.**

22. Courts within the Seventh Circuit have recognized two alternate sources of authority for recharacterizing insider debt as equity. First, some courts have found that this

authority exists under 11 U.S.C. § 105(a). *See, e.g., In re Emerald Casino, Inc.*, 2015 WL 1843271 (N.D. Ill. April 21, 2015) and *In re Outboard Marine Corp.*, 2003 WL 216973357 (N.D. Ill. July 22, 2003) (reversing a bankruptcy court determination that it had no power to recharacterize debt under Section 105). These courts note that, since *Pepper v. Litton*, 308 U.S. 295, 305 (1939), courts in bankruptcy have the equitable power to look beyond form to substance, and that the exercise of this power to recharacterize is essential to the implementation of the Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest. *See also In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 747-48 (6th Cir. 2001) (holding that Section 105 is the source of a bankruptcy court's power to recharacterize).[3]

23.    The second source of authority to recharacterize has been found in state law. Because 11 U.S.C. § 502(b)(1) provides for the disallowance of claims to the extent they are unenforceable under applicable law, courts have held that, if state law calls for recharacterizing debt to equity, then any claim against the debtor can be recharacterized under state law. *See Emerald Casino,* 2015 WL 1843271 at *9-10.

24.    Because Illinois law recognizes that debt transactions can be characterized as equity contributions, and because the factors applied to evaluate whether to recharacterize are similar, practically, either approach will yield the same results. *See Emerald Casino,* 2015 WL 1843271 at *9-10 (citing *Estate of Kaplan*, 67 Ill.App.3d 818, 24 Ill. Dec. 7, 384 N.E.2d 874, 881 (1978) and *Kramer v. McDonald's System*, 77 Ill.2d 323, 330-31, 396 N.E.2d 504, 507 (Ill. 1979)).

---

[3]  Although it has noted that "the overwhelming weight of authority supports the proposition that bankruptcy courts act within their equitable powers when they recharacterize loans as infusions of equity," the Seventh Circuit has explicitly declined to decide whether it recognizes a cause of action for recharacterization under Section 105. *In re Airadigm Commc'ns*, 616 F.3d 642, 657, n.11 (7th Cir. 2010).

CO\5844636.2

25.     Numerous decisions from the Seventh Circuit have applied an eleven-factor test originally developed by the Sixth Circuit in *Roth Steel Tube v. C.I.R.*, 800 F.2d 625, 630 (6th Cir. 1986) and applied in the bankruptcy context by *In re AutoStyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001).  *See Outboard Marine Corp.*, 2003 WL 21697357, *5; *In re S.M. Acquisition Co.*, 2006 WL 2290990, *9 (N.D. Ill. Aug. 7, 2006); *Emerald Casino*, 2015 WL 1843271 at *10.[4]

26.     The factors are:

    1)  the names given to the instruments, if any, evidencing the indebtedness;

    2)  the presence or absence of a fixed maturity date and schedule of payments;

    3)  the presence or absence of a fixed rate of interest and interest payments;

    4)  the source of repayments;

    5)  the adequacy or inadequacy of capitalization;

    6)  the identity of interest between the creditor and the stockholder;

    7)  the security, if any, for the advances;

    8)  the corporation's ability to obtain financing from outside lending institutions;

    9)  the extent to which the advances were subordinated to the claims of outside creditors;

    10)  the extent to which the advances were used to acquire capital assets; and

    11)  the presence or absence of a sinking fund to provide repayments.

*Roth Steel Tube*, 800 F.2d at 630.  No single factor is determinative.  The more the transaction appears to be an ordinary commercial transaction at arm's length, the more likely it is a loan and not a disguised equity contribution.  *AutoStyle*, 269 F.3d at 749.

---

[4]  Recharacterization is similar to but distinct from equitable subordination.  *Airadigm Commc'ns*, 616 F.3d at 658 ("In an equitable subordination action, the analysis focuses on the behavior of a creditor, knocking down the status of a claim where a creditor engages in inequitable conduct. . . .   In contrast, recharacterization focuses on the underlying substance of the disputed transaction—that is, whether the filed claim satisfies the Bankruptcy Code's definition of 'claim.' ").

27.     Another case of note is *Raymond v. U.S.*, 511 F.2d 185, 187 (6th Cir. 1975). *Raymond*, which was relied upon by the Illinois Appellate Court in *Kaplan*, affirmed a directed verdict that a purported debt must be recharacterized as an equity contribution, even though the corporation carried the transfer as a loan on its books, where:

- no notes were given to evidence the obligations,

- the corporation gave no unconditional promises to repay the obligations at fixed maturity dates or at fixed interest rates,

- no security was given for repayment,

- it was highly unlikely that an outsider would have made a loan on similar terms,

- the corporation was inadequately capitalized and some of the advances were used to purchase capital assets, and

- repayment of the advances was subordinate to outside creditors and contingent on the success of the enterprise.

511 F.2d at 187-88.

### C.     Application of the Factors Demonstrates Conclusively that Claim 47 Must Be Recharacterized as Equity.

#### 1.     There Are No Instruments Evidencing the Indebtedness

28.     In *Roth Steel*, although advances were recorded on the company's books as loans, no instruments of indebtedness were executed.  The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans. 800 F.2d at 631.  Similarly, in *Raymond*, a case specifically relied upon by the Illinois Appellate Court in *Kaplan*, the court stressed the need to look to contemporaneous objective evidence, because of the danger that parties will defer characterizing advances as loans or contributions to capital until the consequences of such characterization are certain.   511 F.2d at 191.   In

*Raymond*, the court found the absence of notes evidencing the indebtedness, along with other factors, so compelling that it affirmed a directed verdict for recharacterization even though there was evidence that the transfers were carried on the company's books as notes payable.  511 F.2d at 187.

29.     Here, there is no documentation or even any after-the-fact explanation of what money, or when, Earl Gaudio advanced to the Debtor.  Further, the Debtor's CEO has admitted there were no notes or other evidence of indebtedness given:

> Q. And I'll ask this question globally with respect to all of the loans that you've identified, including this 300,000. But you didn't, like, sign promissory notes or payments with the company?
> A. No.

(D. Gaudio Depo., p. 91-92).

### 2.     There is No Fixed Maturity Date or Schedule of Payments

30.     The absence of a fixed maturity date and a fixed obligation to repay indicates that the advances were capital contributions and not loans. *Roth Steel*, 800 F.2d at 631; *Raymond*, 511 F.2d at 187.  Here, not only is there no "note payable" or any other loan documentation, the Earl Gaudio Estate has not identified any terms of repayment, schedule of repayments, maturity date, or any terms of any sort.  The lack of repayment terms are characteristic of an equity infusion, not of a loan made at arm's length.

### 3.     There is No Provision for an Interest Rate or Interest Payments

31.     In *Roth Steel*, the court noted that the lower court had found no fixed interest rate and no evidence that interest payments were ever made.  The court held that the absence of a fixed rate of interest and interest payments is a strong indication that the advances were capital contributions rather than loans.  800 F.2d at 631.  *See also Raymond*, 511 F.2d at 187-88. The same is true here.  Despite the Earl Gaudio Estate's assertion of interest at a contract rate, there is

no evidence that there was any provision for interest, nor of the alleged contract rate of interest (there being no such contract). It is also worth noting that Dennis Gaudio admitted that he did not receive interest on the advances he made. (D. Gaudio Depo., p. 45).

### 4. The Alleged "Note Payable" Could Only Have Been Repaid from the Debtor's Earnings

32.     If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution, and "an expectation of repayment solely from corporate earnings is not indicative of bona fide debt regardless of its reasonableness." 800 F.2d at 631; *Raymond*, 511 F.2d at 187-88. Here, the Debtor's earnings were the only potential source of repayments because: (1) the Debtor lacked the capital to otherwise repay (*see, e.g.*, D. Gaudio Depo., p. 91: "it was minimal amounts coming back because the company, obviously, wasn't in any position to be returning money."); and (2) there was no documentation of or security for the advances (D. Gaudio Depo., p. 91-92; *see also* Response to Request for Production of Documents 6; Response to Interrogatory 10).

### 5. The Debtor was Inadequately Capitalized

33.     Thin or inadequate capitalization is strong evidence that the advances are capital contributions rather than loans. 800 F.2d at 631. *Raymond*, 511 F.2d at 187-88. The Expert Report of John Lane (the "Lane Report"), incorporated into and attached to his Declaration as Exhibit A, indicates that EG&S was not adequately capitalized and had no ability to obtain capital during the two-year period leading up to the Petition Date. (Lane Report, p. 25-27).[5] Moreover, the reason for the advances by Dennis Gaudio was because the Debtor could no longer borrow from its arm's length lenders.

---

[5] Mr. Lane's Declaration and his Expert Report (attached to his Declaration as Exhibit A) are attached hereto as **Exhibit D**.

CO\5844636.2

### 6. There is an Identity of Interest Between the Creditor and the Stockholder

34.     "If advances are made by stockholders in proportion to their respective stock ownership, an equity contribution is indicated. . . ." *Roth Steel*, 800 F.2d at 630.  All three of the EG&S shareholders, Earl, Dennis, and Eric Gaudio supposedly made "loans" to the company.  It is not clear whether they made them in proportion to their respective stock ownership, as Eric Gaudio did not file a proof of claim, and the Estate of Earl Gaudio has failed to provide any support for Claim 47.  But each of Earl, Dennis and Eric Gaudio held roughly a third of the shares of the company (D. Gaudio Depo., p. 27-28), and the filed claims of Earl Gaudio and Dennis Gaudio are each in approximately the same amounts—in the range of $700,000.

### 7. There was No Collateral for the Alleged "Note Payable"

35.     The absence of security is a strong indication that any advances were capital contributions rather than loans.  *Roth Steel*, 800 F.2d at 631; *Raymond*, 511 F.2d at 187-88.  Here, no security or collateral was given, as shown by the absence of any loan documents that would have created or perfected such a security interest.  Claim 47 provides no evidence of any collateral to secure the asserted claim, and there is no evidence in any of the Debtor's records of any such collateral security in favor of any of the shareholders.

### 8. The Debtor Had No Ability to Obtain Financing From Outside Lending Institutions on Similar Terms

36.     The fact that no reasonable creditor would have acted in the same manner as the shareholders is strong evidence that the advances were capital contributions rather than loans.  *Roth Steel*, 800 F.2d at 631; *Raymond*, 511 F.2d at 187-88.  While it is true that in May 2011, Regions Bank extended credit to the Debtor, it did so on a secured basis.  Regions took a security interest in the Debtor's real and personal property.  It also obtained personal guarantees from the EG&S shareholders.  Moreover, this credit did not provide EG&S with adequate capital to

12

operate.  EG&S was required to seek a loan from World Business Lenders, an alternative, high risk lender, twice in 2013 at a rate of 125.07 percent per year—25 to 50 times the rate that even a moderately healthy company could obtain.  (*See* Lane Report, p. 25-27).

37.    In particular, there is no evidence that EG&S had the ability to obtain unsecured financing, with no interest payments, and with no loan documents, from anyone other than its shareholders.  The outside financing it was able to obtain required extensive and sometimes onerous loan documents, extremely high interest rates, collateral, and personal guarantees of the Debtor's shareholders.

### 9.    The Shareholders' Advances were Effectively Subordinated to the Claims of Outside Creditors

38.    Subordination of advances to claims of all other creditors indicates that the advances were capital contributions and not loans.  *Roth Steel*, 800 F.2d at 631-2; *Raymond*, 511 F.2d at 187-88.  This does not require explicit contractual subordination but rather requires evidence that the loan was subordinated in fact, as when the need to repay outside creditors makes it impossible to repay the insider advances.  *Roth Steel*, 800 F.2d at 631-2 (citing *Stinett's Pontiac Serv., Inc. v. Comm'r of Internal Revenue*, 730 F.2d 634 (11th Cir. 1984)).  *See also Raymond*, 511 F.2d at 191 (finding recharacterization appropriate where the insider had guaranteed repayment on secured loans of the debtor ("by acting as personal guarantors for secured loans made to the corporation by outsiders, [the insiders] subordinated their advances to the claims of their creditors.").  That is clearly the case here.  EG&S insiders had guaranteed the company's secured loans, including those of the SBA[6] and World Business Lenders, and advances by the shareholders were only repaid in minimal amounts, if at all, based upon

---

[6]  Earl Gaudio executed an Unconditional Guarantee dated May 4, 2009, in connection with the SBA loan, and pursuant to the recent resolution of the turnover proceeding against the SBA, the SBA holds a $600,000 unsecured nonpriority claim.

CO\5844636.2

Defendant's immediate needs, whereas outside creditors were paid.  (D. Gaudio Depo, p.16; p. 91) ("the company, obviously, wasn't in any position to be returning money").

### 10.   The Advances Were Used, at Least in Part, to Acquire Capital Assets

39.     Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness. *Roth Steel*, 800 F.2d at 632. Advances by Earl Gaudio, although there is no evidence or even an after-the-fact explanation of when or in what amounts, were generally known to be of property and in connection with the purchase of the warehouse.  (D. Gaudio Depo., p. 97, 176-77).  Accordingly, this factor weighs heavily in favor of recharacterization.  *See Raymond*, 511 F.2d at 191 (court found recharacterization proper where "some of the advances were used to purchase capital assets.").

### 11.   There Was No Sinking Fund to Provide Repayments

40.     The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans. *Roth Steel*, 800 F.2d at 632.  Here, no sinking fund was established and, as noted above, there was no loan documentation at all.

### D.   Taken Together, to the Extent There is a Claim or Liability, the Factors Indicate an Equity Contribution.

41.     As noted in *AutoStyle*, these factors are a guide towards the ultimate inquiry—is the transaction one that bears the hallmarks of an arm's length transaction?  269 F.3d at 749. Claim 47 wholly fails this test.  In particular, the utter lack of formalities or any description of the alleged "note payable" undermines any claim that this was an arm's length transaction.  Even recognizing that the Debtor was a closely-held corporation, there was simply no documentation at all of any "loan" from any of the shareholders—Eric, Dennis or Earl.  Again, there was no repayment schedule, no provision for interest accruals or interest payments, no security for repayment, no ability to repay in the absence of operating success, or any of the other factors that

would lead to the conclusion that these were bona fide debts.  Indeed, what is remarkable when one looks at the eleven-factor test is that not a single factor cuts in favor of Claim 47 being considered a bona fide debt.  Rather, most of the factors strongly support the finding that Claim 47, even if it could be proven to be valid, should be recharacterized.

42.    In a decision relied upon by the Illinois Appellate Court in *Kaplan*, the Sixth Circuit in *Raymond* found that the following facts compelled a directed verdict that a purported debt in fact must be treated as an equity contribution, in spite of evidence that the loans were carried on the company's books as debt:

> Moreover, the corporation did not issue notes payable to taxpayers, did not promise to repay the advances at a fixed interest rate or at a time certain, did not pay any principal or interest, gave no security for the advances, did not cause any interest to be accrued on its books, and did not establish a sinking fund for repayment.  In addition, taxpayers, by acting as personal guarantors for secured loans made to the corporation by outsiders, subordinated their advances to the claims of their creditors.  We consider also that taxpayers were the sole shareholders of the corporation and that the advances were made in starting the corporation which, it appears, was inadequately capitalized.  **The mere entry of the advances on the corporation's balance sheet as notes payable, taxpayers' self-serving testimony that the advances were loans, and the comment on two of the taxpayers' checks to the corporation that these checks were loans, are not sufficient to create a jury question whether the advances were loans**.

511 F.2d at 191 (emphasis added).  The Sixth Circuit could easily have been talking about the evidence in this case.

43.    Lack of any formalities is a key factor in demonstrating that a contribution is an equity contribution.  *In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 916 (Bankr. E.D. Va. 1997).  In *Cold Harbor*, the limited partners had made advances to the debtor and were given promissory notes evidencing the obligation seven months later.  The court noted that the fact that there were notes seemed to point towards debt, but found a "troubling lack of formalities" resulting from the

15

"extreme delay" in delivering them to the purported lenders, which cast doubt upon the actual intent of the parties at the time of the transaction.

44.     Here, the lack of formalities is even more extreme than in *Cold Harbor*. Unlike in *Cold Harbor*, where promissory notes were issued, here there is no loan documentation whatsoever, whether contemporaneous or after the fact. Even though the Gaudios were in charge of the Debtor, they did not have the Debtor issue any notes or other evidence of indebtedness that would recognize the advances the shareholders have claimed as debt. Indeed, the "absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *Roth Steel*, 800 F.2d at 631; *Raymond*, 511 F.2d at 191. The one step that was taken—recording a "note payable" on the Debtor's books—"provides little if any support for a finding of bona fide debt." *Roth Steel*, 800 F.2d at 631.

45.     Another critical factor is the dramatic distinction between the treatment of the alleged loans by the shareholders with the loans the Debtor obtained from various lenders in the same time period. In contrast to the shareholders' alleged loans, the loans the Debtor obtained from other sources were (1) fully documented, (2) secured and often supported by guarantees, so that they were not solely dependent upon the Debtor's financial performance for repayment, and (3) provided for interest and interest payments. This shows that there was no party other than the shareholders willing to make advances on an undocumented and unsecured basis to the Debtor, and that the advances by the shareholders, including Earl Gaudio, were equity infusions.

## Reservation of Rights

46.     The Debtor expressly reserves the right to amend, modify, or supplement this Objection, and to assert further objections to any of the claims of the Estate of Earl Gaudio on any and all bases.

CO\5844636.2

47.     In accordance with Bankruptcy Rule 3007(a), this Objection will be mailed or otherwise delivered to (i) the claimant identified herein and in the attached Exhibit A; (ii) the Custodian; (iii) the United States Trustee; (iv) the Official Committee of Unsecured Creditors; and (v) all parties receiving electronic filing notifications in this case via the Court's CM/ECF system.   The Notice of the objection deadline and any hearing on this Objection will be separately mailed or otherwise delivered to the claimants once the Court sets those dates, at least 30 days prior to the hearing.   The Debtor requests that the Court find that such service of this Objection is due and proper and that no other or further notice is required.

## CONCLUSION

The evidence overwhelmingly demonstrates (i) that the Earl Gaudio Estate has not submitted a valid claim or established any liability by the Debtor, and (ii) that, even if it could be proven to be valid, Claim 47 is properly viewed as an equity contribution and not a loan, and should be recharacterized accordingly.

WHEREFORE, the Debtor hereby requests that the Court enter an order disallowing and expunging Claim 47, or recharacterizing Claim 47 as equity, and granting such other and further relief that the Court deems just and appropriate.

Respectfully submitted,

ICE MILLER, LLP


By: /s/ Tyson A. Crist
     Victoria E. Powers
     Daniel M. Anderson
     Tyson A. Crist
     250 West Street
     Columbus, OH 43215
     (614) 462-2700 – Telephone
     (614) 462-5135 – Facsimile
     tyson.crist@icemiller.com
     *Counsel to the Debtor*

CO\5844636.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on <u>June 8, 2018</u>, I electronically filed the foregoing *Debtor's Objection to Claim No. 47-1 Asserted by Helen Gaudio, Guardian of the Estate of Earl Gaudio on Grounds that there is No Valid Claim or Liability, or that Claim 47-1 Should be Recharacterized as Equity* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the U.S. Trustee and all parties receiving CM/ECF notice in this proceeding, as set forth in the CM/ECF portion of the attached Service List, and I also caused the foregoing to be served by first-class U.S. Mail, postage prepaid, to the parties at the addresses listed in the U.S. Mail portion of the attached Service List.

/s/ Tyson A. Crist
Tyson A. Crist

18

## SERVICE LIST

<u>CM/ECF</u>:

- Megan M. Adeyemo on behalf of Creditor Century Tokyo Leasing (USA) Inc. madeyemo@gordonrees.com

- Thomas V. Askounis on behalf of Creditor Wells Fargo Equipment Finance, Inc. taskounis@askounisdarcy.com

- Edwin C. Barney on behalf of Creditor and Defendant Paul Offutt, Attorney Gilbert Saikley, Defendant First Financial Bank, N.A. successor to First National Bank of Danville, Defendant Security Ventures, Inc. and Defendant Offutt Development, Inc. edwincbarney@sbcglobal.net, barneyer66934@notify.bestcase.com

- Darren L. Besic on behalf of Creditor General Electric Capital Corporation and Creditor JPMorgan Chase Bank, N.A. dbesic@walinskilaw.com

- James L. Brougher on behalf of Creditor Iroquois Federal Savings and Loan and Defendant Village of Tilton, Illinois Jimb@danvillelawyers.com

- John David Burke on behalf of Debtor Earl Gaudio & Son, Inc. john.burke@icemiller.com

- Ben T. Caughey on behalf of Debtor Earl Gaudio & Son, Inc. ben.caughey@mcdlegalfirm.com

- Joseph P. Chamley on behalf of Official Unsecured Creditors Committee jchamley@efbclaw.com, jnieman@efbclaw.com

- Sherry D. Coley on behalf of Defendant World Business Lenders scoley@dkattorneys.com, cpogorzelski@dkattorneys.com, kmarquardt@dkattorneys.com

- Shannon M. DeLaMar on behalf of Creditor Illinois Department of Revenue sdelamar@atg.state.il.us

- Daniel N. DeLay on behalf of Plaintiff Earl Gaudio & Son, Inc. dnd@mcdlegalfirm.com

- Roy Jackson Dent on behalf of Defendant Offutt Development, Inc., Defendant Security Ventures, Inc. and Defendant Paul Offutt roy.jackson.dent@gmail.com, notices@dentlawoffices.com

- Kevin Driscoll on behalf of Defendant Chase Bank USA, N.A., Defendant JP Morgan Chase, N.A. kevin.driscoll@btlaw.com

- David J. Frankel on behalf of Creditor Mercedes-Benz Financial Services USA LLC dfrankel@sormanfrankel.com, ckauffman@sormanfrankel.com

- David H. Hoff on behalf of Creditor United States of America, Defendant United States Small Business Administration peter.g.paoli@usdoj.gov, Chelsea.dean@usdoj.gov

- Michael Fredrick Holbein on behalf of Defendant American Express, Defendant American Express Bank, FSB, Defendant American Express Centurion Bank michael.holbein@agg.com

- Amrit Suresh Kapai on behalf of Creditor Wells Fargo Equipment Finance, Inc. amritk@goldmclaw.com

- Brett Kepley on behalf of Defendant American Express bkepley@lollaf.org, lollafecfmail@gmail.com, kepleybr74500@notify.bestcase.com

- Kathryn A. Klein on behalf of Creditor Ally Financial Inc. rb_bank@riezmanberger.com, riezmanberger@gmail.com

19

- Paul Samuel Kmett on behalf of Creditor Illinois Department of Revenue pkmett@atg.state.il.us

- Russell S. Long on behalf of Defendant World Business Lenders rlong@dkattorneys.com, ahalase@dkattorneys.com

- Jennifer L. Maffett on behalf of Creditor Mike-sell's Potato Chip Co. thdaytonecf@thompsonhine.com

- Terrence Miles on behalf of Creditor Dennis Gaudio packs@aol.com, info.mileslaw@aol.com, mmcelwain33@gmail.com

- Patrick Frasor Moran on behalf of Creditor Century Tokyo Leasing (USA) Inc. pmoran@gordonrees.com

- Steven L. Nelson on behalf of Creditor Specialty Distributing of Illinois, LLC snelson@califf.com

- Kate R. O'Loughlin on behalf of Creditor United States of America, Defendant United States Small Business Administration kate.oloughlin@sba.gov

- Sabrina M. Petesch on behalf of U.S. Trustee sabrina.m.petesch@usdoj.gov

- Teresa I. Pisula on behalf of Creditor Illinois Department of Revenue TPisula@atg.state.il.us

- Jeffrey D. Richardson on behalf of Creditor and Interested Parties Helen Gaudio and James Brougher jdrdec@aol.com

- Robert Fredrick Ritchie on behalf of Creditor Illinois Department of Revenue rritchie@atg.state.il.us

- James Edward Rossow on behalf of Official Unsecured Creditors Committee jim@rubin-levin.net, robin@rubin-levin.net, atty_jer@trustesolutions.com, lisa@rubin-levin.net

- Steven E. Runyan on behalf of Defendant 1803 LLC, Defendant Gaudio Diversified Ventures, LLC, Defendant Dennis Gaudio, Defendant Eric Gaudio srunyan@kgrlaw.com

- Amy T. Ryan on behalf of Creditor/Defendant World Business Lenders atr@mllfpc.com, bdm@mllfpc.com

- Christopher M. Tietz on behalf of Creditor Skeff Distributing Company, Inc. cmt@tietzlaw.com, tonya@tietzlaw.com

- U.S. Trustee USTPRegion10.PE.ECF@usdoj.gov

- Mark Roy Wenzel on behalf of Defendant Regions Bank mwenzel@salawus.com, pdidandeh@salawus.com

- Bruce Eugene de'Medici on behalf of Defendant American Express bdemedici@gmail.com

- James A. Knauer on behalf of Defendant 1803 LLC, Defendant Gaudio Diversified Ventures, LLC, Defendant Dennis Gaudio, Defendant Eric Gaudio jak@kgrlaw.com, tjf@kgrlaw.com

CO\5844636.2

<u>U.S. Mail:</u>

Helen Gaudio, Guardian
of the Estate of Earl Gaudio
c/o  Jeffrey D. Richardson, Esq.
132 South Water Street, Suite 444
Decatur, IL  62523

Joseph P. Chamley
Evans, Froehlich, Beth & Chamley
44 East Main Street, 3rd Floor
Champaign, IL  61820

Nancy J. Gargula
United States Trustee
Attn:  Sabrina M. Petesch
Becker Building, Room 1100
401 Main Street
Peoria, IL  61602

James Brougher, Administrator
of the Estate of Earl Gaudio
c/o  Jeffrey D. Richardson, Esq.
132 South Water Street, Suite 444
Decatur, IL  62523

Earl Gaudio & Son, Inc.
c/o  First Midwest Bank, as Custodian
Rachael A. Gould
24509 W. Lockport Street
Plainfield, IL 60544-2318

James E. Rossow, Jr.
Rubin & Levin, P.C.
135 N. Pennsylvania Street
Suite 1400
Indianapolis, IN  46204

CO\5844636.2