**IT IS SO ORDERED.**

**SIGNED THIS: September 5, 2018**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 13-90942 |
| | ) | |
| EARL GAUDIO & SON, INC., | ) | Judge Mary P. Gorman |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**AGREED ORDER APPROVING FIRST AMENDED DISCLOSURE
STATEMENT AND CONFIRMING FIRST AMENDED CHAPTER 11 PLAN OF
LIQUIDATION OF EARL GAUDIO & SON, INC. DATED MAY 11, 2018**

This matter is before the Court on the _First Amended Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc._ (Dkt. 773) dated May 11, 2018 (the "First Amended Plan")[1], proposed and filed by Earl Gaudio & Son, Inc., Debtor and Debtor in Possession, by and through First Midwest Bank as Custodian ("EG&S" and the "Debtor"). A copy of the confirmed First Amended Plan is attached as **Exhibit A**. Hearings were held to consider confirmation of the First Amended Plan, on July 11, 19 and 26, 2018 (collectively, the "Hearings").[2]

---

[1] The term "First Amended Plan" shall include all modifications set forth in this _Agreed Order Approving First Amended Disclosure Statement and Confirming First Amended Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc. Dated May 11, 2018_ (the "Confirmation Order").

[2] Capitalized terms used but not defined herein have the meanings given in the First Amended Plan, which are incorporated by reference herein.

On May 14, 2018, this Court entered its *Order Conditionally Approving First Amended Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of the First Amended Chapter 11 Plan, and Fixing the Time for Filing Objections to the First Amended Disclosure Statement and to the Confirmation of the First Amended Chapter 11 Plan, Combined with Notice Thereof and of the Hearing on Final Approval of the First Amended Disclosure Statement and the Hearing on Confirmation of the First Amended Chapter 11 Plan* (Dkt. 777) (the "Conditional Approval and Scheduling Order").  Pursuant to the terms of the Conditional Approval and Scheduling Order, the *First Amended Disclosure Statement for Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc.* (Dkt. 774), (the "First Amended Disclosure Statement"), was conditionally approved, and June 25, 2018 was fixed as the last day for filing and serving written objections to First Amended Disclosure Statement and confirmation of the First Amended Plan.

In accordance with the Conditional Approval and Scheduling Order, and Rule 3017(d), Fed. R. Bankr. P., the Debtor timely served the: (i) Conditional Approval and Scheduling Order; (ii) First Amended Disclosure Statement; (iii) First Amended Plan; and (iv) Ballot for General Unsecured Claims in Class E—a ballot conforming to Official Form 314, to all creditors, equity security holders, and other parties in interest, as set forth in the *Certificate of Service* (Dkt. 778) filed on May 17, 2018 (the "Certificate of Service").

No objections to the First Amended Disclosure Statement or to confirmation of the First Amended Plan were filed with the Clerk of this Court or served upon the attorney for the Debtor by June 25, 2018, the deadline set in the Conditional Approval and Scheduling Order.  However, the United States, on behalf of the Small Business Administration ("SBA"), timely cast a ballot rejecting the First Amended Plan, which precluded confirmation of the First Amended Plan under 11 U.S.C. §§ 1126(c) and 1129(a)(10).  The following modifications to the First Amended

Plan were agreed to by Debtor and the other undersigned parties, in part, at the request of the SBA in order for it to withdraw its rejecting ballot and allow the First Amended Plan to be confirmed.

In accordance with the Conditional Approval and Scheduling Order, the Debtor timely filed its *Debtor's Report on Balloting for Plan* (Dkt. 790) on June 27, 2018 (the "Ballot Report"), and copies of all ballots received by the attorney for the Debtor were attached thereto as Exhibits B (Dkt. 790-2), C (Dkt. 790-3), and D (Dkt. 790-4).

NOW, THEREFORE, the Court, having considered the First Amended Plan, as modified herein, and the First Amended Disclosure Statement; and due and adequate notice of the Hearings having been provided to all parties affected by the First Amended Plan, and no other or further notice being required; and based upon and after full consideration of the entire record of the Hearings; and the undersigned parties being in agreement that the findings of fact and conclusions of law set forth herein are appropriate to be entered by the Court and constitute a sufficient basis to finally approve the First Amended Disclosure Statement and to confirm the First Amended Plan, and shall be deemed to constitute the Debtor's written proffer of evidence in support of confirmation of the First Amended Plan; and all other conditions to confirmation having been satisfied; and the Court being familiar with the First Amended Plan and other relevant factors affecting this chapter 11 case; and after due deliberation and consideration, and good cause appearing therefor, this Court hereby finds, concludes and determines that:

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.      On the Petition Date, the Debtor, by and through First Midwest Bank as Custodian (the "Custodian"), commenced a voluntary case in this Court under chapter 11 of the Code.  Since the Petition Date, the Debtor, by and through the Custodian, has operated its

business and managed its properties as a Debtor in Possession pursuant to sections 1107(a) and 1108 of the Code.  On August 22, 2013, the United States Trustee appointed the Committee (Dkt. 61).  No trustee or examiner has been appointed in this chapter 11 case.

B.      This Court has jurisdiction over this chapter 11 case and to confirm the First Amended Plan pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Final approval of the First Amended Disclosure Statement and Confirmation of the First Amended Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to approve the First Amended Disclosure Statement and to determine whether the First Amended Plan complies with the applicable provisions of the Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and should be confirmed.

D.      The Debtor is eligible for relief under section 109 of the Code.

E.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

F.      The procedures used to distribute and to tabulate the ballots, as reflected in the Ballot Report and the Ballot Register attached thereto as Exhibit A (Dkt. 790-1), were fair, properly conducted, and in accordance with the Conditional Approval and Solicitation Order, all applicable Bankruptcy Rules and the Code, and no further balloting is required.

G.      As set forth in the Ballot Report, votes to accept and reject the First Amended Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Code, the Bankruptcy Rules and the Conditional Approval and Solicitation Order.

H.      Adequate and sufficient notice of the Hearings, including the deadline for filing and serving objections to confirmation of the First Amended Plan, and other requirements and deadlines, hearings and matters described in the Conditional Approval and Solicitation Order

4

were given in compliance with the Bankruptcy Rules and the terms of the Conditional Approval and Solicitation Order, and no other or further notice is required.

I.      In accordance with section 105(d)(2)(B)(vi), the Conditional Approval and Scheduling Order combined the hearing on final approval of the First Amended Disclosure Statement and confirmation of the First Amended Plan.  No creditor or party in interest filed an objection to the First Amended Disclosure Statement, and the Court finds that the First Amended Disclosure Statement contains "adequate information" as defined in section 1125(a).

J.      By entry of this Order the *Second Amended Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc.* (Dkt. 785), filed on June 19, 2018, is deemed withdrawn, which moots the *United States' Objection to Debtor's Improperly Noticed Second Amended Chapter 11 Plan of Liquidation* (Dkt. 791), filed on July 9, 2018.

K.      The SBA has agreed to withdraw, and by entry of this Order is deemed to have withdrawn, its ballot dated June 12, 2018, by which it voted its General Unsecured Claim in Class E in the amount of $600,000 to reject the First Amended Plan (the "SBA Ballot"), which ballot was attached as Exhibit C (Dkt. 790-3) to the Ballot Report.

L.      Any unresolved objections, statements, and purported reservations of rights with respect to the First Amended Plan are either overruled on the merits or resolved by the terms of this Agreed Order.

M.      As set forth herein and as agreed by the undersigned parties, the Debtor, as proponent of the First Amended Plan, has met its burden of proving the elements of section 1129(a) and (b) of the Code by a preponderance of the evidence.

N.      The First Amended Plan is dated and identifies the Debtor as the proponent, the First Amended Disclosure Statement was filed with the Clerk of this Court, and the First

Amended Disclosure Statement and First Amended Plan describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction, thereby satisfying the requirements of Bankruptcy Rule 3016(a), (b), and (c).

O.    The First Amended Plan complies with the applicable provisions of the Code, thereby satisfying the requirements of section 1129(a)(1) of the Code, as:

a.    the First Amended Plan complies with sections 1122 and 1123 of the Code;

b.    the First Amended Plan, in Article III, properly classifies all Claims and Interests under section 1122, except for Administrative Claims that are unclassified under Article II.A, into seven (7) basic categories of Claims, and the classes of Claims and Interests placed in each Class have a reasonable basis and are substantially similar to other Claims and Interests in each such Class; and

c.    the First Amended Plan complies with the content requirements of section 1123, to the extent applicable, by properly:

i.    classifying Claims and Interests in accordance with section 1123(a)(1);

ii.    specifying Classes A, B, C, and D that are Unimpaired under the First Amended Plan in accordance with section 1123(a)(2);

iii.    specifying the treatment of the Classes of Claims and Interests that are impaired under the Plan, which are Classes E (General Unsecured Claims), F (Subordinated Claims), and G (Interests of the Shareholders of the Debtor) in accordance with section 1123(a)(3);

iv.    providing for the same treatment of each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such particular Claim or Interest in accordance with section 1123(a)(4);

v.    providing for adequate means for the First Amended Plan's implementation given that the assets of the Estate have already been liquidated, the remaining matters left to be done prior to distribution of the Estate Assets are identified within the First Amended Disclosure Statement, and the First Amended Plan provides for the Court's appointment of the Custodian as the representative of the Debtor's estate and specifies the powers and duties of the Custodian pursuant to Article VI, including but not limited to the execution of documents and surrender of instruments, all in accordance with section 1123(a)(5);

vi.      neither section 1123(a)(6) nor (a)(7) apply; and

vii.     the additional provisions of the First Amended Plan are appropriate and consistent with the applicable provisions of the Code and comply with the applicable provisions of section 1123(b), including providing for the rejection of unassumed executory contracts under Article VII.A, the compromise of Claims under Article XI.A, the retention of Causes of Action in Article X, the reservation of right to object to Claims in Article VIII, and the exculpation, release and injunction provisions in Article XI.B-E that are fair, equitable, reasonable, in good faith, and are in the best interests of the Debtor, the Estate and Holders of Claims and Interests, are consistent with applicable provisions of the Code.

P.      The Debtor is properly a debtor under section 109 of the Code, is a proper proponent of the First Amended Plan under section 1121(a) of the Code, and the Debtor has complied with sections 1125 and 1126 of the Code, thereby satisfying the requirements of section 1129(a)(2) of the Code; as noted, the First Amended Disclosure Statement contains "adequate information" in accordance with section 1125; and Debtor has complied with all applicable requirements of Bankruptcy Rules 3017 and 3018.

Q.      The First Amended Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Code, "good faith" being a reasonable likelihood that the First Amended Plan will achieve the results consistent with the objectives and purposes of the Code, which is determined from the totality of the circumstances surrounding confirmation of the First Amended Plan; because no objection was filed or served to confirmation of the First Amended Plan, the Court may and does hereby determine that the First Amended Plan has been proposed in good faith and not by any means prohibited by law without the need of receiving evidence on such issue; nonetheless, the Court has examined the totality of the circumstances surrounding formulation of the First Amended Plan and finds and concludes based on the circumstances of this chapter 11 case that it has been proposed with the legitimate and honest purpose of maximizing the return for the Holders in this

case and the Custodian and Debtor's Counsel have prepared it, or negotiated provisions contained in it, in good faith, to generate a recovery for the Class E Holders of General Unsecured Claims, through agreed provisions set forth herein, including, but not limited to, those provisions substituting the Committee as the party objecting to Claim No. 47, the cap as to Professional Fees of the Custodian and of Debtor's Counsel incurred during the Fourth Fee Period (as defined below), as detailed below in paragraph 5, the flat amount to be paid to the Custodian and Debtor's Counsel for their fees and expenses to be incurred following the Confirmation Date, as detailed below in paragraph 6, and in order to avoid the statutory commission under section 326 of the Code and additional administrative expenses and delay that could occur if this case were converted to chapter 7; moreover, the arm's-length negotiations among the undersigned parties hereto provide independent evidence of the Debtor's good faith in proposing the First Amended Plan in compliance with section 1129(a)(3) of the Code.

R.     The First Amended Plan provides that any and all payments made or to be made by the Debtor for services or costs and expenses in or in connection with this chapter 11 case, or in connection with the First Amended Plan and incident to this chapter 11 case, have been approved by, or are subject to the approval of, the Court as reasonable, including without limitation, those agreed to by the undersigned parties and provided for herein and in accordance with the terms of the First Amended Plan, thereby satisfying the requirements of section 1129(a)(4) of the Code; Article II.C on page 9 of the First Amended Plan requires that all requests for payment of Professional Fees arising on or before the Confirmation Date shall be filed with the Court and served on the Debtor, the United States Trustee and any party having requested notice in this Case on or before the Professional Fee Bar Date, and while there are modifications to the Professional Fee Bar Date and to the payment of fees and expenses of

Professionals incurred following the Confirmation Date, as set forth herein below, such modifications also satisfy the requirements of section 1129(a)(4) of the Code.

S.      The First Amended Plan identifies the Custodian as the entity proposed to serve as the representative of the Debtor's estate pursuant to section 1123(b)(3)(B) of the Code after confirmation of the First Amended Plan, and such appointment and continuance of the Custodian and Debtor's Counsel in those roles under the First Amended Plan is consistent with the interests of creditors and equity security holders and with public policy; accordingly, the First Amended Plan satisfies, to the extent applicable, the requirements of section 1129(a)(5) of the Code.

T.      The Debtor previously sold substantially all of its assets and has had no further business operations since closing the last UPS store in February 2016, such that section 1129(a)(6) of the Code is not applicable to the First Amended Plan.

U.      All assets of the Estate of value[3] have been liquidated and reduced to cash, as reflected in the record of this Case, including but not limited to the Monthly Operating Reports filed by the Debtor; Section XII of the First Amended Disclosure Statement set forth a comparison of the First Amended Plan to the alternative of conversion of the Case to chapter 7 that was impacted by this Court's Fee Order entered on July 10, 2018; further, the undersigned parties agree that the Debtor's good faith estimated liquidation analysis shows that the liquidation provided for under the First Amended Plan, factoring in the agreed caps of certain Professional Fees and post-confirmation fees and expenses of the Custodian and the Debtor's Counsel as set forth herein, in conjunction with the subordination provided for in Article II.A of the First Amended Plan as clarified herein, will put the creditors in as good as, or better, a

---

[3]  There is remaining personal property from one of the UPS Stores that the Custodian attempted to, but was not able to sell.  (*See* Supplemental Report of Sale (Dkt. 541)).  There is also remaining memorabilia, the value of which may not support the cost of an auction, but the Custodian will make further efforts to sell before a final determination is made as to the administration of this property under Article VI of the Plan.

position than if this Case were converted to chapter 7 due to the statutory commission under

section 326 of the Code, any additional, uncapped expenses of professionals and the delay of

administration within chapter 7, such that the Holders of impaired Claims and Interests will

receive or retain under the First Amended Plan, on account of such Claim or Interest, property of

a value, as of the Effective Date, that is not less than the amount that such holder would receive

or retain if the Debtor were liquidated under chapter 7 on the Effective Date, such that the First

Amended Plan satisfies the best interest of creditors test under section 1129(a)(7) of the Code.

V.      Holders of Claims in Classes A, B, C, and D[4] are conclusively presumed to have

accepted the First Amended Plan pursuant to section 1126(f) of the Code.  As set forth in the

Ballot Report, not counting the SBA Ballot which is hereby withdrawn, a total of thirteen (13)

Ballots were received from Holders of allowed Class E Claims, in the aggregate amount of

$492,989.70, and twelve (12) of those Ballots, in the aggregate amount of $492,023.35 (99.8% in

amount), were voted to accept the First Amended Plan; thus, the Class E has accepted the First

Amended Plan pursuant to section 1126(c) of the Code.  Classes F and G, which shall receive no

Distribution under the First Amended Plan are conclusively deemed to reject the First Amended

Plan pursuant to section 1126(g) of the Code, such that the First Amended Plan does not satisfy

section 1129(a)(8) of the Code.  The First Amended Plan is, nonetheless, confirmable because it

satisfies section 1129(b) of the Code with respect to Classes F and G, as set forth below.

W.      The treatment of Administrative Claims, Professional Fees, Employee Benefit

Claims, Priority Wage Claims, Governmental Unit Priority Claims, and United States Trustee

Fees, pursuant to Articles II, IV and XIV.E of the First Amended Plan, satisfies the requirements

of section 1129(a)(9)(A), (B), (C), and (D) of the Code, to the extent applicable.

---

[4]  As set forth in the Ballot Report, a total of six ballots were received by Debtor's counsel from Holders of Class D
Priority Wage Claims that were not entitled to be voted under the Plan, in the aggregate amount of $15,056.77, all of
which accepted the First Amended Plan.

X.      As set forth in the Ballot Report, and with the withdrawal of the SBA Ballot, Class E, which is impaired pursuant to the First Amended Plan and entitled to vote, voted to accept the First Amended Plan in the requisite number and amount, and did not include any vote of an insider; thus, the First Amended Plan satisfies section 1129(a)(10) of the Code.

Y.      The Estate's assets of value have been liquidated and Distributions of the Estate Assets are provided for in the First Amended Plan with the Custodian to implement the same as the representative of the Debtor's Estate, such that section 1129(a)(11) of the Code is satisfied.

Z.      All fees payable under 28 U.S.C. § 1930 either have been paid or will be paid pursuant to Articles II.A and XIV.E of the First Amended Plan, such that section 1129(a)(12) of the Code is satisfied.

AA.     The Debtor does not have or maintain, and is not obligated for, any retiree benefits (as defined in section 1114(a) of the Code), and, prior to the Confirmation Date, has paid the Allowed Employee Benefit Claim in full in accordance with the disclosure in the First Amended Disclosure Statement, such that section 1129(a)(13) of the Code does not apply to the First Amended Plan.

BB.     None of subsections (a)(14), (15), or (16) of section 1129 of the Code apply to the Debtor as it does not have any domestic support obligations, is a corporation, is not an individual, and is for-profit (not non-profit), such that these provisions do not apply to the First Amended Plan.

CC.     The Debtor, as the proponent, gave notice in Article V of the First Amended Plan that it would request that the Court confirm the First Amended Plan under section 1129(b) of the Code in the event that Class E voted to accept the First Amended Plan, which it has, and the Debtor so requests confirmation.   The First Amended Plan satisfies all of the applicable

requirements of section 1129(a) of the Code other than section 1129(a)(8), and the Debtor, as proponent, has satisfied all of the applicable requirements of section 1129(b)(1) and (2) of the Code with respect to Classes F and G, which are deemed to reject the First Amended Plan, because the First Amended Plan does not discriminate unfairly given that all Holders of Claims and Interests with similar legal rights will receive similar treatment, and is fair and equitable, with respect to the rejecting Classes F and G because there will be no Estate Assets remaining after all Distributions are made, and no Holder of any Claim or Interest junior to Classes F or G will receive or retain any property under the First Amended Plan on account of such Claims or Interests, and each Holder of a Claim or Interest within Classes F and G will receive the same treatment—no recovery or retention of any Interest.

DD.    The First Amended Plan is the only plan that has been filed in this Case; accordingly, the requirements of section 1129(c) of the Code have been met.

EE.    The principal purpose of the First Amended Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933, and no governmental unit has objected to confirmation of the First Amended Plan, such that the requirements of section 1129(d) have been satisfied.

FF.    This Case is not a small business case (as defined in section 101(51C) of the Code), such that section 1129(e) of the Code is not applicable.

GG.    Based on the record before the Court in this Case, the Debtor, by and through the Custodian, is deemed to have solicited acceptances of the First Amended Plan in good faith and in compliance with the applicable provisions of the Code, including without limitation, sections 1125(a) through (e) of the Code, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, such that the Debtor

and Custodian are entitled to the protections afforded by section 1125(e) of the Code and the exculpation provision set forth in Article XI.B of the First Amended Plan as modified herein.

HH.    The Debtor reserves the right, on its behalf and on behalf of the Committee, to object to any Claim, the provisions in Article VIII of the First Amended Plan are appropriate, and the Debtor shall have until and including the later of (i) thirty (30) days after the Confirmation Date or (ii) forty-five (45) days after the last date on which a Claim must be filed pursuant to the First Amended Plan or any applicable order of the Court to file objections to Claims, and, in fact, Debtor will file those claim objections identified in Section IX.B of the First Amended Disclosure Statement that have not yet been filed following the Confirmation Date, by or before the foregoing deadline.

II.    Nothing contained in this Order shall be deemed a waiver or the relinquishment of any rights or Causes of Action held by the Debtor or the Estate under any provision of the Code or any applicable nonbankruptcy law, including, without limitation: (i) any and all Claims against any Person or Entity, to the extent such Person asserts a cross-claim, counterclaim and/or right of setoff or recoupment that seeks affirmative relief against the Debtor or its officers, directors or representatives; (ii) the turnover of any Estate property; and (iii) rights against third parties relating to acts or omissions occurring prior to the Petition Date.

JJ.    Nothing contained in this Order shall be deemed to be a waiver or relinquishment of any Claim, right of setoff or recoupment or other legal or equitable defense that the Debtor had immediately prior to the Effective Date or arising thereafter.  The Debtor shall have, retain, reserve and be entitled to assert or assign all such Claims, rights of setoff or recoupment and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date or

arising thereafter and all of the Debtor's legal and equitable rights with regard to any Claim may

be asserted after the Effective Date.

KK.    The releases of the Exculpated Parties provided for in Article XI.C of the First

Amended Plan, as modified herein, as well as the injunction provided for in Article XI.E of the

First Amended Plan are essential to the First Amended Plan, are narrowly tailored, are consistent

with the Code and applicable law, and are hereby approved.

LL.    The terms of the First Amended Plan, including without limitation, the documents

contained in all exhibits and schedules thereto, are incorporated by reference and constitute an

integral part of these Findings of Fact and Conclusions of Law.

MM.    The failure to describe or include any particular provision of the First Amended

Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such

provision, it being the intent of this Court that the First Amended Plan be approved and

confirmed in its entirety, except as expressly modified as set forth herein.

NN.    Based upon the foregoing and all evidence and argument presented at the

Hearings and the pleadings filed with the Court, the Court finds and concludes that the First

Amended Plan satisfies the requirements for confirmation set forth in section 1129 of the Code,

and the First Amended Plan is approved and shall be confirmed under section 1129 of the Code.

## ORDER

Accordingly, based on the foregoing findings of fact and conclusions of law, and the

agreement of the undersigned parties, it is therefore hereby **ORDERED** that:

1.    For the reasons set forth herein, all requirements for final approval of the First

Amended Disclosure Statement and confirmation of the First Amended Plan have been satisfied.

Accordingly, the First Amended Disclosure Statement shall be and is hereby approved on a final

basis and the First Amended Plan, as modified hereby, shall be and is hereby confirmed under section 1129 of the Code.

2.      All findings of fact and conclusions of law stated in this Order shall, pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, constitute findings of fact and conclusions of law, and to the extent any finding of fact shall be determined to be a conclusion of law, it shall so be deemed and vice versa.

3.      The appointment of the Custodian as the representative of the Estate is hereby approved, and the Custodian is hereby authorized and directed to take any and all actions necessary and appropriate to implement and consummate the First Amended Plan.

4.      Without further action, the Committee shall be substituted as the objecting party with respect to the objection to claim set forth in the *Debtor's Objection to Claim No. 47-1 Asserted by Helen Gaudio, Guardian of the Estate of Earl Gaudio on Grounds that there is No Valid Claim or Liability, or that Claim 47-1 Should be Recharacterized as Equity* (Dkt. 779) (the "Gaudio Estate Claim Objection"), and the Committee shall have standing and is vested with the authority to prosecute the objection to the Estate Claim and to prosecute any adversary proceeding in connection therewith as if it were the Debtor taking such action.  The Custodian and Debtor's Counsel shall reasonably cooperate with the Committee and provide reasonable assistance to the Committee in furtherance of prosecuting the Gaudio Estate Claim Objection and any adversary proceeding related thereto, including, but not limited to, providing (a) all documents and electronically stored information reasonably necessary for the Committee to perform the functions contemplated herein to the Committee in care of its counsel, and (b) access to witnesses and testimony in connection with the Gaudio Estate Claim Objection and any adversary proceeding related thereto.  The Custodian and Debtor's Counsel shall provide the

aforementioned cooperation and assistance without charge to the Committee, the Committee's professionals, and the Estate; provided, however, that the Custodian and the Debtor's Counsel will not be required to pay, out of their own funds, for any third-party services, which should be chargeable as expenses of prosecution of the Gaudio Estate Claim Objection.

5.     The Custodian and Debtor's Counsel have agreed that, solely with respect to the fourth fee application period (the "Fourth Fee Period"), which runs from January 1, 2018 through and including the Confirmation Date for the Custodian, and which runs from December 16, 2017 through and including the Confirmation Date for Debtor's Counsel, the payment of their Professional Fees from the Estate Assets shall be capped as follows: (a) notwithstanding the total amount of Professional Fees as to which the Custodian may seek allowance and payment for the Fourth Fee Period, the Custodian agrees to a cap of $20,000 on the amount of Professional Fees it shall be paid for services rendered during the Fourth Fee Period; and (b) notwithstanding the total amount of Professional Fees as to which the Debtor's Counsel may seek allowance and payment for the Fourth Fee Period, Debtor's Counsel agrees to a cap of $211,000 on the amount of Professional Fees it shall be paid for services rendered during the Fourth Fee Period. Furthermore, while the Custodian and Debtor's Counsel reserve the right to seek allowance of additional Professional Fees for periods covered in the first, second and third interim fee applications previously filed by the Custodian (covering from July 19, 2013 to December 17, 2017) and by the Debtor's Counsel (covering from July 19, 2013 to December 15, 2017) which were not allowed in the Court's prior opinions and orders on such first, second and third interim fee applications[5] (collectively, the "Additional Professional Fees"), the Custodian and Debtor's

---

[5]  The opinions and orders on such first, second and third interim fee applications include the: (i) Order (Dkt. 264) entered on July 31, 2014, concerning the Custodian's First Interim Fee Application and Supplement thereto; (ii) Order (Dkt. 282) entered on August 21, 2014, concerning Debtor's Counsel's First Interim Fee Application and Supplements thereto; (iii) Opinion (Dkt. 796) entered on July 10, 2018, concerning the Second and Third Interim

Counsel agree that any such Additional Professional Fees shall be deemed subordinate in all respects to the Claims in Class E.  For clarification, neither the caps for the Fourth Fee Period nor the subordination of any Additional Professional Fees set forth in this paragraph 5 concern or relate in any way to the Professional Fees of the Custodian or the Debtor's Counsel that have been allowed in the Court's prior opinions and orders on their first, second and third interim fee applications.

6.     The Custodian, Debtor's Counsel, and the other undersigned parties have agreed that the fees and expenses of the Custodian and Debtor's Counsel, incurred following the Confirmation Date, which are to be paid by the Debtor pursuant to Article II.C of the First Amended Plan without the need for approval by the Court and which are not and shall not be deemed to be Professional Fees,[6] shall be set at, for all purposes, a flat amount of $40,000, to be paid to and partitioned between the Custodian and Debtor's Counsel, as they may agree, without any review by any party or approval from the Court—on a "no look" basis (the "Post-Confirmation Fees").

7.     The definition of General Unsecured Distribution contained in Article I, paragraph 38, on page 6 of the First Amended Plan is modified as follows:

> 38.     "General Unsecured Distribution" means $300,000 **plus** the amount of Estate Assets that remain after amounts are allocated for all Distributions, payment of the Post-Confirmation Fees, and payment of statutory fees, to be made pursuant to the terms of the Plan.

8.     In light of (a) the Court's *Order* and *Opinion* (Dkt. 797 and 796) entered July 10, 2018, which allowed less than the full amount of Professional Fees requested by the Custodian

---

Applications for Compensation by Debtor's Counsel, and the Second and Third Interim Applications for Compensation by the Custodian; and (iv) Order (Dkt. 797) entered on July 10, 2018, in conjunction with the Opinion (Dkt. 796) issued the same day.

[6] Notwithstanding that these fees and expenses are no longer deemed "Professional Fees," they include the types of fees and expenses that would be included in a fee application.

and Debtor's Counsel for the second and third interim fee periods, (b) the cap on payment of fees and expenses by the Custodian and Debtor's Counsel incurred during the Fourth Fee Period (set forth in paragraph 5 above); and (c) the Post-Confirmation Fees (set forth in paragraph 6 above), as agreed to by those parties herein, the provisions set forth in Article II.A regarding subordination of Allowed Professional Fees of the Custodian and of Debtor's Counsel will likely not become effective given that the General Unsecured Distribution is estimated, based on the best information available to the Custodian, Debtor's Counsel, the United States Trustee, the SBA, and the Committee, on a non-binding basis, to be approximately $400,000, subject to, among other things, the amount of Professional Fees of the Committee that will continue to accrue after the Confirmation Date, any increases to the other estimated Unclassified Claims and the Unimpaired Classes of Claims, and the fees payable under 28 U.S.C. § 1930.  In the event that at least $300,000 is available for Distribution to Holders of Claims in Class E as the General Unsecured Distribution, then the subordination provisions within Article II.A of the First Amended Plan shall not be effective.

However, to the extent Distributions required to be made pursuant to the First Amended Plan to Holders of Claims ahead of Class E are higher than estimated such that the $300,000 portion of the General Unsecured Distribution would not be available for Distribution to Holders of Claims in Class E as contemplated in Article IV of the First Amended Plan, the provision concerning the subordination of Allowed Professional Fees of the Custodian and of Debtor's Counsel set forth in Article II.A on page 9 of the First Amended Plan shall become effective, but modified as follows:

> the Allowed Professional Fees of the Custodian and of Debtor's Counsel for the second and third interim fee periods, to the extent not paid as of the date of entry of this Confirmation Order pursuant to the Interim Procedures Order and the Order (Dkt. 797) entered

on July 10, 2018, and for the Fourth Fee Period, and the Post-Confirmation Fees, shall be subordinate to the $300,000 amount of the General Unsecured Distribution, but only to the extent necessary for the $300,000 to be made available for Distribution to Holders of Claims in Class E as contemplated in Article IV of the First Amended Plan, and will otherwise be paid Pro Rata (or as otherwise agreed by and between the Custodian and Debtor's Counsel) to the Custodian and to Debtor's Counsel.

The foregoing shall be substituted for all text appearing after "***provided further, however***" in the eighth line of Article II.A of the First Amended Plan on page 9.

9.      Notwithstanding any other provision in the First Amended Plan, including, but not limited to, the provisions in Article XI.B and C concerning exculpation and creditor release, the undersigned parties shall retain their rights to object to the Custodian and Debtor's Counsel's applications or requests for the payment of Professional Fees in a final fee application for any fees or expenses incurred prior to the Confirmation Date regardless of whether such Professional Fees were included in any interim fee application.

10.     Due to the continued involvement of the Committee in prosecution of the Gaudio Estate Claim Objection and any adversary proceeding related thereto, the Professional Fee Bar Date shall be, and hereby is, modified as to any request for allowance and payment of Professional Fees incurred by the Committee's Counsel.  The Committee's counsel shall file any request for payment of Professional Fees, whether fees and expenses were incurred prior to or after the Confirmation Date, within 15 days following the later of (a) the Professional Fee Bar Date, or (b) the date the Gaudio Estate Claim Objection and any adversary proceeding regarding the Gaudio Estate Claim is resolved in full as determined by the Court in one or more Final Orders (the "Committee Professional Fee Bar Date").  Notwithstanding the foregoing, the Committee's counsel may file a request for approval of Professional fees on an interim basis prior to the Committee Professional Fee Bar Date.

11.     Furthermore, in light of the continuing prosecution of the Gaudio Estate Claim

Objection by the Committee, the Committee Professional Fee Bar Date, and the claim objections

to be filed by the Debtor (as described in finding HH above): (a) in further modification to

Article II.A of the First Amended Plan, (i) the unpaid Allowed Professional Fees not potentially

subject to subordination under Article II.A, may be paid in full from Estate Assets, on a final

basis, on the first business day that is five days after the date that the applicable request for

allowance of Professional Fees has been resolved by a Final Order, notwithstanding that such

date occurs before the Effective Date, (ii) the unpaid Professional Fees of the Custodian and of

the Debtor's Counsel for the second and third interim fee periods allowed under the Order

(Dkt. 797) entered on July 10, 2018, and the Post-Confirmation Fees, may be paid in full from

Estate Assets, on an interim basis, on the first day that is five days after the date of entry of this

Confirmation Order, subject to disgorgement due to the Court's final allowance of the second

and third interim period Professional Fees on the final fee application (only as to the second and

third interim period fees) or in order to effect the subordination of the Allowed Professional Fees

of the Custodian and of Debtor's Counsel set forth in Article II.A on page 9 of the First

Amended Plan, as modified in this Confirmation Order, and (iii) the Professional Fees of the

Custodian and of the Debtor's Counsel for the Fourth Fee Period may be paid in full from Estate

Assets, on an interim basis, on the first day that is five days after the date those Professional Fees

have been allowed by a Final Order, notwithstanding that such date occurs before the Effective

Date, subject to disgorgement in order to effect the subordination of the Allowed Professional

Fees of the Custodian and of Debtor's Counsel set forth in Article II.A on page 9 of the First

Amended Plan, as modified in this Confirmation Order; and (b) to the extent that fees payable

under § 1129(a)(12) of the Code and under 28 U.S.C. § 1930(a) come due prior to the Effective

Date, such amounts shall be paid when due.

12.     The word "or" is inserted between "Estate" and "any" in the second to last line of

Article XI.E on page 15 of the First Amended Plan.

13.     All executory contracts and unexpired leases not previously assumed in this Case

shall be deemed rejected as of the Petition Date, which rejection is hereby approved

14.     All Distributions made to Holders of Allowed Claims are intended to be and shall

be in full and final satisfaction of the Custodian's obligations under the First Amended Plan.

The classifications of Claims and Interests for purposes of the Distributions to be made under the

First Amended Plan shall be governed solely by the terms of the First Amended Plan.

15.     Pursuant to section 1146(a) of the Code, to the extent applicable, any transfers of

property pursuant to the First Amended Plan shall not be taxed under any law imposing a stamp

tax or similar tax.

16.     The procedures for Distributions set forth in Article IX of the First Amended Plan

are hereby amended, in accordance with the Notice of Deficiency (Dkt. 832), to strike paragraph

B (without re-lettering paragraphs C and D of Article IX), thereby removing the minimum five

dollar amount for Distributions to Holders of Allowed Claims.  In addition, paragraph D

regarding "Unclaimed Funds" is amended to strike the last sentence, which refers to turning over

unclaimed funds to the Court as the Court is without authority under the Bankruptcy Code to

order the Clerk to hold or administer unclaimed funds in Chapter 11 cases.  The following

language is substituted:  "If the Debtor and the Custodian, in consultation with the Committee

and the Office of the United States Trustee, determine that the total dollar amount of unclaimed

funds could not be cost-effectively redistributed Pro Rata to Holders of Allowed Class E Claims,

the unclaimed funds will be paid as unclaimed property, or donated, to the State of Illinois, Treasurer.

17.     The First Amended Plan may be supplemented, amended or modified at any time after the Confirmation Date pursuant to and in accordance with the terms of the Code, including applicable provisions of section 1127 of the Code, and the Bankruptcy Rules.

18.     Pursuant to section 1142(a) of the Code, the First Amended Plan and any documents or instruments necessary to administer the First Amended Plan will be enforceable notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition.

19.     On the Effective Date, the Committee shall dissolve and all of its members, Professionals and agents shall have no further duties, responsibilities, obligations, and authority in connection with the Debtor, the Case, the First Amended Plan, or its implementation, except with respect to applications for Professional Fee Claims.  In addition, Article XIII.C of the Plan shall be modified to state as follows:

> **C.     Waiver of Conditions.**  The conditions to the confirmation of this Plan and the occurrence of the Plan's Effective Date, as set forth in this Plan, may be waived in whole or in part only by joint written agreement of the Debtor and the Committee, in their sole discretion, which waiver, in order to be effective shall be contained in a joint filing by the Debtor and the Committee in the case.

20.     The Interests of the Insiders and shareholders of the Debtor shall be deemed extinguished as of the Effective Date.

21.     Following the Effective Date, the Custodian shall authorize the dissolution of the Debtor pursuant to applicable state law.

22.     The notice and contact information for the Debtor and the Custodian, as set forth in Article XIV.K of the First Amended Plan, is hereby updated and replaced, as follows:

To the Debtor:          Earl Gaudio & Son, Inc.
                        Tyson A. Crist
                        Ice Miller LLP
                        250 West Street
                        Columbus, Ohio  43215
                        Email:  Tyson.Crist@icemiller.com

And to the Custodian: Rachael A. Gould
                        Vice President
                        First Midwest Bank
                        520 N. Cass Ave.
                        Westmont, IL  60559
                        Email:  Rachael.Gould@firstmidwest.com

23.     Notwithstanding Bankruptcy Rule 3020(e), this Order shall take effect immediately upon its entry and the Custodian, as representative of the Estate, is authorized to consummate and implement the First Amended Plan in accordance with its terms, as modified herein.

24.     To the extent of any inconsistency between the provisions of the First Amended Plan and this Order, the terms and provisions contained in this Order shall govern.

25.     The provisions of this Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

26.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

[See signatures on next page]

**AGREED AND SUBMITTED BY:**

| | |
|---|---|
| EARL GAUDIO & SON, INC.,<br>Debtor and Debtor-in-Possession<br><br><br>By: /s/ Tyson A. Crist<br>    Tyson A. Crist<br>    250 West Street<br>    Columbus, OH 43215<br>    (614) 462-2700 – Telephone<br>    (614) 462-5135 – Facsimile<br>    Tyson.Crist@icemiller.com<br>    *Counsel to the Debtor and*<br>    *Debtor in Possession* | RUBIN & LEVIN, P.C.,<br>Counsel to the Official Unsecured Creditors'<br>Committee<br><br>By: /s/ James E. Rossow Jr.<br>    James E. Rossow Jr.<br>    Indiana Attorney No. 21063-29<br>    135 N. Pennsylvania Street, Suite 1400<br>    Indianapolis, IN 46204<br>    Phone: (317) 860-2893<br>    Fax: (317) 453-8619<br>    jim@rubin-levin.net |
| JOHN E. CHILDRESS<br>United States Attorney<br><br><br>By: /s/ Kate R. O'Loughlin<br>    Kate R. O'Loughlin<br>    Bar No. 6280733<br>    Special Assistant United States Attorney<br>    500 W. Madison, Suite 1150<br>    Chicago, IL 60661<br>    (312) 353-9098<br>    kate.oloughlin@sba.gov<br>    *Attorney for the Small Business*<br>    *Administration* | NANCY J. GARGULA<br>United States Trustee<br><br><br>By: /s/ Sabrina M. Petesch<br>    Sabrina M. Petesch<br>    United States Department of Justice<br>    Office of the United States Trustee<br>    401 Main Street, Suite 1100<br>    Peoria, IL 61602<br>    Phone: (309) 671-7854 x. 228<br>    Fax: (309) 671-7857<br>    Sabrina.M.Petesch@usdoj.gov |

###

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 13-90942 |
| | ) | |
| EARL GAUDIO & SON, INC., | ) | Judge Mary P. Gorman |
| | ) | |
| Debtor. | ) | Chapter 11 |

---

# FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION
# OF EARL GAUDIO & SON, INC.

---

Victoria E. Powers
Tyson A. Crist
ICE MILLER LLP
250 West Street
Columbus, OH 43215
614-462-2700 – Telephone
614-222-3478 – Facsimile
Email: victoria.powers@icemiller.com
      tyson.crist@icemiller.com

*Counsel to Debtor and Debtor in Possession*

Earl Gaudio & Son, Inc., the debtor and debtor in possession, by and through First Midwest Bank as Custodian, proposes the following Plan under Chapter 11 of the Code.

## ARTICLE I.
## DEFINITIONS

The following terms appear in this Plan as capitalized terms and have the meanings set forth below.

1.      "Administrative Claim" means a Claim that is allowable under §503(b) of the Code and entitled to priority under §507(a)(2) of the Code, including, without limitation: (a) fees payable under 28 U.S.C. §1930; (b) actual and necessary costs and expenses incurred after the Petition Date and in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Case; (d) all Claims for Professional Fees; and (e) other Claims approved as Administrative Claims as ordered by the Court.

2.      "Adversary Proceeding" means, individually and collectively, the Avoidance Actions that have been commenced in the Case by the Debtor prior to the Confirmation Date.

3.      "Allowed" means, with respect to any Claim: (a) any Claim, or portion thereof, against the Debtor which has been listed by the Debtor in its Schedules of Assets and Liabilities as liquidated in amount and not disputed or contingent, for which no contrary Proof of Claim has been filed and to which the Debtor or any other party in interest, as applicable, has not filed an objection within the time allowed for objections; (b) any timely-filed Claim against the Debtor to which the Debtor or any other party in interest, as applicable, has not filed an objection within the time allowed for objections; and (c) any timely-filed Claim against the Debtor as to which the liability of the Debtor and the amount thereof have been determined by Final Order.

4.      "Avoidance Actions" means all causes of action preserved for the Estate under §§510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 of the Code that the Debtor or the Estate may have against any Person or Entity.

5.      "Ballot" means the form, as approved by the Court, distributed with the Disclosure Statement upon which Holders of impaired claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

6.      "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075 and any Local Rules of the Court applicable to the Case.

7.      "Bar Date" means the date or dates fixed by the Court by which Persons who want to file a Claim against the Debtor are or were required to file a proof of claim or a request for payment or be forever barred from asserting a Claim against the Debtor or its property, from voting on this Plan, and from sharing in Distributions under this Plan. (Please see definition of "Deemed Filed Claims," below.)

8.      "Case" means the voluntary Chapter 11 proceeding of the Debtor under Chapter 11 of the Code, Case No. 13-90942, filed with the Court.

9.      "Cash" means legal tender of the United States of America and equivalents thereof, including readily marketable direct obligations of the United States of America, certificates of deposit issued by a federally insured bank, money market accounts of federally insured banks, currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

10.     "Cause of Action" means any and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, rights of action, choses in action, controversies, agreements, obligations, accounts, defenses, offsets, powers, privileges, provisions, rights to legal or equitable remedies and rights to payment, licenses and franchises of any kind or character whatsoever, known or unknown, suspected or unsuspected, reduced to judgment, liquidated, fixed, contingent, matured, disputed, secured or unsecured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtor or its Estate, including, without limitation, (a) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law, (b) claims pursuant to §362 of the Code, (c) such claims and defenses as fraud, mistake, duress, and usury, and (d) all Avoidance Actions.

11.     "Chapter 7" means Chapter 7 of the Code.

12.     "Chapter 11" means Chapter 11 of the Code.

13.     "Claim" means (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, and (b) any right against the Debtor to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

14.     "Class" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to §1122(a) of the Code.

15.     "Code" means the Bankruptcy Reform Act of 1978, effective October 1, 1979, as set forth in Title 11 of the United States Code, as amended from time to time, and applicable to the Case.

16.     "Committee" shall mean the Official Committee of the Unsecured Creditors duly appointed in the Case.

17.     "Confirmation" means the entry by the Court of the Confirmation Order.

18.     "Confirmation Date" means the date upon which the Confirmation Order is entered by the Court in the Case.

19.     "Confirmation Order" means the order of the Court confirming this Plan.

CO\5749308.8

20.     "Court" means the United States Bankruptcy Court for the Central District of Illinois, including the Honorable Mary P. Gorman, and any other United States Bankruptcy Judge presiding in the Chapter 11 Case of the Debtor.

21.     "Custodian" means First Midwest Bank in its capacity as Custodian of Earl Gaudio & Son, Inc., pursuant to appointment on June 27, 2013 by the Circuit Court for the Fifth Judicial District of Illinois, Vermilion County.

22.     "Debtor" means Earl Gaudio & Son, Inc.

23.     "Debtor's Counsel" means Ice Miller, LLP, retained as Debtor's counsel as authorize pursuant to an Order entered in the Case on August 28, 2013 at Dkt. No. 72.

24.     "Deemed Filed Claim" means a debt scheduled as owing by the Debtor to a creditor in a specific dollar amount which is not scheduled as "contingent," "unliquidated" or "disputed." These creditors have "deemed filed claims" and were not required to file a Proof of Claim by the Bar Date, unless they wished to claim a different dollar amount is owing.

25.     "Disclosure Statement" means the First Amended Disclosure Statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court, pursuant to §1125 of the Code and Bankruptcy Rule 3017.

26.     "Disputed" means, with respect to any Claim which has not been Allowed pursuant to the Plan or a Final Order:

        **a.**     If no Proof of Claim or request for payment has been filed by the applicable Bar Date: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or

        **b.**     If a Proof of Claim or request for payment has been filed by the applicable Bar Date, a Claim for which a timely objection or request for estimation is interposed by the Debtor, which has not been withdrawn or determined by a Final Order.

27.     "Distribution" means a distribution in accordance with the terms of the Plan of Cash or other Estate Assets on account of an Administrative Claim, a Secured Claim or other Allowed Claim, as the case may be.

28.     "Earl Gaudio Claim" means the asserted unpaid Claim of Earl Gaudio asserted by Helen Gaudio as Guardian of the Estate of Earl Gaudio (Claim No. 47-1) in the amount of $708,175.56.

29.     "Earl Gaudio Claim Objection" means the objection filed or to be filed in the Case to the Earl Gaudio Claim.

30.    "Effective Date" means the first business day after the date that all of the conditions to the occurrence of the Effective Date as set forth in Article XIII hereof have occurred or have been waived by the Debtor.

31.    "Employee Benefit Claims" means any unsecured Claim of the kind specified in §507(a)(5) of the Code for contributions to an employee benefit plan and all other claims allowed for payment pursuant to the Wage Order not included as a Priority Wage Claim which have not been paid as of the Effective Date.

32.    "Entity" means an entity as defined in §101(15) of the Code.

33.    "Estate" means the estate created by virtue of the commencement of the Case, as provided in §541(a) of the Code, which shall comprise all property as specified in such section.

34.    "Estate Assets" means all the assets held from time to time by the Estate.  As of the date hereof, Estate Assets consist primarily of Cash and Treasury Bills and the SBA Adversary.

35.    "Exculpated Party" means each of: (i) the Debtor and any and all of its current and former attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, and representatives; and (ii) the Custodian any and all of the current and former officers, directors, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives; and (iii) the Committee and any and all of the current and former members (including ex officio members), officers, directors, employees, partners, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives; in each instance whether current, former or future, and in each case in his, her or its capacity as such.

36.    "Final Order" means an order or judgment of the Court or any other court of competent jurisdiction that has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for stay, new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, stay, new trial, reargument or rehearing has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a stay, new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under §502(j) of the Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

37.    "General Unsecured Claim" means any Claim, or any portion thereof, which is not secured by any collateral and is not entitled to priority under any provision of the Code.

38.    "General Unsecured Distribution" means $300,000 **plus** the amount, if any, of estate assets that remain after all Distributions other than the General Unsecured Distribution have been made pursuant to the terms of the Plan.

39.    "Governmental Unit" has the meaning ascribed to it in the meaning ascribed to it in §101(27) of the Code.

40.    "Governmental Unit Priority Claim" means any unsecured Allowed Claim of a Governmental Unit of the kind specified in §507(a)(8) of the Code.

41.    "Holder" means any Person or Entity holding a Claim or an Interest.

42.    "Insider" means those individuals or entities that have equity interests in the Debtor, including, without limitation, Dennis Gaudio, Eric Gaudio, and the estate of Earl Gaudio.

43.    "Interest" means any equity interest in the Debtor, whether certificated or otherwise.

44.    "Interim Procedures Order" means the *Order Granting, in Part, Motion for Authority to Implement Interim Compensation Procedures* entered in the Case October 11, 2013 at Dkt. 138.

45.    "Person" shall have the meaning set forth in §101(41) of the Code.

46.    "Petition Date" means July 19, 2013.

47.    "Plan" means this First Amended Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc., in its present form or as it may be amended or modified in accordance with the Code.

48.    "Plan Supplement" means a supplement to the Plan including any compilation of documents, forms of documents, schedules, exhibits and/or information supplemental to the Plan, to be filed at least 10 days prior to the Confirmation Hearing, as may be amended, supplemented or modified from time to time in accordance with the terms hereof, the Code and the Bankruptcy Rules.

49.    "Priority Claims" means, collectively, the Claims classified in Classes C and D of the Plan.

50.    "Priority Wage Claims" means any unsecured Claim of an individual of the kind specified in §507(a)(4) of the Code for employee wages and related Claims allowed for payment pursuant to the Wage Order, and in the amounts set forth in the Disclosure Statement.

51.    "Professionals" means those Persons (a) employed in accordance with an order of the Court under §§327 or 1103 of the Code and to be compensated for services under §§327, 328, 329, 330, and 331 of the Code, or (b) for which compensation and reimbursement has been Allowed by the Court under §503(b) of the Code.

6

52.     "Professional Fee Bar Date" means the date that is forty five (45) days following the Confirmation Date.

53.     "Professional Fees" means the Administrative Claims of Professionals retained in the Case pursuant to §327 of the Code for compensation and reimbursement of expenses for the period prior to the Confirmation Date.

54.     "Proof of Claim" means a proof of Claim filed against the Debtor in the Case in accordance with §501 of the Code, Bankruptcy Rules 3001 and 3003 and any applicable local rules of the Court.

55.     "Pro Rata" means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

56.     "Rejection Damage Claim Bar Date" means the date that is thirty (30) days following the Confirmation Date.

57.     "Report of Warehouse Sale" means the Debtor's *Report of Sale of 1803 Georgetown Road, Tilton, Illinois Submitted Pursuant to Rule 6004(f)(1) of the Federal Rules of Bankruptcy Procedure* filed in the Case at Dkt no. 699 on November 22, 2017 and containing the details of the price and the proceeds received in connection with the Debtor's Sale of the Warehouse Property.

58.     "SBA" means the United States Small Business Administration.

59.     "SBA Adversary" means Adversary Proceeding No. 15-09025 commenced by the Debtor in the Case against the SBA.

60.     "SBA Allowed Secured Claim" means the SBA's Secured Claim, as established by agreement and a Final Order resolving the SBA Adversary.

61.     "SBA Settlement Payment" means the $600,000 payment by the SBA to the Debtor as agreed by the parties as the settlement amount to resolve the SBA Adversary Proceeding.

62.     "SBA Unsecured Claim" means the unsecured deficiency claim of SBA in the amount of $600,000 pursuant to the terms of the settlement agreement entered into by the SBA and the Debtor in resolution of the SBA Adversary.

63.     "Schedules" means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor in the Case pursuant to §521 of the Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

64.     "Secured Claim" means an Allowed Claim secured by a lien on property in which the Debtor has an interest, or which is subject to setoff under §553 of the Code, to the extent of

7

the value (determined in accordance with §506(a) of the Code) of such creditor's interest in the Debtor's interests in such property, or to the extent of the amount subject to such setoff.

65.     "Subordinated Claim" shall mean any Claim against the Debtor or its Estate that has been subordinated to the Claims of other creditors, either by Final Order or by agreement of the Holder.

66.     "Unclassified Claims" means Claims that are not subject to classification pursuant to §1123(a)(1) of the Code.

67.     "Unimpaired" means a Claim or Interest that is unimpaired within the meaning of §1124 of the Code.

68.     "Wage Order" means the Order authorizing the payment by the Debtor of all wages, salaries and other compensation as well as all claims under existing benefit programs entered in the Case on August 5, 2013 at Dkt. No. 33.

69.     "Warehouse Property" means the real property commonly known as 1803 Georgetown Road, Tilton, Illinois and related personal property owned by the Debtor on the Petition Date and sold effective as of November 7, 2017.

70.     "Warehouse Property Proceeds" means the net proceeds of the sale of Warehouse Property.

71.     "WRDR" means Wermer, Rogers, Doran & Ruzon, the Debtor's court-appointed accountants in this matter.

In addition to the foregoing specific definitions, any terms found herein, whether capitalized or not, which are not specifically defined herein shall be defined in accordance with the definitions set forth in §101 of the Code or in the Bankruptcy Rules. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety and not to any particular portion of this Plan. Wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender. The rules of construction outlined in §102 of the Code and in the Bankruptcy Rules apply to this Plan. To the extent there are any inconsistencies between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall govern.

## ARTICLE II.
## UNCLASSIFIED, ADMINISTRATIVE AND PROFESSIONAL CLAIMS

**A.     Unclassified Claims**. Under the Plan, Claims having priority under §507(a)(2) and §507(a)(8) of the Code and fees payable under §1129(a)(12) of the Code and under 28 United States Code §1930(a) are Unclassified Claims. Except as specifically otherwise provided below in this paragraph with respect to unpaid Allowed Professional Fees of the Custodian and Debtor's Counsel, Allowed Unclassified Claims will be paid in full, or shall receive such payment as the Holder of any such Allowed Unclassified Claim and the Debtor may otherwise agree, according to the priority of such Allowed Unclassified Claim under §507 of the Code,

CO\5749308.8

from Estate Assets on the later of (i) the date on which such Unclassified Claim becomes Allowed and (ii) the Effective Date. Unless the Holder of an unsecured Allowed Claim having priority under §507(a)(8) of the Code otherwise agrees, its Claim must be paid in full on or before the date which is five years after the Petition Date. ***Notwithstanding the forgoing, however,*** unless otherwise agreed by the applicable Professional and the Debtor, unpaid Allowed Professional Fees shall be paid on the Effective Date or, if later, on the first business day that is five days after the date that the applicable request for allowance of Professional Fees has been resolved by Final Order, and ***provided further, however,*** the Allowed Professional Fees of the Custodian and of Debtor's Counsel, ***excluding*** amounts of professional fees of the Custodian and the Debtor's Counsel that, as of the date of the filing of the Plan, have been previously paid on an interim or final basis either pursuant to an order entered in the Case allowing fees on an interim or final basis, or pursuant to the Interim Procedures Order allowing interim payments of professional fees and expenses, will be paid Pro Rata (or as otherwise agreed by and between the Custodian and Debtor's Counsel) on a subordinated basis after Distributions are made as provided herein on account of the following Allowed Claims as provided herein: (i) the other unpaid Allowed Unclassified Claims (including any unpaid Allowed Professional Fees of the Custodian and Debtor's Counsel not subject to the foregoing subordination); (ii) the unpaid Allowed Secured Claims classified in Class A; (iii) the unpaid Allowed Employee Benefit Claims classified in Class C; (iv) the unpaid Allowed Priority Wage Claims classified in Class D; and (v) the Allowed General Unsecured Claims classified in Classes E and F; all as described herein.

      **B.**    <u>**Administrative Claim Bar Date**</u>. In accordance with that certain Bar Date Order entered by the Court on July 26, 2016 (Dkt. No. 527), all requests for payment of Administrative Claims (except for any previously-allowed Administrative Claim and except for any Professional Fee Claims) were to be filed on or before September 30, 2016 and if not timely filed, the Holders of such Administrative Claims were forever barred from asserting such Administrative Claims and are not entitled to any Distributions under this Plan. Any holder of an Administrative Claim that was not on the service list and therefore did not receive notice of the Administrative Claim bar date and has not asserted its Administrative Claim may file a request for payment of the Administrative Claim within thirty (30) business days following the Confirmation Date or be forever barred.

      **C.**    <u>**Professional Fee Bar Date**</u>. All requests for payment of Professional Fees arising on or before the Confirmation Date shall be filed with the Court and served on the Debtor, the United States Trustee and any party having requested notice in this Case on or before the Professional Fee Bar Date. Any Professional Fees for which an application or request for payment is not filed on or before the Professional Fee Bar Date shall be deemed released and forever barred, and shall not be entitled to any Distribution under this Plan. The fees and expenses of Professionals incurred following the Confirmation Date shall be paid by the Debtor without the need for approval by Court and are not and shall not be deemed to be Professional Fees.

**ARTICLE III.**
<u>**CLASSIFICATION OF CLAIMS**</u>

      Pursuant to §§1122 and 1123(a)(1) of the Code, the categories of Claims and Interests set forth below classify all Claims against, and Interests in, the Debtor for all purposes, including

9

voting and Distributions pursuant to this Plan, excluding the unclassified Claims described above. A Claim shall be deemed classified in a particular Class for purposes of voting on, and of receiving Distributions pursuant to, this Plan only to the extent that such Claim satisfies the description of the Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim satisfies the description of such different Class. A Claim is in a particular Class only to the extent that such claim is an Allowed Claim in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

**A.    Classes of Claims and Interests**.

**1.    Unimpaired Classes**. The following Classes are Unimpaired under this Plan and, except to the extent that a Holder of an Allowed Claim in such Class agrees to a less favorable treatment, will be treated as set forth below in full satisfaction of the Claims within the Class. Unimpaired Classes of Claims are deemed to have accepted this Plan pursuant to §1126(f) of the Code.

**CLASS A**: Secured Claims other than the SBA Allowed Secured Claim.

**CLASS B**:  SBA Allowed Secured Claim.

**CLASS C**:  Employee Benefit Claims.

**CLASS D**: Priority Wage Claims.

**2.    Impaired Classes**. The following Class of Claims is impaired, and is entitled to vote to accept or reject the Plan.

**CLASS E**: General Unsecured Claims including the SBA Unsecured Claim but excluding the Subordinated Claims.

**3.    The following Classes of Claims and Interests are impaired, as defined in §1124 of the Code, and are deemed to reject the Plan.

**CLASS F**:  Subordinated Claims.

**CLASS G**:  Interests of the Shareholders of the Debtor.

### ARTICLE IV.
### TREATMENT OF CLAIMS

As of the Effective Date and by virtue of Confirmation of the Plan, the Classes of Claims shall be entitled to the following treatment.

**CLASS A:  Secured Claims.**

Each Holder of an unpaid Allowed Secured Claim in Class A shall be paid in full in Cash on the Effective Date or as soon thereafter as practicable, on account of and in full satisfaction of such Holder's unpaid Allowed Secured Claim.

<u>**CLASS B**</u>:  **SBA Allowed Secured Claim.**

The SBA Allowed Secured Claim has been paid in full and shall receive no further Distribution.

<u>**CLASS C**</u>:  **Employee Benefit Claims.**

The Debtor was permitted by the Wage Order to pay and satisfy all amounts under its existing benefit programs, which are the Allowed Employee Benefit Claims.  To the extent not paid prior to the Effective Date pursuant to the Wage Order, the Allowed Employee Benefit Claim amount shall be paid in full in Cash on the Effective Date or as soon thereafter as practicable, which amount shall be equal to the 100% of the unpaid and outstanding contributions and related amounts for the employee benefits as of the date of payment, in full satisfaction of the Allowed Employee Benefit Claims.

<u>**CLASS D**</u>:  **Priority Wage Claims.**

The Debtor was permitted by the Wage Order to pay and satisfy all wages, salary and other compensation due to its employees.  Each Holder of an unpaid Priority Wage Claim shall be paid the amount noted for each such Holder in the Debtor's Schedules, attached as Exhibit D. to the Disclosure Statement, in Cash on the Effective Date or as soon thereafter as practicable, on account of and in full satisfaction of such Holder's unpaid Priority Wage Claim.

<u>**CLASS E**</u>:  **General Unsecured Claims including the SBA Unsecured Claim but excluding the Subordinated Claims**

Holders of Allowed General Unsecured Claims that are not Subordinated Claims and that are not classified in any other Class under the Plan shall receive their Pro Rata share of the General Unsecured Distribution in Cash on the Effective Date or as soon thereafter as practicable, on account of and in full satisfaction of such Holder's unpaid Allowed General Unsecured Claims.

<u>**CLASS F**</u>:  **Subordinated Claims**

Allowed Subordinated Claims shall receive no Distribution under the Plan.

<u>**CLASS G**</u>:  **Interests of the Shareholders of the Debtor**

The Interests of the Insiders, including as a result of recharacterization of any Claim as equity, shall receive no Distribution under the Plan and such Interests shall be deemed extinguished as of the Effective Date.

**ARTICLE V.**
<u>**CRAMDOWN**</u>

The Debtors will request Confirmation of the Plan under §1129(b) of the Code event that Classes E and/or F vote to accept the Plan.  The Debtors reserve the right to modify the Plan in accordance with the terms hereof.

CO\5749308.8

## ARTICLE VI.
## IMPLEMENTATION OF PLAN

**A.**    **Custodian as "Representative of Estate"**.    Upon the Effective Date, and by virtue of the Confirmation of this Plan, the Custodian shall be expressly appointed by the Court as the representative of Debtor's estate pursuant to §1123(b)(3)(B) of the Code.

**B.**    **Powers and Duties of the Custodian**.    The Custodian shall have the power, duty and authority to take all actions necessary and appropriate to administer and distribute all remaining Cash and Estate Assets pursuant to the terms of this Plan and to further the provisions, goals and intent of the Plan.    Following the Effective Date, through the closing of the Case under §350 of the Code and entry of a final decree pursuant to Bankruptcy Rule 3022, the Custodian shall pay all fees payable under 28 U.S.C. §1930(a)(6), and shall timely file with the Court and serve one or more reports of the actions taken, the progress made in the administration of this Plan, and the time frame anticipated until a final report and motion for the entry of a final decree can be filed with the Court.    On the Effective Date, the Custodian shall be deemed the sole representative of the Debtor with all powers and authority granted to any officer or director under Illinois law.

**C.**    **Execution of Documents**.    On and after the Effective Date, the Custodian is authorized to execute any documents or instruments necessary to administer this Plan.

**D.**    **Surrender of Instruments**.    Any holder of a Claim (a) holding a certificate or instrument evidencing a Claim against the Debtor or Estate property and (b) whose Claim is treated under this Plan, shall surrender such certificate or instrument to the Debtor prior to receiving any Distribution under this Plan, unless the non-availability of such certificate or instrument is established to the satisfaction of the Custodian.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Rejection of Unassumed Executory Contracts**.    On the Confirmation Date, all executory contracts and unexpired leases not previously assumed in the Case shall be deemed rejected as of the Petition Date.    Confirmation shall constitute approval by the Court of any and all such rejections.

**B.**    **Rejection Damage Claim Bar Date**.    All Rejection Damage Claims arising by operation of Article VII Section a. of this Plan shall be filed with the Court on or before the Rejection Damage Claim Bar Date.    Any Rejection Damage Claim not filed by such date shall be forever barred and shall not be entitled to any Distributions under this Plan.    The Custodian shall have the right to object to any Rejection Damage Claim.    Nothing contained herein shall extend or modify any Bar Date previously applicable to any Claim arising from or related to the rejection of any executory contract or unexpired lease.

## ARTICLE VIII.
## RESERVATION OF RIGHT TO OBJECT TO CLAIMS

The Debtor has objected to and resolved objections to numerous Claims and does not currently anticipate any further objections, however, the Debtor reserves the right, on its behalf and on behalf of the Committee, to object to any Claim. Except to the extent a Claim is expressly Allowed in this Plan, the Debtor and the Committee shall have the exclusive right to review and, if appropriate, pursue all objections to Claims asserted against the Debtor's Estate in accordance with the Code, as well as any proceeding brought for the purpose of estimating the amount of an Allowed Claim under §502(c) of the Code. Should the Debtor or the Committee choose to file such objections or bring any estimation proceeding, such objecting party will diligently prosecute all such objections and proceedings. Any and all objections to such Claims, or contested proceeding brought to seek estimation of Claims, or contested proceeding brought to seek estimation of Claims, must be filed by the later of (i) thirty (30) days after the Confirmation Date or (ii) forty-five (45) days after the last date on which a Claim must be filed pursuant to this Plan or any applicable order of the Court.

## ARTICLE IX.
## DISTRIBUTIONS

**A.** **Distributions to Holders of Allowed Claims**. The Debtor and the Custodian shall determine the timing and amount of all Distributions on account of Allowed Claims not otherwise satisfied on the Effective Date in accordance with the terms of this Plan and the Confirmation Order.

**B.** **Minimum Distributions to Holders of Allowed Claims**. Notwithstanding anything to the contrary herein, no Distribution shall be made to any Holder of an Allowed Claim if the amount of such Distribution would be less than five dollars ($5).

**C.** **Distribution Addresses; Change of Address**. All Distributions shall be made to the Holder of any Claim at the address set forth either in the Debtor's Schedules or in any Proof of Claim. A notice of any change of address will be valid if, and only if, such notice is filed with the Court, in accordance with Bankruptcy Rule 3001, if applicable, and served upon the Debtor and the Custodian.

**D.** **Unclaimed Funds**. Notwithstanding any statute, law, rule or regulation to the contrary, if any Distribution under this Plan is returned as undeliverable, or if any check evidencing a Distribution remains uncashed for ninety (90) days after the date on which the check was issued and there has been no written notice actually received by the Debtor or the Custodian advising of the Holder's then-current address within said ninety-day period, then such Distribution shall be deemed unclaimed property under Code §347(b) and the underlying Claim shall be deemed to be waived. Any unclaimed funds shall be paid into the Court as set forth in Code §347(a) and shall be disposed of under chapter 129 of Title 28 United Stated Code, unless otherwise agreed by and among the Debtor, the Committee, and the Office of the United States Trustee.

13

## ARTICLE X.
## RETENTION OF CAUSES OF ACTION

**A.**     **No Waiver**.  Except as set forth in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action held by the Debtor or the Estate under any provision of the Code or any applicable non-bankruptcy law, including, without limitation: (i) any and all Claims against any Person or Entity, to the extent such Person asserts a cross-claim, counterclaim and/or right of setoff or recoupment that seeks affirmative relief against the Debtor or its officers, directors or representatives; (ii) the turnover of any Estate property; and (iii) rights against third parties relating to acts or omissions occurring prior to the Petition Date.

**B.**     **Reservation of Rights**.  Except as set forth in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, right of setoff or recoupment or other legal or equitable defense that the Debtor had immediately prior to the Effective Date or arising thereafter.  The Debtor shall have, retain, reserve and be entitled to assert or assign all such Claims, rights of setoff or recoupment and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date or arising thereafter and all of the Debtor's legal and equitable rights with regard to any Claim may be asserted after the Effective Date.

## ARTICLE XI.
## RELEASE, INJUNCTION AND BINDING NATURE OF PLAN

**A.**     **Compromise of Claims**.  Pursuant to §1123(b)(3) of the Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest, and shall constitute a motion under Bankruptcy Rule 9019 to approve such compromises and settlements. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests, and is fair, equitable, and reasonable.

**B.**     **No Liability for Solicitation or Participation.**  As specified in §1125(e) of the Code, persons that solicit acceptances or rejections of the Plan are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan. Each Exculpated Party shall not incur and shall not have any liability to any Person or Entity for any act or failure to act on or prior to the Effective Date in connection with or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effectuating the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, or any other pre- or post-Petition Date act taken or omitted to be taken in connection with or in contemplation of the Case or the administration of the Estate and/or the Case, *provided, however*, that the provisions of this

paragraph shall not apply to an act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or fraud.

**C.     Creditor Release.  Except as may be otherwise provided elsewhere in this Plan, the Confirmation Order, or in any other Final Order entered prior to the Confirmation Order, in consideration for the agreements and/or documents to be entered into or delivered in connection with the Plan, (a) each Holder of a Claim that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Entity that receives a Distribution on account of its Allowed Claim, or that has held, holds or may hold a Claim or at any time was a creditor of the Debtor and that is not permitted to vote on the Plan, does not vote on the Plan or votes against the Plan, will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the right to enforce obligations under the Plan and any contracts, instruments, releases, agreements and documents delivered under the Plan); whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that relate, in any way to the Debtor, the Case, the Estate, or the Plan that such Entity has, had or may have against any Exculpated Party, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date.**

**D.     Binding Effect of the Plan.**  Upon the Effective Date, the provisions of this Plan are binding on all Persons and Entities to the fullest extent permitted under applicable law, expressly including, without limitation, all Holders of Claims and Interests, and the successors and assigns of the foregoing, whether or not they vote to accept or reject this Plan, were deemed to reject the Plan, or have filed a Claim.

**E.     Injunction.  Except as otherwise provided in the Confirmation Order, all Persons, including but not limited to, all Holders of a Claim or Interest and all of the Debtor's creditors (whether their claims are present, future, contingent, non-contingent, matured, unmatured, secured, unsecured, asserted, unasserted, liquidated or unliquidated), employees, and former employees, and their respective successors and assigns, including any trustee subsequently appointed, are permanently enjoined, restrained and precluded from asserting, commencing or continuing in any manner any action or other proceeding, including, without limitation, on account of any claim, interest, cause of action, encumbrance, lien, setoff, Claim, or right of recoupment, against the Debtor or the Estate any property of the foregoing, related in any manner to any matter occurring prior to the Effective Date of the Plan.**

**ARTICLE XII.**
**MODIFICATION OF THE PLAN**

The Debtor reserves the right to amend or modify the Plan pursuant to and in accordance with the terms of the Code and the Bankruptcy Rules.

15

## ARTICLE XIII.
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**A.      Conditions to Confirmation.**  The sole condition to confirmation of this Plan is the entry of a Confirmation Order in a form and substance reasonably acceptable to the Debtor.

**B.      Conditions to Occurrence of the Effective Date.**  The Plan will not become effective and the Effective Date will not occur unless and until: (i) the Confirmation Date has occurred and the Confirmation Order, in a form consistent with the requirements of the Plan, has become a Final Order; and (ii) all of the Adversary Proceedings, including, without limitation, the SBA Adversary, shall be fully and finally resolved by a Final Order, the SBA Settlement Payment has been received by the Debtor and the SBA Adversary Proceeding has been dismissed; and (iii) all claims objections as well as all of the timely applications for allowance of Professional Fees shall have been fully determined by Final Order; and (iv) all other actions, documents, and agreements necessary to implement the provisions of the Plan are reasonably satisfactory to the Debtor, and such actions, documents and agreements have been effectuated or executed and delivered in the Debtor's sole discretion, which determination will not be unreasonably withheld.

**C.      Waiver of Conditions.**  The conditions to the confirmation of this Plan and the occurrence of the Plan's Effective Date, as set forth in this Plan, may be waived in whole or in part by the Debtor in its sole discretion, which waiver, in order to be effective, shall be contained in a filing by the Debtor in the case.

## ARTICLE XIV.
## GENERAL PROVISIONS

**A.      Effect of Failure of Conditions**.  All obligations of the Debtor under this Plan are expressly contingent upon Confirmation and the occurrence of the Effective Date.  The Debtor may, for any reason, at any time prior to Confirmation, withdraw as the proponent of the Plan by filing a notice of such withdrawal with the Court.  If that were to occur, the Plan would be immediately withdrawn from consideration for Confirmation, and Debtor would not have any further obligations under the Plan.  In addition, unless expressly otherwise set forth herein, if the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any Holders or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holder of any Claim or any other Entity in any respect.

**B.      Dissolution of the Debtor**.  Following the Effective Date, the Custodian shall authorize the dissolution of the Debtor pursuant to applicable state law.

**C.      Governing Law**.  Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations of the Debtor, the Custodian, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Illinois.

16

CO\5749308.8

**D.    Setoffs**.  The Debtor may, but is not required to, set off or recoup against any Claim and the payments or other Distributions to be made under this Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date or Effective Date, as applicable, that the Debtor may have against the holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtor of any such Claim that it may have against such Holder.

**E.    Payment of Statutory Fees**.  All fees payable pursuant to 28 U.S.C. §1930 at the time of Confirmation, as determined by the Court at the hearing pursuant to §1128 of the Code, shall be paid on or before the Confirmation Date.  Notwithstanding the preceding sentence, fees under 28 U.S.C. §1930 will continue to accrue and until the Case is closed.

**F.    Statutory Committee and Cessation of Fee and Expense Payment.**  On the Effective Date, the Committee shall dissolve and all of its members, Professionals and agents shall have no further duties, responsibilities, obligations, and authority in connection with the Debtor, the Case, the Plan, or its implementation, except with respect to applications for Professional Fee Claims.

**G.    Use of Funds**.  Confirmation and the occurrence of the Effective Date shall constitute authorization by the Court for the use of funds of the Estate to meet any cash requirements in this Case in accordance with the terms of the Plan.

**H.    Claims Must Be Allowed for Any Distribution**.  Notwithstanding any other provision of this Plan specifying a date or time for the payment or Distribution of consideration hereunder, payments and Distributions with respect to any Claim which at such date is disputed, unliquidated or contingent, will not be made until such Claim becomes an Allowed Claim, whereupon such payments and Distributions will be made promptly, or as otherwise provided for herein.  Thus, any Claim as to which an objection is pending at the time a payment or Distribution is due under the Plan, will not receive such payment or Distribution until the objection to the Claim has been resolved by a Final Order.

**I.    Integration Clause**.  This Plan constitutes a complete, whole, and integrated statement of the binding agreement among the Debtor, each of the Claimants and Holders of Interests, their respective successors and assigns, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

**J.    Headings**.  The headings in this Plan are for convenience of reference only, and shall not limit or otherwise affect the meanings of this Plan.

**K.    Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; (iii) reputable overnight courier service, freight prepaid; or (iv) by email attachment; addressed as follows:

17

To the Debtor:      Earl Gaudio & Son, Inc.
                    Victoria E. Powers
                    Tyson A. Crist
                    Ice Miller LLP
                    250 West Street
                    Columbus, Ohio  43215
                    Email:  Victoria.Powers@icemiller.com
                    Email:  Tyson.Crist@icemiller.com


And to the Custodian: Angela Hart
                    Senior Vice President
                    Rachael A. Gould
                    Vice President
                    First Midwest Bank
                    24509 West Lockport Street
                    Plainfield, IL  60544
                    Email:  Angela.Hart@firstmidwest.com
                    Email:  Rachael.Gould@firstmidwest.com

**L.**     **Delivery of Notices**.  If personally delivered, such communication shall be deemed delivered upon actual receipt; if electronically transmitted in accordance with this Plan, such communication shall be deemed delivered by the next noon at point of arrival occurring on a business day following transmission; if sent by overnight courier in accordance with this Plan, such communication shall be deemed delivered within twenty-four hours of deposit with such courier or noon of the first business day following such deposit, whichever first occurs; and if sent by U.S. Mail in accordance with this Plan, such communication shall be deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of such failure or refusal.  Any Notice party may change its address for the purposes of this Plan by giving notice of such change to the parties set forth above.

**M.**     **Severability**.  If any provision of this Plan is found by the Court to be invalid, illegal or unenforceable, if this Plan is found by the Court to be invalid, illegal or unenforceable, or if this Plan cannot be confirmed under §1129 of the Code, the Court, at the Debtor's request (or the Custodian's request following the Effective Date), shall retain the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**N.**     **No Interest**.  Except as otherwise provided in this Plan or a Final Order, no interest shall accrue or be payable with respect to any Claim or Interest, whether a disputed Claim or otherwise.

**O.**     **Withholding and Reporting Requirements**.  In connection with the Plan and all Distributions made thereunder, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each Holder of a Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any such federal, state or local taxing authority, including income, withholding and other tax obligations, on account of such Distribution.   Notwithstanding any provision in the Plan to the contrary, the Debtor and Custodian shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to comply with applicable withholding requirements, withholding Distributions pending receipt of information necessary to facilitate such Distributions or establishing any other mechanisms they believe are reasonable and appropriate.

## ARTICLE XV.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over any and all matters arising out of or related to the Case and all Adversary Proceedings, and any and all Persons and Entities with respect to all matters arising out of or related to the Case and all Adversary Proceedings, the Debtor and the Plan to the fullest extent as is legally permissible. The Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Code.

Dated: _May 11, 2018_

Earl Gaudio & Son, Inc.
by and through First Midwest Bank, as
Custodian

By: _____

_____
Victoria E. Powers
Tyson A. Crist
ICE MILLER LLP
250 West Street
Columbus, OH 43215
614-462-2700 – Telephone
614-222-3478 – Facsimile
Email: victoria.powers@icemiller.com
        tyson.crist@icemiller.com

19