UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| EARL GAUDIO & SON, INC., | ) | Case No. 13-90942 |
| | ) | |
| Debtor. | ) | |

**JOINT CONSOLIDATED OBJECTION TO THE FOURTH
AND FINAL FEE APPLICATIONS OF ICE MILLER LLP, COUNSEL
FOR DEBTOR, AND FIRST MIDWEST BANK, CUSTODIAN FOR DEBTOR**

The Official Committee of Unsecured Creditors ("Committee"), by counsel James E. Rossow Jr., and the United States of America, on behalf of the Small Business Administration ("SBA"), by John C. Milhiser, United States Attorney for the Central District of Illinois and Special Assistant United States Attorney Kate R. O'Loughlin, respectfully submit this consolidated objection to the Fourth and Final Fee Applications of First Midwest Bank, Custodian for the Debtor, ("FMB") [Doc 881] and Ice Miller, LLP, Counsel for Debtor ("Ice Miller") [Doc 880].

**INTRODUCTION**

Substantial portions of FMB and Ice Miller's final fee applications seek to explain errors and omissions in their prior interim fee applications. FMB and Ice Miller state they are not seeking reconsideration of the Court's prior orders on their interim fee applications, and that they are not asking the Court to award them more than the previously awarded amounts for the first, second, and third interim fee application periods. In light of these concessions (a point negotiated by the parties), the Committee and SBA do not respond to FMB and Ice Miller's arguments and assertions about those

prior interim fee applications, except to note that FMB and Ice Miller both concede misstatements and errors in their prior fee applications. Those errors resulted, among other things, in FMB paying Ice Miller $120,629.61 for fees and expenses in excess of the amounts authorized by the Court's July 10, 2018 *Opinion* related to FMB and Ice Miller's second and third fee applications ("Fee Opinion") [Doc 796]. *Ice Miller's Final Fee Application* ¶¶ 12-13. Ice Miller has not refunded that overpayment to the estate, and prior to filing its Fourth and Final Fee Application, did not directly raise the overpayment to the U.S. Trustee, Committee or SBA. However, as Ice Miller notes, the payment was included in Debtor's December 2015 Monthly Operating Report [Doc 441]. FMB also concedes that it overbilled the estate by $5,390.97 for fees and costs during the first interim fee period.

## ARGUMENT

**I.    The Court should reduce Ice Miller's $146,239.52 in requested fees and costs for drafting plans, a disclosure statement and an agreed confirmation order.**

The bulk of Ice Miller's fourth interim fee request, $146,239.52 in fees and expenses, is for time spent negotiating and drafting two plans, a disclosure statement and the agreed confirmation order. One major sticking point in the Debtor's First Amended Plan was the amount of the proposed payment to unsecured creditors. Counsel for the Committee, SBA, and the U.S. Trustee repeatedly asked FMB and Ice Miller to account for all estate funds, and to provide the accurate financial condition of the estate so the parties could estimate a reasonable payment for unsecured creditors. During these negotiations, the $120,629.61 overpayment made to Ice Miller was not

2

disclosed. It is unclear when Ice Miller discovered the mistake. In any case, the undisclosed $120,629.61 overpayment prolonged and unnecessarily complicated the parties' negotiations to resolve this case. If interested parties had known there was an additional $120,629.61 available for unsecured creditors, it would have simplified negotiations.

Knowledge and disclosure of the payment was the responsibility of FMB and Ice Miller. Viewed in isolation, the $120,629.61 unauthorized overpayment, although troubling, may not justify reduction of Ice Miller's request for allowance and payment of an additional $146,239.52 in fees and costs, and FMB's request for $8,825 in fees incurred in connection with negotiating the plan and confirmation order. However, there are additional grounds to justify a reduction of the requested fees and costs.

Ice Miller charged the estate $3,894.50 (10.3 hours) for preparation of the Certificate of Service for the plan and solicitation package. The Final Fee Application does not explain why it was necessary for two attorneys to devote more than 10 hours to drafting a Certificate of Service. Some of the time might be explained by the loss of "institutional knowledge" regarding maintenance of a proper service list in light of a change of personnel staffing the case, but absent explanation, the attorney time appears excessive.

Ice Miller incurred a total of $34,760 (88 hours) in drafting and negotiating the agreed confirmation order. This equates to more than 25% of the total fees incurred in the "Plan and Disclosure Statement" category. Counsel for the Committee and SBA both volunteered to draft the agreed confirmation order, but Ice Miller declined these

3

offers. Counsel for the Committee and SBA represented that their draft orders would be concise and circulated in short order. Instead, Ice Miller drafted a 24-page order that addressed matters immaterial to plan confirmation and required a lengthy review and negotiation to ensure that the agreed order did not produce consequences unintended by the U.S. Trustee, Committee and SBA.

Ice Miller's approach to drafting the confirmation order resembled its approach to drafting the sale motion regarding Debtor's warehouse, which the Court criticized. *See Fee Opinion* [Doc 796] at pp. 32-33. Ice Miller should not be rewarded for repeating past mistakes. The $34,760 incurred by Debtor's counsel for drafting the overly complicated confirmation order should be reduced because other parties offered to draft the confirmation order at little to no additional cost to the estate.

The Court should consider a further fee reduction for work performed by Ice Miller in drafting the initial and amended plan because they could not be confirmed as filed. FMB negotiated the settlement of the SBA Adversary, which created the SBA's $600,000 unsecured claim. That unsecured claim constituted more than 1/3 of the total amount of unsecured claims, and created a potential veto power under 11 U.S.C. §1126(d). During the plan negotiations, the SBA informed Ice Miller that the proposed distribution to unsecured creditors was too low, especially in light of the then unresolved objection to Claim 47, the $708,175.56 claim filed by Earl's Estate ("Claim 47"). Nevertheless, the Debtor filed a plan knowing that it could not be confirmed over SBA's rejecting ballot. *See* 11 U.S.C. §1126(d).

The Court previously cautioned Ice Miller that it would only be reimbursed for incurred costs that were "actual and necessary." *Fee Opinion* at 10-11.  Ice Miller was also reminded that it "should first scrupulously weigh and assess the necessity and appropriateness of each task for which it will be seeking compensation." *Id*. at 12.  FMB and Ice Miller's decision to file a plan that could not be confirmed over SBA's objection should not be rewarded.  Therefore, a significant portion of the fees incurred in drafting, filing, and attending the hearing on the unconfirmable First Amended Plan should be disallowed.

The Court also should not award any fees for the unnecessary and incorrectly noticed Second Amended Plan, which attempted to improperly reclassify the SBA.  For these reasons, Ice Miller's $146,239.52 request for fees and costs, and FMB's $8,825 request for fees should be reduced.

II.    **The Court should reduce or disallow fees and costs for analysis of objections to Claim 47, and should reduce the overall fee awards for FMB and Ice Miller based on their deficient Rule 2014 disclosures.**

Recently, the Committee, U.S. Trustee and SBA learned that FMB is a claimant in Earl Gaudio's ("Earl") probate estate ("Earl's Estate").  *See FMB's Probate Claim* attached hereto as Ex. 1.[1]    The Committee, U.S. Trustee and SBA also independently obtained state court filings[2] that revealed previously undisclosed disputes between FMB and

---

[1] FMB is represented by Ice Miller in the probate case and its claim includes Ice Miller's attorneys' fee.  The claim does not disclose a dollar amount, but Ice Miller's fees are likely in excess of $100,000.

[2] The relevant Vermilion County case numbers are 13-L-70; 16-CH-79; 16-P-93; and 16-MR-94.  Upon request, the Committee and SBA will provide the Court with copies of all the pleadings they obtained from the Vermilion County Courthouse.

5

various creditors in this case. According to various state court filings, FMB is at the center of unresolved disputes between itself, Paul Offutt ("Offutt"), Helen Gaudio ("Helen"), Earl, and Earl's Estate. *See Offutt MSJ* attached hereto as Ex. 2.

These disputes involve various FMB bank records dated July 31, 2012. *Id*. at 10. According to FMB's bank records, on July 31, 2012, Earl transferred his personal investment account ending in 010 into a jointly held account with his wife Helen. *Id*. That same day, Paul Saikley, an attorney for Offutt, met with Amy Bartenschlag at FMB and asked her to record a purported assignment of the 010 account from Earl to Offutt as security for a $405,000 loan Offutt allegedly made to Earl. *Id*. at 7. FMB placed a $500,000 hold on the 010 account. *Id*. at 11.

On April 11, 2013—three months before it filed the chapter 11 petition in this case on behalf of the Debtor—FMB received a letter from Offutt demanding that FMB transfer roughly $405,000 from the 010 account directly to Offutt to cover the outstanding balance due on his loan to Earl. *Id*. at 12. FMB did not honor Offutt's demand, and to date, has not paid out on that demand. *Id*. After FMB received Offutt's demand letter, it contacted Earl's attorney, Bill Tapella, whom FMB claims told it not to honor Offutt's demand letter. *Id*.

The events of July 31, 2012, and FMB's decision not to pay out pursuant to Offutt's April 11, 2013 demand letter, resulted in various state court lawsuits that are still pending. These disputes gave rise to the claim FMB filed in Earl's Estate, which included a claim for reimbursement of Ice Miller's legal fees. Ex. 1. FMB sought appointment of a special administrator to replace Helen as representative of Earl's

6

Estate in the litigation. *See FMB's Obj. to Mot. to Approve BK Sett.* attached hereto as Ex. 3. FMB also successfully blocked Earl's Estate's ability to resolve the dispute about Claim 47 in this case. *Id*. None of these facts were disclosed in FMB and Ice Miller's initial Rule 2014 disclosures. [Doc 13, 49]. After the Committee, U.S. Trustee and SBA raised these issues with Ice Miller—and specifically following multiple requests by the Committee's counsel—Ice Miller and FMB filed supplemental Rule 2014 disclosures in August 2018. [Doc 810, 811]. Those disclosures include more details, but still do not provide the Court or parties with the full picture of FMB and Ice Miller's involvement in the underlying state court cases. They were also filed five years into this bankruptcy case, when any harm from non-disclosure had already occurred.

As this Court noted, "Section 327 of the Bankruptcy Code provides for the employment, with the court's approval, of disinterested professional persons by the trustee to represent or assist the trustee in carrying out the trustee's duties." *Fee Opinion* at p.10, (citing 11 U.S.C. § 327(a)). In seeking court approval of their employment, FMB and Ice Miller were required by Bankruptcy Rule 2014 to file disclosure statements that, among other things, stated "to the best of applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys' accountants, the United States trustee, or any person employed in the office of the United States trustee."

The term "connections" used in Rule 2014(a) is considerably broader than the terms "disinterested" and "interest adverse to the estate" used in 327(a). *In re Gluth Bros. Constr.*, 459 B.R. 351, 364 (Bankr. N.D. Ill. 2011). Thus, FMB and Ice Miller were

7

required to disclose connections even if they did not believe those connections would disqualify them under Rule 327(a). *Id.* Professionals "cannot pick and choose which connections are relevant or trivial." *Id.* (citing *U.S. v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999)). No "matter how trivial a connection appears to the professional seeking employment, it must be disclosed." *Gluth*, 459 B.R. at 364 (quoting *In re Envirodyne Indus.*, 150 B.R. 1008, 1021 (Bankr. N.D. Ill. 1993)). "Counsel who 'fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to remove an employment order and deny compensation.'" *Gellene*, 182 F.3d at 588 (quoting *In re Crivello,* 134 F.3d 831, 836 (7th Cir. 1998)); *Gluth*, 459 B.R. at 364. "In the most extreme application of Rule 2014, denial of fees or disqualification may be justified even when the professional is in fact **disinterested**." *In re Raymond Professional Group, Inc.*, 421 B.R. 891, 906 (Bankr. N.D. Ill. 2009) (quoting *In re Midway Indus. Contractors,* 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001)) (emphasis added); *Gluth,* 459 B.R. at 364. Further, although "Rule 2014(a) only expressly requires the disclosure to be made at the time of the application to employ, and only 'to the best of the applicant's knowledge,' case law has held that there is an ongoing obligation to supplement the disclosure if the applicant learns of undisclosed connections or conflicts later arise." *Gluth*, 459 B.R. at 364.

When FMB and Ice Miller filed their employment applications with the Court, they did not disclose the previously recited connections with Offutt, Helen, or Earl. [Doc 13, 49]. FMB did not disclose that it had placed a $500,000 hold on the Gaudios' 010 account, and had not complied with Offutt's April 11, 2013 demand letter. [Doc 49].

8

FMB did not disclose that its employee, Amy Bartenschlag, was a fact witness to the events of July 31, 2012, Gaudio's forgery claim, and Offutt's fraudulent transfer claim. [Doc 49]. Ice Miller did not disclose that it was defending FMB in pending state court litigation involving competing creditors of Debtor's bankruptcy estate. [Doc 13]. As the state court cases continued to multiply, FMB and Ice Miller never supplemented their initial Rule 2014 disclosures. The Committee, U.S. Trustee and SBA did not learn about the extent or substance of the pending state cases until after the July 11, 2018 hearing on Debtor's objections to Claim 47. Ex. 3.

Leading up to that hearing, the Committee and SBA had been working on a potential resolution of Claim 47 and the Debtor's objection thereto [Doc 779]. However, at the hearing, the Committee and SBA learned that the Earl's Estate likely could not settle its claim because no party had the authority to act on its behalf. *Id*.

The Committee's counsel incurred fees investigating and analyzing the facts and circumstances relating to FMB and Ice Miller's disinterestedness. As the court noted in *Raymond*, "[t]he burden of disclosure is placed on the applicant to produce the relevant facts, rather than relying on the bankruptcy judge or parties in interest to conduct an independent factual investigation to determine whether the applicant has a conflict." 421 B.R. at 906 (citing 11 U.S.C. § 328(c) and *Civello*, 134 F.3d at 837). After learning that FMB opposed the request to approve the potential settlement of the objection to Claim 47 in the probate matter, the Committee's counsel made inquiries to Ice Miller about the nature of the state court litigation. Ice Miller's initial response was simply that "there is no conflict." The Committee's counsel persisted in requesting that FMB and Ice Miller

9

supplement their Rule 2014 disclosures, pointing out that the issue was not whether a conflict existed, but whether the professionals needed to disclose matters that had a bearing on disinterestedness.

After the July 13, 2018 hearing, Counsel for the United States went to the Vermilion County Courthouse and learned that FMB was involved in four pending state court actions with creditors of Debtor's bankruptcy estate dating back to 2013. That is also when Counsel for the United States learned that FMB was a fact witness to the events of July 31, 2012, and that in December 2017, FMB had sought appointment of a special administrator for Earl's Estate with respect to the state court litigation due to a conflict by virtue of Helen's status as both an individual claimant and Executor of Earl's Estate.

Counsel for the Committee and the U.S. Trustee's request that Ice Miller provide additional disclosure lead to the amended, but still deficient, Rule 2014 disclosures filed on July 25, 2018. [Doc 810, 811]. This new information also provided a possible explanation for the five-year delay in FMB objecting to Claim 47. During the pendency of the chapter 11 case, FMB filed eleven adversaries against creditors and multiple claim objections, but seemingly ignored Claim 47.

FMB and Ice Miller had a possible conflict of interest because FMB had filed a claim in Earl's Estate seeking payment for itself and Ice Miller. *Mot. to Appoint Special Admin.* attached hereto as Ex. 4. It had also petitioned for the appointment of a special administrator to represent Earl's Estate in the litigation involving the claims by Offutt, Earl's Estate, Helen, and FMB. *Id.* FMB claimed that Helen had a conflict of interest as

10

both a representative of Earl's Estate and a party with a direct claim to ownership of the funds held by FMB. *Id*. Rather than appointing a special administrator, ultimately, the probate court removed Helen as Executor of Earl's Estate at the request of Offutt Ex. 2, 3. Both FMB and Ice Miller stood to gain if the claim from Earl's Estate was allowed in the chapter 11 case because that claim could generate as much as $708,175.56 for the probate estate. Those probate estate funds could then be used to pay FMB's claim filed on behalf of itself and Ice Miller.

FMB and Ice Miller could have a conflict of interest related to Claim 47 because they "hold or represent an interest adverse to the estate." *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998). In light of this possible conflict, Counsel for the Committee insisted upon assuming litigation of the objection to Claim 47. Ice Miller seeks reimbursement of $27,561.51 in fees for "Claims Administration and Objections," most of which related to the objection to Claim 47. FMB seeks reimbursement of $1,875 under this category. In light of FMB and Ice Miller's failure to disclose matters that directly related to their disinterestedness and the likely conflict of interest in prosecuting an objection to Claim 47 while also making a claim to funds in Earl's Estate, the fees incurred in this category should be disallowed, or substantially reduced.

FMB and Ice Miller's potential conflict of interest and conduct regarding Claim 47 is a concrete example of the harm the non-disclosures caused the EGS estate and its creditors. Unfortunately, FMB and Ice Miller's non-disclosures may have caused additional, less-concrete harm to the estate. Did the undisclosed connections between FMB, Ice Miller and Offutt relating to the April 11, 2013 demand letter delay resolution

11

of the Offutt Adversary? Did those connections increase the acrimony and fees in that case? Did the fact that FMB and Offutt were competing creditors in Earl's Estate impact the adversary? Did SBA's assertion of a super-priority claim in Earl's Estate, which Helen's attorney conveyed to Ice Miller and FMB, color their handling of the SBA Adversary? Did the claims Offutt, Helen and Earl's Estate filed against FMB in state court negatively impact FMB and Ice Miller's objectivity about the value of the EGS Warehouse and delay its sale? The answer to all of these questions is "maybe," which is a problem. The problem is that, rather than having the information needed to make an informed decision about what actions and positions to take in the bankruptcy case, the U.S. Trustee, Committee, and SBA were left in the dark, and can now only speculate about what might have happened had they possessed the material information related to Ice Miller and FMB's disinterestedness.

FMB and Ice Miller's undisclosed connections and potential conflict certainly delayed and increased professional fees related to confirmation of a plan, thereby diminishing assets available for distribution to the unsecured creditors. Section 327(a) of the Bankruptcy Code "reflects Congress' concern that any person who might possess or assert an interest or have a predisposition that would reduce the value of the estate or delay its administration ought not have a professional relationship with the estate." *Gellene*, 182 F.3d at 588.

FMB and Ice Miller's undisclosed connections likely would have prevented their initial, and continued employment in this case—or at the very least limited the role they could play as representatives of the Debtor's bankruptcy estate. However, even if the

connections would not have precluded or forced a termination of their employment, their non-disclosure still harmed the estate. *In re Gluth Bros. Constr.*, 459 B.R. at 369. Had the Court, U.S. Trustee and creditors been aware of these connections and potential conflicts, they would have been more proactive and likely would have requested conversion of this case to a chapter 7 liquidation years ago. The creditors relied on FMB and Ice Miller's apparent impartiality to their detriment. *Id.* at 370. The Court should determine the appropriate remedy for the omissions, including disallowance of fees or disgorgement of prior awarded interim compensation.

### III. FMB and Ice Miller are not entitled to reimbursement of fees and costs incurred for drafting and filing their third interim fee applications.

In its Fourth Interim Fee Application, Ice Miller seeks $21,306 in fees for preparing third interim fee applications for itself and FMB. It seeks an additional $6,455.50 for preparing final fee applications for other professionals. Ice Miller's request ignores the $144,151 it already requested for preparing the Second and Third Interim Fee Applications for itself and FMB. The Court denied the $144,151 request in total, and found that "Ice Miller will not be compensated for the time it spent preparing the fee applications." *Fee Opinion* at p. 22. Thus, the $21,306 in requested fees should be denied in accordance with the Fee Opinion.

Any fees incurred by Ice Miller for drafting Final Fee Applications for itself and FMB are post-confirmation fees to be paid from the negotiated $40,000 post-confirmation fund provided for in the confirmation order.

**IV.     All of FMB's fees requested for Accounting/Auditing should be denied.**

FMB is seeking reimbursement of $2,337.50 in fees incurred under the category of Accounting/Auditing. In light of its admission that it improperly overpaid Ice Miller $120,629.61, these requested fees should be disallowed.

**V.      All fees requested in connection with the liquidation of the TD Ameritrade account should be denied.**

FMB and Ice Miller seek reimbursement for a combined $1,575 in fees incurred to recover $1,415.51 from a TD Ameritrade Account. The fees resulted in a net $159.49 loss to the estate. FMB and Ice Miller did not heed the Court's prior warning about weighing the potential cost of legal services against potential recovery. *Fee Opinion,* at p. 23. Therefore, the $1,575 reimbursement request should be denied.

**VI.     All fees for the Dennis Gaudio and SBA Litigation should be denied.**

Ice Miller requests $572 in compensation for wrapping up the Dennis Gaudio litigation. The Court already disallowed $189,252 of Ice Miller's fees incurred litigating this adversary because it created a sizable net loss to the estate. *Fee Opinion* at pp. 25-26. Therefore, this additional $572 should also be disallowed.

Ice Miller billed $27,703.50 in fees under the "Asset Analysis and Recovery" category. Most of those fees were for the SBA Adversary. As set forth above, FMB, Ice Miller and SBA had competing claims to Earl's probate estate funds, which FMB and Ice Miller did not disclose to the Court or creditors. Maybe this connection and potential conflict influenced FMB and Ice Miller's handling of the SBA Adversary to the

14

detriment of Debtor's bankruptcy estate. We do not know, but this non-disclosure is sufficient grounds to deny theses requested fees.

**VII. Reimbursements should be denied for tasks that should have been completed earlier in the case.**

FMB and Ice Miller's fee applications include significant time for tasks that should have been completed years ago. Ice Miller billed $3,808 for time spent on Employee Benefits/Pensions matters. FMB billed $5,760 in this category. Debtor has not employed anyone since late 2013. Why were these issues not resolved four or five years ago? The delay harmed the estate. Therefore, these fees should not be allowed.

## CONCLUSION

The Court has already devoted substantial time and effort to considering Ice Miller and FMB's interim fee applications. The Court's Fee Opinion enabled the parties to reach an agreed confirmation order. In light of these efforts, the undersigned have no illusions regarding the Court's appetite for revisiting professional compensation at this point in the case. Nonetheless, FMB and Ice Miller's status as an active party and counsel in state court litigation, including matters involving competing claims, should have been fully disclosed well in advance of the drawn-out plan confirmation proceedings. The belated revelation regarding the mistaken overpayment of $120,629.61 to Ice Miller compounds the frustration regarding the lack of disclosure.

For the reasons set forth above, the Committee and United States object to the Fourth and Final Fee Applications of FMB and Ice Miller and respectfully request that the Court consider a reduction or partial disallowance of the requested compensation.

Respectfully submitted this 14th day of November, 2018.

        RUBIN & LEVIN, P.C.,
        Counsel to the Official Unsecured Creditors' Committee

        By:  */s/ James E. Rossow Jr.*
            James E. Rossow Jr.
            Indiana Attorney No. 21063-29
            135 N. Pennsylvania Street, Suite 1400
            Indianapolis, IN 46204
            Telephone: (317) 860-2893
            Fax: (317) 453-8619
            jim@rubin-levin.net

        JOHN C. MILHISER
        UNITED STATES ATTORNEY

        BY:  */s/ Kate R. O'Loughlin*
            Special Assistant United States Attorney
            500 W. Madison., Suite 1150
            Chicago, IL 60661
            Phone: 312/353-9098
            Fax. 202/292-3507
            kate.oloughlin@sba.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2018, a copy of the foregoing *Joint Consolidated Objection to the Fourth and Final Fee Applications of Ice Miller LLP, Counsel for Debtor, and First Midwest Bank, Custodian for Debtor* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- Megan M Adeyemo   madeyemo@gordonrees.com, asoto@grsm.com
- Daniel Magee Anderson   daniel.anderson@icemiller.com, sandy.heaberlin@icemiller.com
- Thomas V Askounis   taskounis@askounisdarcy.com
- Edwin C Barney   edwincbarney@sbcglobal.net, barneyer66934@notify.bestcase.com
- Darren L Besic   dbesic@walinskilaw.com
- James L Brougher   Jimb@danvillelawyers.com
- John David Burke   john.burke@icemiller.com
- Ben T Caughey   ben.caughey@merchocaughey.com
- Joseph P Chamley   jchamley@efbclaw.com, jnieman@efbclaw.com
- Sherry D Coley   scoley@dkattorneys.com, cpogorzelski@dkattorneys.com;kmarquardt@dkattorneys.com

- Tyson Alexander Crist    Tyson.Crist@icemiller.com, Sandy.Heaberlin@icemiller.com
- Shannon M DeLaMar    sdelamar@atg.state.il.us
- Roy Jackson Dent    roy.jackson.dent@gmail.com, notices@dentlawoffices.com
- Kevin Driscoll    kevin.driscoll@btlaw.com
- David J Frankel    dfrankel@sormanfrankel.com, ckauffman@sormanfrankel.com
- Christina Laun Fugate    christina.fugate@icemiller.com
- David H Hoff    peter.g.paoli@usdoj.gov, Chelsea.dean@usdoj.gov
- Michael Fredrick Holbein    michael.holbein@agg.com
- Amrit Suresh Kapai    amritk@goldmclaw.com
- Brett Kepley    bkepley@lollaf.org, lollafecfmail@gmail.com;kepleybr74500@notify.bestcase.com;4908@notices.nextchapterbk.com
- Kathryn A Klein    rb_bank@riezmanberger.com, riezmanberger@gmail.com
- Russell S Long    rlong@dkattorneys.com, ahalase@dkattorneys.com
- Jennifer L Maffett    thdaytonecf@thompsonhine.com
- Terrence Miles    packs@aol.com, info.mileslaw@aol.com;R50195@notify.bestcase.com
- Patrick Frasor Moran    pmoran@gordonrees.com
- Steven L Nelson    snelson@califf.com
- Gail Linn Noll    gail.noll@usdoj.gov, stacy.booth@usdoj.gov;nicole.bierma@usdoj.gov
- Kate R O'Loughlin    kate.oloughlin@sba.gov
- Sabrina M Petesch    sabrina.m.petesch@usdoj.gov
- Teresa I Pisula    TPisula@atg.state.il.us
- Victoria E Powers    victoria.powers@icemiller.com, Daniel.Anderson@icemiller.com;Sandy.Heaberlin@icemiller.com
- Jeffrey D Richardson    jdrdec@aol.com
- Robert Fredrick Ritchie    rritchie@atg.state.il.us
- James Edward Rossow    jim@rubin-levin.net, robin@rubin-levin.net;atty_jer@trustesolutions.com;lisa@rubin-levin.net
- Steven E. Runyan    srunyan@kgrlaw.com
- Amy T Ryan    atr@mllfpc.com, bdm@mllfpc.com
- Amy T Ryan    atr@martinleigh.com, bdm@mllfpc.com
- Christopher M. Tietz    cmt@tietzlaw.com, tonya@tietzlaw.com
- U.S. Trustee    USTPRegion10.PE.ECF@usdoj.gov
- Mark Roy Wenzel    mwenzel@salawus.com, pdidandeh@salawus.com
- Bruce Eugene de'Medici    bdemedici@gmail.com
- James A. Knauer    jak@kgrlaw.com, tjf@kgrlaw.com

      I further certify that on November 14, 2018, a copy of the foregoing *Joint Consolidated Objection to the Fourth and Final Fee Applications of Ice Miller LLP, Counsel for Debtor, and First Midwest Bank, Custodian for Debtor* was mailed by first class U.S. Mail, postage prepaid, and properly addressed to the following:

Earl Gaudio & Son, Inc.
c/o Final Fee Midwest Bank as Custodian
Attn: Angela E. Major Hart
24509 West Lockport Street
Plainfield, IL 60544

Ameren Illinois
Credit and Collections
2105 E. State Route 104
Pawnee, IL 62558

Argo Partners
12 W. 37th Street, 9th Flr.
New York, NY 10018

KSB Carbonics, Inc.
PO Box 311
Bismarck, IL 61814

Daniel N. DeLay
Mercho Caughey & DeLay
828 East 64th Street
Indianapolis, IN 46220

Illinois Department of Employment Security
IDES Collection Enforcement Division
33 S. State Street
Chicago, IL 60603

Paul Samuel Kmett
500 S. 2nd Street
Springfield, IL 62706

Liquidity Solutions, Inc.
1 University Plaza, Ste. 312
Hackensack, NJ 07601

Sorling Northrup
P.O. Box 5131
Springfield, IL 62705

TR Capital Management, LLC
P.O. Box 633
Woodmere, NY 11598

Regions Bank
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, IN 46204

Jacob N. Smallhorn
Tapella & Eberspacher LLC
6009 Park Drive
Charleston, IL 61920

World Business Lenders
120 W. 45th Street, 29th Fl.
New York, NY 10036

    */s/ James E. Rossow Jr.*
    James E. Rossow Jr.

g:\wp80\bankrupt\earl gaudio & son, inc 82525901\final fee apps\objection\current draft\gaudio consolidated objection to final fee apps kro (3) - jer.docx