UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EARL GAUDIO & SON, INC. | ) | CASE NO. 13-90942 |
| | ) | (Chapter 11) |
| DEBTOR. | ) | |

### AMENDED[1] APPLICATION OF RUBIN & LEVIN, P.C. FOR FINAL ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL FOR THE OFFICIAL UNSECURED CREDITORS' COMMITTEE

Rubin & Levin, P.C., ("Applicant"), counsel to the Official Unsecured Creditors' Committee ("Committee"), for its *Amended Application of Rubin & Levin, P.C. for Final Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel for the Official Unsecured Creditors' Committee* ("Final Application"), respectfully states as follows:

### FACTUAL BACKGROUND AND JURISDICTION

1.      On July 19, 2013 ("Petition Date"), Earl Gaudio & Son, Inc. ("Debtor") commenced its case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). No trustee has been appointed during the pendency of this case. On September 5, 2018, the Court entered the *Agreed Order Approving First Amended Disclosure Statement and Confirming First Amended Chapter 11 Plan of Liquidation of Earl Gaudio & Son, Inc. Dated May 11, 2018* ("Agreed Order") [Doc 833], which confirmed a plan calling for liquidation of the Debtor's estate and distribution to creditors.

2.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

---

[1] This *Amended Application of Rubin & Levin, P.C. for Final Allowance and Payment of Compensation and Reimbursement of Expenses as Counsel for the Official Unsecured Creditors' Committee* is being filed to correct the amount of fees requested due to four duplicate time entries inadvertently included in Exhibit 3 of the Final Application [Doc 905]. The duplicate entries are dated July 16, 2018, July 30, 2018, September 4, 2018, and September 5, 2018, are under Task Code 12—Plan and Disclosure Statement, are highlighted on the amended Exhibit 3 attached hereto, and total 3.50 hours for a total fee reduction in the sum of $1,295.00.

1334(b), and the resolution of this Application constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court has authority to grant the relief requested in this Application pursuant to 11 U.S.C. §§ 328(a), 330 and 1103, and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

3. On September 12, 2013, the Committee filed its *Application for Order Authorizing the Official Unsecured Creditors' Committee to Employ Rubin & Levin, P.C. as Counsel* ("Employment Application") [Doc 86].

4. On October 18, 2013, the Court entered its *Order Granting Application to Employ Rubin & Levin, P.C. as Counsel for the Official Unsecured Creditors' Committee* (the "Employment Order") [Doc 150], wherein the Court authorized the employment of Applicant as counsel to the Committee effective as of August 22, 2013 at the hourly rates specified in the Employment Application.

5. On September 12, 2013, the Debtor filed its *Motion for Authority to Implement Interim Compensation Procedures* [Doc 87], requesting, among other things, that the Court authorize a procedure whereby court-approved professionals could seek monthly and quarterly payment of compensation and reimbursement of expenses by submitting a monthly detailed invoice to counsel for the Debtor, First Midwest Bank ("FMB") the Debtor's custodian, counsel for the Committee, and the Office of the United States Trustee (the "Compensation Procedures Motion") [Doc 88]. On October 11, 2013, the Court entered an order granting the Compensation Procedures Motion, in part, which incorporated the Committee's compromise proposal regarding payment of interim compensation ("Compensation Procedures Order") [Doc 138].

6. Pursuant to the terms of the Compensation Procedures Order, after the expiration of a 10-day review period and in the absence of any objection to monthly statements submitted

for payment, the Debtor was to pay 75% of the fees and 100% of the expenses identified in the monthly statements. All such interim payments would still be subject to the Court's approval as part of the interim and final fee application process.

7. In accordance with the Compensation Order, Applicant submitted two requests for payment attaching "monthly invoices." The first request was made on November 8, 2013 and included a "monthly invoice" with fees in the total amount of $15,551.00 and expenses totaling $541.29 incurred between August 22, 2013 and September 30, 2013 ("First Draw Period"). A copy of Applicant's first letter enclosing the "monthly invoices" and requesting payment of fees and reimbursement of expenses incurred for the First Draw Period is attached as Exhibit 1. Following the 10-day waiting period, and with no objections, Applicant received a payment totaling $12,204.54, representing 75% of its fees and 100% of its expenses incurred during the First Draw Period. A total of $3,887.75 was held back.

8. Although the Compensation Procedures Order provided for payment of interim compensation through a draw procedure as frequently as on a monthly basis, Applicant exercised restraint in requesting compensation. This was due in part to the fact that the case was a liquidating chapter 11 case from the outset, and Applicant, in consultation with the Committee, advocated for the Debtor to undertake the liquidation of the Debtor's assets as expeditiously as possible. As the weeks and months progressed and the professional fees and expenses increased related to litigation, Applicant determined that payment of interim compensation for Applicant was a secondary concern to the Committee's ultimate goal of maximizing value for unsecured creditors while advocating to keep professional fees as low as possible.

9. Applicant's second payment request was made on October 6, 2015 and included a "monthly invoice" with fees in the total amount of $52,821.50 and expenses totaling $617.52

incurred between August September 30, 2013 and August 31, 2015 ("Second Draw Period"). A copy of Applicant's second letter enclosing the "monthly invoices" and requesting payment of fees and reimbursement of expenses for the Second Draw Period is attached as Exhibit 2. Following the 10-day waiting period, and with no objections, Applicant received a payment totaling $40,233.65, representing 75% of its fees and 100% of its expenses incurred during the Second Draw Period. A total of $13,205.37 was held back.

10. By late 2015, Applicant requested that FMB and Ice Miller, LLP ("Ice Miller") withhold seeking payment of interim compensation while the Debtor worked to liquidate the estate out of concern for the increasing burden of administrative expenses and professional fees. Applicant did not seek payment of any additional interim compensation after its October 6, 2015 payment request.

11. In all, Applicant received two interim payments totaling $52,438.19, representing 75% of its fees and 100% of its expenses ("Interim Payment") incurred during the First and Second Draw Periods, and a total of $17,093.12 was held back ("Holdback").

12. In preparing this Final Application, Applicant has determined that the first monthly invoice submitted for payment included a time entry of .8 hours for $296.00 that pre-dated the effective date of Applicant's employment stated in the Employment Order. Accordingly, Applicant's request for payment of its allowed fees that remain unpaid has been discounted by $296.00.

13. Between September 1, 2015 and December 6, 2018, Applicant has incurred additional fees in the sum of $152,193.50 and expenses in the sum of $2,691.47, no portion of which has been paid. Combined with the Holdback, less the $296.00 for the August 4, 2013 time entry, Applicant's unpaid fees total $168,990.62.

4

**REQUEST FOR COMPENSATION OF FEES AND EXPENSES**

14. Applicant requests the Court enter an order pursuant to section 330 of the Bankruptcy Code (a) allowing final compensation for professional services provided to the Committee from August 22, 2013 to December 6, 2018 ("Fee Period") in the total sum of $220,270.00; (b) approving reimbursement of expenses on a final basis in the sum of $3,850.28; (c) approving on a final basis all prior payments of interim compensation and reimbursement of expenses to Applicant; and (d) directing that additional payment of all unpaid allowed final compensation and approved reimbursement of expenses.

15. This Application is the first and final application filed by Applicant seeking the allowance and payment of fees and expenses.

**Summary of Services Performed**

16. Pursuant to the Employment Order, Applicant has provided a variety of necessary services to the Committee during the Fee Period, including, but not limited to:

(a) <u>Asset Analysis and Recovery.</u> During the Fee Period, Applicant performed a physical inspection of the Debtor's real estate and warehouse. Applicant additionally reviewed appraisals of the Debtor's real estate and personal property to determine the potential value of the Debtor's assets. Applicant provided a detailed report of the Debtor's assets to the Committee. Additionally, Applicant reviewed, revised, and consulted with Debtor's counsel regarding various motions to sell Debtor's assets and attended hearings on such motions.

Prior to Applicant's employment, the Debtor filed a motion for authority to sell certain operational assets of the Debtor. Immediately after being selected by the Committee as its proposed counsel, Applicant performed an inspection of the Debtor's operational assets including its offices and warehouse, and reviewed appraisals of the Debtor's equipment to

determine whether the proposed sale was reasonable.  As the Debtor requested an expedited sale process, the Committee was forced to file a limited objection to address several issues which it did not have time to fully investigate prior to the objection deadline, such as the premature fixing of a proposed "cure" payment to be paid to Anheuser-Busch, Inc. related to the Debtor's assumption and assignment of a Wholesaler Equity Agreement.  Ultimately, the Court entered an order approving the sale, but ordering that the proposed cure payment to Anheuser-Busch be held back for a period of 60 days to allow the Committee time to further investigate and object, if necessary, to the proposed cure payment. [Doc 78].

Applicant also consulted with and provided advice and counsel to the Debtor in connection with a dispute with Paul Offutt related to an easement for access rights to the Debtor's warehouse commonly known as 1803 Georgetown Rd., Danville, Illinois ("Warehouse").  The access issue impaired the marketability of the Warehouse. This dispute was ultimately litigated in adversary proceeding number 14-09053, which resulted in a settlement that, among other things, provided the Debtor an easement for access to the Warehouse.

As it appeared that the Debtor had sufficient assets to satisfy claims against the estate, and Debtor's counsel appeared to be proceeding quickly and efficiently at the outset of the case, Applicant incurred little time in this category.  Some additional services performed by Applicant related to asset analysis and recovery are addressed under the "Litigation" category.

(b)     <u>Asset Disposition.</u>  Applicant analyzed the priority and validity of the secured claims that purportedly attached to the proceeds of the sale of the Debtor's assets.  Based on its review, Applicant consulted with and advised the Debtor with respect to the proposed disposition of proceeds of the sale.  This involved providing comment and revisions to various drafts of motions to sell assets and proposed orders, as well as conferences with the Debtor's counsel,

FMB, and counsel for various purported lienholders.

Applicant also filed a limited objection to the Debtor's *Motion to Establish Procedure for Disbursement of Sale Proceeds to Purported Lienholders* [Doc 88], as the motion requested authority to distribute the sale proceeds from the sale of Debtor's operational assets to purported lienholders on a final basis. While the Committee acknowledged the value to the estate of prompt distribution to the secured creditors to avoid additional interest and fees, the Committee requested that any disbursement be deemed interim rather than final, so that the payment could be recovered in the event that an objection to the validity of a claim arose. The order granting the motion ultimately provided that the distributions were interim and without prejudice to the Debtor, the Committee, or any future trustee to object to the secured claims at a later date. [Doc 160].

Following the sale of the operational assets, the secured claim of the United States Small Business Administration ("SBA") was paid in full. When the Debtor subsequently determined that the sale proceeds were insufficient to satisfy the SBA's claim in full, the Debtor was able to file an adversary proceeding to recover the overpayment. That litigation resulted in a $600,000.00 settlement payment to the Debtor's estate.

(c)    <u>Case Administration.</u>  Applicant's work in this area focused on a variety of matters including review and analysis of monthly operating reports filed by the Debtor, regular conferences with the United States Trustee ("UST"), the SBA, Committee members, FMB, and the Debtor's counsel regarding the status of the case and liquidation of assets. Applicant also provided regular written updates to the Committee, and responded to requests from general unsecured creditors regarding the amount and timing of any potential distribution.

Applicant also filed an objection to the SBA's motion to convert or appoint a trustee, as

7

at the time the motion was filed, the conversion or appointment of a trustee would only have served to add an unnecessary layer of administrative expense further reducing the potential distribution to unsecured creditors.

(d)     <u>Claims Administration and Objections.</u>  During the Fee Period, Applicant compiled and tracked filed claims, requested and reviewed documentation necessary to determine the validity and priority of claims filed, and where necessary, filed objections or provided advice and counsel to the Debtor regarding potential objections.

Applicant initially identified and objected to the payment of a portion of the secured claim filed by Regions Bank from the proceeds of the sale of the operational assets.  Based in part on the research and analysis provided by Applicant, the Debtor ultimately filed adversary proceeding number 15-09027 to avoid a portion of Region Bank's purported claim as a fraudulent transfer.  Throughout the process, Applicant consulted with the Debtor and engaged in negotiations with counsel for Regions Bank.  This litigation ultimately resulted in a reduction of Regions Bank's secured claim of $131,432.23.

Likewise, Applicant assisted the Debtor in its investigation and analysis of claim number 47 the $708,156.56 non-priority unsecured claim filed by Helen Gaudio, as Guardian of the Estate of Earl Gaudio ("Claim 47").  Applicant engaged in settlement negotiations with the Debtor, the SBA, and counsel for the administrator of Earl Gaudio's probate estate.  Pursuant to the terms of the agreed order confirming the chapter 11 plan of liquidation, Applicant ultimately assumed responsibility for prosecuting the objection to Claim 47. The Court entered an order granting the objection on November 8, 2018, following multiple hearings on the matter.

(e)     <u>Fee/Employment Applications and Objections.</u>  In this category, Applicant incurred time preparing the Employment Application, the Employment Order, and the

application and order for employment of Applicant's local counsel. Applicant negotiated with Ice Miller regarding the Compensation Procedures Order. Applicant also reviewed time entries and drafted the two letters requesting interim payment pursuant to the Compensation Order, and this Final Application for compensation. Applicant additionally corresponded with Debtor's counsel regarding the applications and orders to employ Ice Miller as counsel to the Debtor and FMB as custodian.

Applicant also incurred time objecting to and negotiating the exclusive listing agreement of Binswanger Midwest of Illinois, Inc., a real estate broker employed to sell the Debtor's Warehouse. Applicant's objection was resolved by an agreed order, following the Debtor and the broker's acceptance of Applicant's extensive revisions to the listing agreement to reduce potential fees to the estate, and include protections for the estate in the event of termination of the listing agreement.

In accordance with the Court's guidance in its July 10, 2018 opinion regarding the second and third fee applications of Ice Miller and FMB, Applicants fees for preparing this Final Application and the first and second requests for interim payment total $5,807.00, which is 2.62% of the total fees requested in this Final Application. The fees related to the preparation of Applicant's two interim fee requests and this Final Application are included as part of task category 8 in Exhibits 2, 3, and 4.

(f)    <u>Fee/Employment Objections.</u>  Applicant reviewed, analyzed, and filed limited objections, where applicable, to the applications for compensation filed by the Debtor's various professionals including Ice Miller and FMB.

Prior to Ice Miller and FMB filing their first interim fee applications, each professional submitted monthly statements requesting payment of fees and expenses. After reviewing the

9

time entries for both FMB and Ice Miller, Applicant drafted detailed correspondence to Ice Miller outlining several issues with the billing entries, including a lack of description for the tasks performed, duplication of work and unnecessary staffing, lumped time entries with no breakdown of the time incurred on each discrete task, and billing at professional hourly rates for tasks that do not involve any necessary skill or expertise. Applicant also provided a detailed report to the Committee regarding the billing deficiencies.

Subsequently, Applicant filed a limited objection to the first interim fee applications of both Ice Miller and FMB, but did not object to the interim payment requested as the amount of any deficient time entries likely did not exceed the holdback limitation. Rather, the Committee requested that the holdback amount be increased to 80% from the requested 90%. By this time, the Committee had become concerned with the mounting professional fees and costs of administration and wanted to ensure the estate had sufficient funds available while the Debtor proceeded with its efforts to liquidate the Warehouse.

As part of filing the limited objections to Ice Miller and FMB's second and third fee applications, Applicant analyzed the time entries and created a detailed analysis of the fees incurred in relation to the benefit achieved for the Debtor's estate. Applicant also communicated with Ice Miller regarding the timing, payment, and reporting of FMB and Ice Miller's interim and final compensation.

The Court entered an order disallowing $1,555,159.96 of the $2,538,466.27 in fees requested by FMB and Ice Miller in their second and third interim fee applications. Combined with the additional caps on Ice Miller and FMB's fees Applicant negotiated as part of the agreed order confirming the plan, it is likely that the unsecured creditors will receive a minimum distribution of $475,000.00.

Additionally, in conjunction with the SBA, Applicant investigated Ice Miller and FMB's involvement in various prepetition and post-petition disputes and state court causes of action with estate creditors Paul Offutt and Helen Gaudio that were not disclosed in Ice Miller and FMB's affidavits of disinterestedness filed with their employment applications. After an extensive investigation and consultation with Debtor's counsel, the UST, and the SBA, FMB and Ice Miller ultimately filed supplemental affidavits.  Applicant, with the SBA, also filed a joint objection with the SBA to the final fee applications of Ice Miller and FMB, in part due to its failure to timely disclose the disputes with Paul Offutt and Helen Gaudio.

Applicant filed limited objections to the interim fee applications of John Lane and Inglewood and Associates LLC, an expert witness hired by the Debtor to provide a solvency analysis for the adversary proceedings, and Protek International, Inc., an electronic forensic analyst also employed to assist the Debtor in the prosecution of the adversary proceedings.  Both applications and supporting invoices lacked sufficient detail to allow an interested party to determine whether the fees being requested were actual, reasonable, and necessary.  Following Applicants objections, both professionals submitted supplemental applications to address the deficiencies identified in the Committee's objections.

Finally, Applicant filed a limited objection to the final fee application of Wermer, Rogers, Doran & Ruzon LLC ("Wermer") who is employed as an accountant to the Debtor. Similar to the other deficient applications, Wermer's fee application and supporting invoices provided insufficient detail to determine the reasonableness of the fees being requested. Particularly, Wermer requested a flat fee of $6,000.00 to file the Debtor's 2018 tax return, notwithstanding the fact that Wermer had filed both the 2016 and 2017 returns for less than $2,500.00 each based on the invoices submitted in support of the fee application.

11

(g)     Financing.  Applicant spent a total of 4.1 hours in this category negotiating with Debtor's counsel regarding the final debtor-in-possession financing order.  However, as noted above, .8 of Applicant's time was incurred prior to the effective date of its employment.  Accordingly, Applicant has discounted the amount of its final fee request in the amount of $296.00.

(h)     Plan and Disclosure.  Applicant engaged in extensive negotiation with the Debtor that resulted in a confirmed plan of liquidation that provides for a minimum distribution of $300,000.00 to the unsecured creditors.  Due in part to Applicant's continued efforts to minimize professional fees and maximize the distribution to unsecured creditors, the unsecured creditors will likely receive in excess of $475,000.00 in the aggregate.  In addition to negotiating the terms of the plan, Applicant communicated with the Committee and coordinated filing ballots accepting the plan, attended several hearings on confirmation, and incurred significant time reviewing, revising and negotiating the terms of the 24-page proposed agreed order confirming the plan drafted by Debtor's counsel.

In order to aid in negotiations, Applicant also performed an extensive cost-benefit analysis of the value of services performed by Ice Miller and FMB to liquidate estate assets, particularly related to the prosecution of the adversary proceedings.  Applicant further analyzed various scenarios for achieving the maximum distribution to unsecured creditors.  Using the information compiled, and with input from the SBA, Applicant initially negotiated a substantial subordination of Ice Miller and FMB's professional fees to obtain a minimum distribution of $300,000.00 for unsecured creditors.  Following the Court's opinion regarding FMB and Ice Miller's second and third applications for interim compensation [Doc 796], Applicant negotiated a cap on the final professional fees to be paid to Ice Miller and FMB to preserve the potential for

payment in excess of $300,000.00 to unsecured creditors. Combined with the Court's reduction of the fees requested in the second and third interim fee applications filed by Ice Miller and FMB, the unsecured creditors will likely receive a distribution of not less than $475,000.00 in the aggregate.

(i)     <u>Relief from Stay Proceedings.</u>  Applicant spent a total of .2 hours reviewing various notices and orders related to motions for relief from stay and adequate protection filed by secured creditors Mercedes Benz, JP Morgan Chase Bank, and Century Tokyo Leasing.

(j)     <u>Litigation.</u>  Applicant assisted the Debtor in identifying potential avoidance actions, reviewed documents filed, and monitored the progress of the adversary proceedings initiated by the Debtor. Where necessary, Applicant engaged in settlement negotiations and provided advice and counsel to the Debtor. The majority of time incurred in this category was related to the Debtor's adversary proceedings against Paul Offutt, Eric and Dennis Gaudio, and the SBA. The settlement with the SBA was particularly important to achieving a meaningful plan distribution to unsecured creditors. Accordingly, Applicant incurred a significant amount of time in this category negotiating a resolution between the Debtor and the SBA that would minimize further litigation expenses while maximizing the recovery to the estate.

17.    The above descriptions serve as a general summary of the services provided by Applicant and are intended to highlight areas of particular importance in this case. A complete description of all activities performed by Applicant and the out-of-pocket expenses incurred by Applicant during the First and Second Draw Periods are found on the billing statements attached as Exhibits 1 and 2. A complete description of all activities performed by Applicant and the out-of-pocket expenses incurred by Applicant between September 1, 2015 and December 6, 2018 are found on the billing statements attached as Exhibit 3 and 4. Exhibit 4 consists entirely of time

entries for the period between December 3, 2018 and December 6, 2018 related to Applicant's preparation of this Fee Application.

18. Applicant's billing statements set forth in detail the nature of the services rendered by Applicant, the dates on which personnel rendered such legal services, the identity of personnel who performed such legal services, the time spent by each personnel member in performing such legal services, and the amount of fees for each legal service performed.

19. Applicant's billing statements provide the hours spent by the personnel for whom compensation is sought, reflect the hourly rate charges for each of the personnel and set forth time and expenses in well-defined categories.

20. Applicant's attorneys and paralegals rendered services to the Committee during the Fee Period for the services described in this Final Application with the time billed and hourly charges summarized as follows:

| **Timekeeper** | **Title/Experience** | **Rate** | **Billed Hours** | **Amount** |
|---|---|---|---|---|
| James E. Rossow Jr. | Partner/20 years | $370.00 | **419.90 | **$154,919.00 |
| Curt D. Hochbein | Associate/8 years | $300.00 | 159.40 | $45,780.00 |
| Matthew T. Barr | Associate/6 years | $295.00 | 1.10 | $324.50 |
| Jonathan M. Dickey* | Associate/9 years | $285.00 | 40.50 | $11,229.00 |
| Sarah L. Fowler* | Associate/6 years | $275.00 | 23.20 | $5,857.50 |
| Robin McGraw | Paralegal/28 years | $150.00 | 0.60 | $90.00 |
| Lisa Dowell | Paralegal/35years | $150.00 | 3.40 | $480.00 |
| Michael Tucker* | Paralegal | $150.00 | 3.90 | $480.00 |
| Susan Smith* | Paralegal/23 years (Associate Degree) | $150.00 | 9.5 | $1,110.00 |
| Total | | | 661.50 | $220,270.00 |

*Each of these timekeepers is no longer employed by Applicant. Mr. Dickey, and Ms. Fowler have each moved to new firms, but continue to practice in the areas of bankruptcy and creditor's rights.
**These amounts include the reduction of $296.00 for the August 4, 2013 time entry of .8 hours.

21. All of the services performed by Applicant are set forth on Exhibits 1, 2, 3, and 4 and have been billed at or below the standard hourly rates set forth in the Employment

14

Application. For Example, pursuant to the Employment Application James E. Rossow Jr.'s approved hourly rate is $375.00, but his time was only billed at $370.00 per hour. Similarly, Jonathan M. Dickey was approved at an hourly rate of $300.00 per hour, but his time was billed at $285.00 per hour.

22. Associate Curt Hochbein joined Rubin & Levin in 2015, and his hourly rate of $300.00 is commensurate with his experience. By way of comparison, at the time that Mr. Dickey's hourly rate of $300.00 was approved, he had five years of experience in creditor's rights. Similarly, when Mr. Hochbein joined the firm in 2015 he had been practicing in the areas of creditor's rights and bankruptcy law for five years, and was the supervising attorney for the foreclosure and bankruptcy department of his prior firm. Associate Matthew T. Barr joined Rubin & Levin in 2017, and his hourly rate of $295.00 is commensurate with his six years of experience as a practicing lawyer.

23. Applicant has made some additional downward adjustments where appropriate in the undersigned's estimation due to occasional inefficiencies associated with limited availability to complete a task resulting in the need to become re-familiar with a project not yet completed and some duplication of effort where more than one attorney worked on a task. Those reductions are denoted by "no charge" for the appropriate itemized entry.

24. Applicant has not received any other compensation on account of its representation of the Committee in this case, other than the Interim Payment. Applicant has not shared the Interim Payment, and has no agreement for the sharing of compensation to be received for services rendered in this case which is required to be disclosed pursuant Fed. R. Bankr. P. 2016.

**Expenses**

25. During the Fee Period, as detailed on Exhibits 1, 2, 3 and 4, Applicant incurred reasonable and necessary expenses in connection with its representation of the Committee totaling $3,850.28. The expense itemization includes entries for "Pacer Research." Total PACER charges incurred during the Fee Period were $478.74.

26. Expenses incurred during the Fee Period include the cost of a conference call service, travel expenses for Applicant's travel to Urbana for hearings, and postage. Following is a recap of expenses incurred during the Fee Period:

| **Expense Description** | **8/22/13-9/30/13** | **10/1/13-8/31/15** | **9/1/15-12/6/18** | **Total** |
|---|---|---|---|---|
| Arkadin Conference Call | $0.00 | $0.00 | $31.85 | $31.85 |
| Long Distance | $0.00 | $9.02 | $0.00 | $9.02 |
| Copy Expense | $325.75 | $396.00 | $1,980.25 | $2,702.00 |
| COS.com | $0.00 | $0.00 | $282.36 | $282.36 |
| Lexis-Legal Research | $16.26 | $25.72 | $43.59 | $85.57 |
| Postage Expense | $104.28 | $1.98 | $42.70 | $148.96 |
| PACER Research | $95.00 | $184.80 | $198.94 | $478.74 |
| Travel Expense | $0.00 | $0.00 | $111.78 | $111.78 |
| Totals | $541.29 | $617.52 | $2,691.47 | $3,850.28 |

27. The copy charges include the reproduction costs for mailing copies of the various motions, objections, notices, and having multiple copies of necessary and relevant documents including exhibits available for hearings. Rubin & Levin is a "paperless" office, and documents are not printed solely to have a "file copy." Applicant charges 25 cents per page for copies, and a total of 10,808 pages were copied during the course of the Fee Period. For larger mailings, Applicant has recently contracted with a third-party service, COS.com, and the expenses associated with use of that service are included at the actual charge without markup.

28. The Lexis-Nexis Research charges represent the apportioned charges for legal

services for which Applicant pays Lexis-Nexis a monthly fixed rate. If legal research charges were not billed and tracked separately, Applicant would charge a higher hourly rate to all of its clients. Additionally, billing such charges to client-specific matters ensures that the charges are allocated only to those matters for which Lexis-Nexis research is necessary and only for the periods during which research is actually performed.

29. Pursuant to section 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and the Employment Order, Applicant respectfully submits it is entitled to compensation and reimbursement for the fees and expenses set forth in this Final Application. The services were actually performed, necessary, and of benefit to the Debtor's estate.

**WHEREFORE,** Applicant requests the Court enter an Order approving the Final Application and:

(A) Allowing final compensation for professional services provided by Applicant to the Committee from the August 22, 2013 to December 6, 2018 in the total sum of $220,270.00;

(B) Allowing reimbursement of expenses on a final basis in the sum of $3,850.28;

(C) Approving on a final basis all the interim fees paid to Applicant in the sum of $51,279.38 and reimbursement of expenses in the sum of $1,158.81;

(D) Directing payment of all unpaid allowed fees in the sum of $168,990.62, which includes the Holdback in the amount $17,093.12 less $296.00 for the August 4, 2013 time entry;

(E) Directing payment of all unpaid allowed expenses in the sum of $2,691.47; and

    (F)    Granting Applicant all other just and proper relief.

Respectfully submitted,

RUBIN & LEVIN, P.C.,
Counsel to the Official Unsecured Creditors' Committee

By:/s/ *James E. Rossow Jr.*
James E. Rossow Jr.
Indiana Attorney No. 21063-29
135 N. Pennsylvania Street, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 860-2893/Fax: (317) 453-8619
jim@rubin-levin.net

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| United States Trustee | ustpregion10.pe.ecf@usdoj.gov |
| Megan M. Adeyemo | madeyemo@gordonrees.com |
| Thomas V. Askounis | taskounis@askounisdarcy.com |
| Edwin C. Barney | edwincbarney@sbcglobal.net |
| Darren L. Besic | darren@dbesiclaw.com |
| James L. Brougher | Jimb@danvillelawyers.com |
| John David Burke | john.burke@icemiller.com |
| Ben T. Caughey | ben.caughey@mcdlegalfirm.com |
| Joseph P. Chamley | jchamley@efbclaw.com |
| Sherry D. Coley | scoley@dkattorneys.com |
| Shannon M. DeLaMar | sdelamare@atg.state.il.us |
| Roy Jackson Dent | roy.jackson.dent@gmail.com |
| Kevin Driscoll | kevin.driscoll@btlaw.com |
| David J. Frankel | dfrankel@sormanfrankel.com |
| Christina Fugate | christina.fugate@icemiller.com |
| David H. Hoff | staci.klayer@usdoj.gov |
| Michael Holbein | michael.holbein@agg.com |
| Amrit Suresh Kapai | akapai@askounisdarcy.com |
| Brett Kepley | bakepley@rosklaw.com |
| Kathryn A. Klein | rb_bank@riezmanberger.com |
| Paul Samuel Kmett | pkmett@atg.state.il.us |
| James A. Knauer | jak@kgrlaw.com |
| Russell S. Long | rlong@dkattorneys.com |

| | |
|---|---|
| Jennifer L. Maffett | thedaytonecf@thompsonhine.com |
| Terrence Miles | packs@aol.com |
| Patrick Fasor Moran | pmoran@gordonrees.com |
| Steven L. Nelson | snelson@califf.com |
| Kate R. O'Loughlin | kate.oloughlin@sba.gov |
| Sabrina M. Petesch | sabrina.m.petesch@usdoj.gov |
| Victoria E. Powers | Victoria.powers@icemiller.com |
| Jeffrey D. Richardson | jdrdec@aol.com |
| Robert F. Ritchie | rritchie@atg.state.il.us |
| Steven E. Runyan | srunyan@kgrlaw.com |
| Amy Ryan | atr@mllfpc.com |
| Christopher M. Tietz | cmt@tietzlaw.com |
| Mark R. Wenzel | mwenzel@salawus.com |
| Bruce de'Medici | bdemedici@gmail.com |

I further certify that on December 7, 2018, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

Earl Gaudio & Son, Inc.
c/o Final Fee Midwest Bank as Custodian
Attn: Angela E. Major Hart
24509 West Lockport Street
Plainfield, IL 60544

Ameren Illinois
Credit and Collections
2105 E. State Route 104
Pawnee, IL  62558

Argo Partners
12 W. 37th Street, 9th Flr.
New York, NY  10018

KSB Carbonics, Inc.
PO Box 311
Bismarck, IL 61814

Liquidity Solutions, Inc.
1 University Plaza, Ste. 312
Hackensack, NJ 07601

Sorling Northrup
P.O. Box 5131
Springfield, IL  62705

TR Capital Management, LLC
P.O. Box 633
Woodmere, NY  11598

World Business Lenders
120 W. 45th Street, 29th Floor
New York, NY  10036

*/s/ James E. Rossow Jr.*
James E. Rossow Jr.

JER
g:\wp80\bankrupt\earl gaudio & son, inc 82525901\final fee apps\r&l final fee application\for filing\amended final fee app\final fee app--committee-amended--final.docx